# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____
                                        )
**TRUSTEES OF BOSTON UNIVERSITY,**      )
                                        )
  **Plaintiff,**              )
                                        )  **Civil Action No.**
  **v.**                       )  **12-11935-FDS**
                                        )
**EVERLIGHT ELECTRONICS CO., LTD.**     )
**and EVERLIGHT AMERICAS, INC.,**       )
                                        )
  **Defendants.**              )
_____)

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION TO DISMISS

  This is a patent infringement action involving light emitting diodes ("LEDs") and the

technology behind them.  Plaintiff Trustees of Boston University ("BU") is an educational

institution that owns by assignment a patent claiming LEDs and related technology.  Defendant

Everlight Electronics Co., Ltd. ("Everlight") is a Taiwanese company that manufactures LEDs,

and defendant Everlight Americas, Inc. ("Everlight Americas") is its Texas-based subsidiary,

which sells LEDs through distributors in the United States.  BU alleges that Everlight and

Everlight Americas produce and sell products that infringe upon U.S. Patent No. 5,686,738 (the

"'738 patent").

  Everlight has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal

jurisdiction.  For the reasons set forth below, the motion will be denied.

I.      **Background**

A.      **Procedural Background**

On October 17, 2012, BU filed this suit against Everlight and Everlight Americas, as well as separate suits against other electronics companies, alleging that they produce and sell products that infringe upon the '738 patent.

Everlight has moved to dismiss the action against it for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  That motion was accompanied by the affidavit of Mina Tsai, director of sales and administration at Everlight.  In response, BU filed an opposition accompanied by the affidavits of Ilan Barzilay, Ashley J. Stevens, and Eve L. Henson.  Everlight filed a reply accompanied by the affidavit of Tina E. Hulse.

B.      **Factual Background**

1.      **Everlight and Everlight Americas**

Everlight is a Taiwanese corporation, headquartered in Taiwan, that designs and manufactures LEDs for different applications.  (Tsai Aff. ¶ 2-3).  Everlight was founded in 1983 and has, at all relevant times, been publicly traded in Taiwan.  (*Id.* at ¶ 3).  Everlight has multiple sales offices in Europe and Asia.  (*Id.* at ¶ 5).  Everlight executives have recently stated to the media that the company is "vigorously tapping . . .  American markets in addition to the Taiwan market."  (*See* Henson Aff. at Ex. 15).

Everlight Americas is a subsidiary of Everlight.  It has its headquarters in Texas and a sales office in California.  (*Id.* at ¶ 4).  Everlight has a majority ownership position in Everlight Americas.  (*Id.* at ¶ 20).  Everlight supplies LED products to Everlight Americas for it to sell in the United States.  (*Id.* at ¶ 20).

2.      **The Contacts of Everlight with Massachusetts**

Everlight does not have an office in Massachusetts and is not registered to do business in the Commonwealth.  (*Id.* at ¶ 10-12).  Everlight does not pay taxes in Massachusetts.  (*Id.* at ¶ 16).

Everlight products are available for purchase in Massachusetts and for delivery in Massachusetts through third-party distributors, such as Arrow, Avnet, Mouser, Digi-Key, and Future Electronics.  (*See, e.g.,* Henson Aff.; Barzilay Aff.).  These distributors can be reached by following links from Everlight's website to the distributor's websites; many of the distributors specifically identify branch locations in Massachusetts, including in the towns of Wilmington, North Reading, and Bolton.  (Henson Aff. at Ex. 29-32).   Everlight also runs advertisements in LEDs Magazine, which has 1,053 subscribers in Massachusetts.  (Henson Aff. at Ex. 18).  At least one significant manufacturing company headquartered in Massachusetts, Analog Devices, Inc., uses Everlight products as components.  (Henson Aff. at Ex. 42).

On May 8, 2009, the Executive Director of BU's Office of Technology Transfer, Dr. Ashley J. Stevens, met with Everlight executives in a conference room on campus.  (Stevens Aff. ¶ 3).  The Everlight executives discussed their products, including LEDs utilizing potentially infringing technology, at that meeting.  (*See id.* at ¶¶ 4-6).  However, Dr. Stevens chose not to discuss the '738 patent or any of BU's intellectual property, because the university had already licensed the patent to another company; after the meeting, Dr. Stevens alerted BU's licensee of Everlight's potential infringement.  (*Id.* at ¶¶ 5-6).

II.      **Standard of Review**

In determining whether a district court has personal jurisdiction over an out-of-state

3

alleged patent infringer, the law of the Federal Circuit, rather than that of the regional circuit in which the district court sits, applies. *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).

Where, as here, a district court considers a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the court must resolve all factual disputes in the plaintiff's favor. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002). The court then applies the *prima facie* standard to determine whether it has jurisdiction over the defendant. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005). This standard is the "most conventional" of the methods for determining personal jurisdiction. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002) (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995)). In conducting a *prima facie* analysis, the court examines the existing record in the light most favorable to the plaintiff to determine whether facts sufficient to support jurisdiction over the defendant have been alleged. *See Trintec*, 395 F.3d at 1283. The plaintiff bears the burden of making a sufficient showing on "all of the necessary ingredients for an exercise of jurisdiction consonant with due process." *Beverly Hills Fan*, 21 F.3d 1558, 1566 (Fed. Cir. 1994).

III.   **Personal Jurisdiction**

"In order to establish personal jurisdiction in a patent infringement case over a non-resident defendant whose products are sold in the forum state, a plaintiff must show both that the state long-arm statute applies and that the requirements of due process are satisfied." *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319

(Fed. Cir. 2005).  When interpreting a state long-arm statute in the patent infringement context, a district court will "defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process" rather than look to the Federal Circuit for guidance.  *Graphic Controls Corp. v. Utah Med. Prods.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998).

A district court may exercise either specific or general jurisdiction over an alleged patent infringer.  "'Specific' jurisdiction refers to the situation in which the cause of action arises out of or relates to the defendant's contacts with the forum.  It contrasts with 'general' jurisdiction, in which the defendant's contacts have no necessary relationship to the cause of action."  *Beverly Hills Fan*, 21 F.3d at 1563.

BU contends that this Court has specific jurisdiction over Everlight.  In support of its assertion of personal jurisdiction, BU first contends that Everlight Americas is the alter ego of Everlight, and, therefore, the two corporations should be treated as one entity for the purposes of determining personal jurisdiction.  In the alternative, BU refers to the following contacts between Everlight and Massachusetts as the basis for personal jurisdiction:

- Everlight's business strategy for sales in the U.S. market, including advertisements in a publication that has subscribers in Massachusetts;

- the availability of Everlight's products through at least five third-party distributors in Massachusetts;

- the 2009 meeting between Everlight executives and the Executive Director of BU's Office of Technology Transfer;

- and the use of Everlight's products as components by a Massachusetts manufacturer.

A.      **Corporate Separateness of Everlight and Everlight Americas**

It is undisputed that the Court has personal jurisdiction over Everlight Americas.  BU contends that Everlight and Everlight Americas should not be recognized as separate entities and, therefore, Everlight is also subject to personal jurisdiction in Massachusetts.

In Massachusetts, there is a presumption of corporate separateness, meaning separate corporations are to be treated as separate entities absent an affirmative showing of compelling circumstances.  *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 128 (1st Cir. 2006). This presumption may be overcome by the operation of the doctrine of corporate disregard, which applies only when there is a compelling reason of equity "to look beyond the corporate form for the purpose of defeating fraud or wrong, or for the remedying of injuries."  *Gurry v. Cumberland Farms, Inc.*, 406 Mass. 615, 625-626 (1990) (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 618 (1968)) (internal quotations omitted).

In determining whether circumstances warrant the operation of the doctrine of corporate disregard, the court must evaluate the evidence as to the existence of some or all of the so-called "*Pepsi-Cola* factors."  Those factors include:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) non-functioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

*Platten*, 437 F.3d at 128 (citing *Attorney Gen. v. M.C.K., Inc.*, 432 Mass. 546 (2000); *Pepsi-Cola Metro. Bottling Co.v. Checkers, Inc.*, 754 F.2d 10, 14-16 (1st Cir. 1985)).

Accordingly, in order to determine whether Everlight and Everlight Americas should be

treated as one entity for the purposes of exercising personal jurisdiction, the Court would be required to decide whether some or all of those factors are present here.  However, due to the relative infancy of the case, the record is quite limited.  In addition, a decision to disregard the corporate separateness of defendants would have potentially substantial repercussions going well beyond the issue of jurisdiction.  Therefore, because the Court finds that it has personal jurisdiction over Everlight as a separate entity for the reasons set forth below, the Court will decline to address the question of corporate separateness at this early stage.

**B.      Specific Jurisdiction over Everlight as a Separate Entity**

In Massachusetts, a federal court assessing personal jurisdiction may proceed directly to the constitutional analysis, because "the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over [a] person to the limits allowed by the Constitution of the United States." *Adams v. Adams*, 601 F.3d 1, 5 (1st Cir. 2010).  These limits "require[] only that in order to subject a defendant to a judgment *in personam*, if [defendant] be not present within the territory of the forum, [defendant] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Federal Circuit applies a three-prong test to determine if the due process requirements have been met and specific jurisdiction exists:  "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and

fair." *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010)

(citing *Akro Corp.*, 45 F.3d at 1543).

### 1.      Purposefully Directed Activities

The first prong of the test for personal jurisdiction is aimed at determining whether the

defendant has a sufficient quantum of "minimum contacts" with the forum state to satisfy the

requirements of the Due Process Clause.  *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360

(Fed. Cir. 2001) ("The first two factors correspond with the 'minimum contacts' prong of the

*International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial

justice' prong of the analysis.").

The activities of Everlight in Massachusetts that form the basis for the assertion of

personal jurisdiction are of the type that are most appropriately analyzed under a "stream-of-

commerce" theory of jurisdiction.  That is, BU essentially contends that Everlight is subject to

personal jurisdiction in Massachusetts because it utilizes a distribution network to put its

products into the stream of commerce, knowing that those distributors serve customers in

Massachusetts.  This particular theory of personal jurisdiction has been the subject of much

debate, and little consensus, throughout the United States, including in the Supreme Court.

At the core of the debate is the question of whether a defendant can be subject to personal

jurisdiction in a forum merely because the defendant had placed a product in the stream of

commerce, and it ultimately reached the forum state.  That issue was raised, but not answered, by

the Supreme Court in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*,

480 U.S. 102 (1987).  In *Asahi*, Justice Brennan, writing for four Justices, expressed the opinion

that "jurisdiction premised on the placement of a product into the stream of commerce is

consistent with the Due Process Clause," reasoning that "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi*, 480 U.S. at 117 (Brennan, J., concurring). However, Justice O'Connor, also writing for a plurality of four justices, disagreed. She expressed the view that "[t]he 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.* The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112 (internal citations omitted) (emphasis in original).

To this day, neither Justice Brennan's nor Justice O'Connor's test has garnered a majority, and thus there is no definitively applicable precedent. Most recently, in *McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), the Supreme Court again declined to resolve the split as to what is constitutionally required for a court to exercise personal jurisdiction over a defendant on a stream-of-commerce theory. Likewise, the Federal Circuit has "refrain[ed] from taking a position on the proper articulation of the stream-of-commerce theory." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012). Accordingly, this Court will analyze the existence of personal jurisdiction over Everlight on a stream-of-commerce theory under both the Brennan and O'Connor versions of the test.

Taking plaintiff's allegations as true, Everlight's contacts with Massachusetts certainly subject it to personal jurisdiction there under Justice Brennan's more expansive test. There is no dispute that Everlight has purposefully moved its products into the stream of commerce in the United States through its subsidiary Everlight Americas, and that those products have ultimately

been sold in Massachusetts.  As the information on Everlight's website makes evident, Everlight was aware that Everlight Americas was offering its products to Massachusetts residents through third-party distributors.  Furthermore, a significant purchaser, Analog Devices, Inc., was headquartered in Massachusetts and had multiple manufacturing facilities there.  Finally, the advertisements in LEDs Magazine, which has 1,053 subscribers in Massachusetts, notably and prominently referred to Everlight rather than Everlight Americas.  (*See* Henson Aff. at Ex. 18).

The Brennan test requires only that a defendant manufacturer "be aware that the final product is being marketed in the forum State" in order to be subject to personal jurisdiction there.  *Asahi*, 480 U.S. at 117 (Brennan, J., concurring).  Under that test, the relevant distinction is between "the foreseeability of litigation in a State to which a consumer fortuitously transports a defendant's product (insufficient contacts) with the foreseeability of litigation in a State where the defendant's product was regularly sold (sufficient contacts)."  *Id.* (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980)).  Here, taking the above facts as true, Everlight was aware that its products were being sold in Massachusetts.  Accordingly, under the Brennan test, there are sufficient contacts for this Court to exercise personal jurisdiction over Everlight.

It is a much more difficult question whether the contacts alleged here are sufficient to satisfy the more exacting test articulated by Justice O'Connor.  According to the O'Connor test, simply placing an article in the stream of commerce, with the awareness that it may move into the forum state, is not "an act purposefully directed toward the forum state" and, therefore, is not sufficient to subject a defendant to personal jurisdiction there.  *Asahi*, 480 U.S. at 112.  Instead, there must be evidence of some "additional conduct" of the defendant that "indicate[s] an intent or purpose to serve the market in the forum State, for example, designing the product for the

market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

In deciding that the California court lacked personal jurisdiction over the defendant in *Asahi*, Justice O'Connor emphasized that the defendant "[did] not do business in California; . . . [had] no office, agents, employees, or property in California; . . . [did] not advertise or otherwise solicit business in California; . . . did not create, control, or employ the distribution system that brought its valves to California; and . . . [did not design] its product in anticipation of sales in California." *Id.* at 112-113.  The Federal Circuit, applying this test in the patent-infringement context, has provided some examples of contacts that are sufficient to support jurisdiction, as well as some that are not.

In *Beverly Hills Fan*, 21 F.3d at 1563-64, the Federal Circuit determined that a Virginia court had jurisdiction over the defendants based upon "[the defendants'] placing the accused fans into the chain of commerce, which include[d] shipping the fans into Virginia for sale to customers through an intermediary . . . ; [the defendants' ongoing and intentional] commercial relationship with [the intermediary] . . . ; and [the undisputed presence of] at least fifty-two [of the defendants'] fans . . . in Virginia . . . , reflecting an ongoing relationship with the Virginia retailer and customers."  The Federal Circuit concluded, based on these ongoing relationships, "that the distribution channel formed by defendants and [the intermediary] was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was Virginia." *Id.* at 1564.

In *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 426, 428-429 (Fed. Cir.

11

1996), the Federal Circuit determined that a California court had jurisdiction over the defendant, an Italian company, based on the fact that the defendant "shipp[ed] the products from Italy, through Canada, to [an exclusive distributor in] Des Moines, Iowa. . . . [that, pursuant to defendant's] marketing agreement and practices . . . advertis[ed] in California, and [] establish[ed] channels for providing regular advice in California."  The Federal Circuit concluded, based on these facts, that "[defendant] did not simply place its product into the stream of commerce . . . [but rather] knowingly and intentionally exploited the California market through its exclusive distributor[]."  *Id.* at 429.

In contrast, *3D Sys. v. Aarotach Labs., Inc.,* 160 F.3d 1373, 1380 (Fed. Cir. 1998), the Federal Circuit found the contacts of the defendant to be insufficient to support jurisdiction where "[the defendant] did not take any direct actions toward the residents of California, except that its name appeared . . . on the letterhead used by [a related company] to correspond with certain California residents; although [the defendant] maintained a World-Wide-Web site viewable in California, any email responses to that site were forwarded to [the related company]; and, on its own, [the defendant] directed no activity towards the residents of California."[1]

In *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222 (Fed. Cir. 2010), a case cited by both parties, the Federal Circuit found the foreign defendant's contacts with California sufficient to support personal jurisdiction there.  The defendant in that case was a software company from Cyprus that distributed its product to the United States market through a

---

[1] In *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308-09 (Fed. Cir. 1999), the Federal Circuit found a lack of jurisdiction based on the second prong of the test, holding that "a mere offer to donate, where a donation is never made, cannot be an offer for sale . . . [and, therefore,] it could not 'give rise' to a cause of action under section 271(a)."  However, in making that determination, the Court accepted the "assertion that the presentation to the school system officials [during which the donation was offered] satisfie[d] the 'directing activities to residents of the forum' prong of the test."  *Id.* at 1305.

wholly-owned subsidiary.  In addition to putting its products into the stream of commerce, the court found the following facts to be relevant for the purposes of establishing jurisdiction:  a public statement by the CEO about the defendant company "conquering" the U.S. market; "the importation of allegedly infringing products into California; the extraction of royalty payments for the sale of those products; and [the defendant's] agreement to provide assistance to [its subsidiary] in selling, reproducing, and modifying the accused products in California."  *Id.* at 1231-32.

Here, the plaintiff contends that the following contacts of Everlight go beyond merely placing its products into the stream of commerce:  Everlight directed its customers to (at least) three distributors with branch locations in Massachusetts; Everlight advertised in publications circulated in Massachusetts; and Everlight executives met with BU's Executive Director in charge of licensing the patent-in-suit on the campus of BU.  Everlight did not itself sell or import its products to Massachusetts; it instead used a subsidiary and third-party distributors.  The issue thus becomes whether Everlight's contacts with Massachusetts were more similar in substance to the contacts of the *Beverly Hills Fan*, *Viam,* and *Abbyy Software* defendants or to the contacts of the *Aarotech Labs* defendant.

On the facts as plaintiff has alleged them, Everlight's contacts with Massachusetts are more significant than the passive actions of the *Aarotech Labs* defendant.  In contrast to that defendant, Everlight has taken some of its own actions that have reached the Commonwealth—advertising in a publication with circulation there and  meeting with BU officials in efforts to expand its business.  These activities are more analogous to the contacts found sufficient in *Beverly Hills Fan, Viam*, and *Abbyy Software.*  Although the subsidiary,

Everlight Americas, is not based in Massachusetts, as the subsidiary was in *Abbyy Software*, the same general principles that motivated that decision are at work here.  Everlight has the professed goal of capturing a larger portion of the United States market for LEDs and has tasked its United States subsidiary with accomplishing that goal by selling and distributing its products nationwide, including in Massachusetts.  Like the defendants in *Beverly Hills Fan*, Everlight "intentionally established" that distribution channel, and Everlight "knew, or reasonably could have foreseen, that a termination point of the channel was [Massachusetts]."  21 F.3d at 1564.[2]

Perhaps most importantly, Everlight, according to plaintiff's allegations, has taken at least a few of the actions explicitly mentioned by Justice O'Connor in *Asahi* as examples of additional contacts that "indicate an intent or purpose to serve the market in the forum State." *Asahi*, 480 U.S. at 112.  Specifically, Everlight has "advertised" in Massachusetts and "market[ed] the product through a distributor" in Massachusetts.  *Id.*  Unlike the foreign defendant in *Asahi*, Everlight did, in fact, "control, or employ the distribution system that brought its [products] to [Massachusetts]."  *Id.* at 112-113.

Accordingly, the Court finds—viewing the record in the light most favorable to the plaintiff—that the facts are sufficient to support jurisdiction over defendant Everlight, under both

---

[2] Furthermore, the meeting of Everlight executives with BU's Executive Director is analogous to the meeting with school board officials implicitly accepted by the Federal Circuit as sufficient contact with the forum in *HollyAnne*, 199 F.3d at 1305.  The most significant difference between that meeting and the one at issue here is that the meeting in *HollyAnne* involved the defendant offering its products as a donation to the school, whereas here it is alleged that defendant Everlight's meeting at BU involved Everlight's business interest in BU's patents and potential licenses to use them.  That difference deals not with the quantum of the contact with the forum, but rather with the content of the contact, which is the subject of the second prong of the test.  For the purposes of this first prong, it is sufficient to establish that it was a significant, specifically-directed visit by defendant Everlight to Massachusetts.

the Brennan and O'Connor tests for the stream-of-commerce theory of jurisdiction.[3]

## 2.     Relatedness

The second prong of the Federal Circuit's test for personal jurisdiction deals not with the quantum of the defendant's contacts with the forum state, but rather with the content of those contacts.  When, as here, the defendant's contacts with the forum state are not systematic and pervasive, due process dictates that jurisdiction can only be exercised over a defendant if its contacts with the forum state form the basis for or relate to the specific claims at issue.  *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) ("The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis."); *see also Nuance*, 626 F.3d at 1231.

Patent infringement occurs when someone "without authority makes, uses, offers to sell or sells any patented invention."  35 U.S.C. § 271(a).  Thus, a patent infringement case arises out of any such activities alleged to be carried out by the defendant in the complaint.  *See 3D Sys. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1378 (Fed. Cir. 1998).

All of Everlight's alleged contacts with the forum state involve either selling or offering to sell its allegedly infringing products in Massachusetts, with the possible exception of the 2009 meeting at BU.  BU concedes that the '738 patent was not specifically a topic of discussion at the on-campus meeting.  However, BU has alleged that Everlight's purpose in arranging the

---

[3] The Court also notes, as the Supreme Court did in *Asahi*, that it may very well be "consistent with the Due Process Clause of the Fifth Amendment, [for Congress to] authorize federal court personal jurisdiction over alien defendants based on the aggregate of national contacts, rather than on the contacts between the defendant and the State in which the federal court sits."  *Asahi*, 480 U.S. 102, 113 (1987).  Such a jurisdictional provision would be particularly useful for the adjudication of patent infringement disputes, such as the present case, where the alleged infringer is a foreign entity for which no particular district would serve as a convenient forum.

meeting was to express interest in obtaining licenses for LED technology patented by BU and that the '738 patent family was the most important intellectual property owned by BU on the subject.   Taking those allegations as true, although the meeting itself may not have directly involved unauthorized "making, using, or selling," the Court concludes that it was related to the allegedly infringing activities that gave rise to the case at bar.

Accordingly, the Court finds that Everlight's contacts with Massachusetts are all related to the patent infringement claims before it, and therefore the Court may exercise personal jurisdiction over Everlight for the purposes of adjudicating them.

### 3.      Reasonableness and Fairness

Even when the necessary minimum contacts with the forum state are present, "[a] clash between the fundamental social policies of a forum state and another state related to the action could constitutionally trump jurisdiction." *3D Sys.*, 160 F.3d at 1380.  The third and final prong of the Federal Circuit's test for personal jurisdiction is intended to determine if such a situation exists in a particular case.

However, the Federal Circuit has maintained a restrictive characterization of this third prong, remarking that "defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'" *Akro Corp. v. Luker*, 45 F.3d 1541, 1549 (Fed. Cir. 1995) (quoting *Beverly Hills Fan*, 21 F.3d at 1568).

The "gestalt" factors articulated by the Supreme Court for determining whether the exercise of personal jurisdiction would be fair and reasonable are (1) the defendant's burden of

appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985).

Everlight contends that exercising personal jurisdiction over it would be unfair primarily because the burden of litigating in this forum will be significant for the company, which is based in Taiwan. Everlight does not specifically address the other "gestalt" factors except to suggest that Massachusetts's interest in vindicating federal patent rights is low and that BU will not be hindered from obtaining relief because Everlight Americas will still be subject to suit. The Court finds none of these arguments compelling enough to stop it from exercising otherwise constitutional personal jurisdiction over Everlight. Perhaps most damaging to Everlight's argument against the Court's exercise of jurisdiction is that, as Everlight concedes, the patent law of United States, as established by the Supreme Court and the Federal Circuit, will apply to the claims at issue no matter where they are litigated and no alternative United States forum has been suggested that would be more convenient for Everlight.

Accordingly, the Court finds that its exercise of personal jurisdiction over Everlight would neither be unreasonable nor unfair.

**V.**      <u>**Conclusion**</u>

For the foregoing reasons, the Court finds that it has personal jurisdiction over Everlight and the defendant's motion to dismiss for lack of personal jurisdiction is therefore DENIED.

**So Ordered.**


                                 <u>/s/ F. Dennis Saylor</u>
                                 F. Dennis Saylor IV
Dated: May 28, 2013             United States District Judge