**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **TRUSTEES OF BOSTON UNIVERSITY,** *Plaintiff,* v. **EVERLIGHT ELECTRONICS CO., LTD., ET AL.,** *Defendants.* | ) ) ) ) ) ) ) ) ) ) | **Consolidated Civil Action No. 12-cv-11935-PBS** |
| **TRUSTEES OF BOSTON UNIVERSITY,** *Plaintiff,* v. **EPISTAR CORPORATION, ET AL.,** *Defendants.* | ) ) ) ) ) ) ) ) ) | **Civil Action No. 12-cv-12326-PBS** |
| **TRUSTEES OF BOSTON UNIVERSITY,** *Plaintiff,* v. **LITE-ON INC., ET AL.,** *Defendants.* | ) ) ) ) ) ) ) ) ) | **Civil Action No. 12-cv-12330-PBS** |
| **TRUSTEES OF BOSTON UNIVERSITY,** *Plaintiff,* vs. **AMAZON.COM, INC.,** *Defendant,* | ) ) ) ) ) ) ) ) ) ) | **Civil Action No. 13-cv-11097-PBS** |
| **TRUSTEES OF BOSTON UNIVERSITY,** *Plaintiff,* v. **APPLE, INC.** *Defendant*. | ) ) ) ) ) ) ) ) ) ) | **Civil Action No. 13-cv-11575-PBS** |

| | |
|---|---|
| **TRUSTEES OF BOSTON UNIVERSITY,**   )<br>         *Plaintiff,*                                           )<br> v.                                                                 )<br>                                                                     )<br> **SAMSUNG ELECTRONICS CO., LTD.,**           )<br> **SAMSUNG ELECTRONICS AMERICA, INC.,**    )<br> **SAMSUNG LED CO., LTD.,**                           )<br> **SAMSUNG LED AMERICA, INC.,**                    )<br> **SAMSUNG ELECTRO-MECHANICS CO.,**         )<br> **LTD., and SAMSUNG ELECTRO-MECHANICS** )<br> **AMERICA, INC.,**                                             )<br>         *Defendants.*                                          )<br> ─────────────────────────────                        ) | **Civil Action No. 13-cv-10659-PBS** |
| **TRUSTEES OF BOSTON UNIVERSITY,**   )<br>         *Plaintiff,*                                           )<br> vs.                                                                )<br>                                                                     )<br> **SEOUL SEMICONDUCTOR CO., LTD.,**           )<br> **SEOUL SEMICONDUCTOR, INC., and**              )<br> **SEOUL OPTODEVICE CO., LTD.**                    )<br>         *Defendants.*                                          )<br> ─────────────────────────────                        ) | **Civil Action No. 12-cv-11938-PBS** |
| **TRUSTEES OF BOSTON UNIVERSITY,**   )<br>         *Plaintiff,*                                           )<br> vs.                                                                )<br>                                                                     )<br> **ARROW ELECTRONICS, INC.,**                      )<br> **COMPONENTSMAX, INC.,**                              )<br> **NRC ELECTRONICS, INC.,**                              )<br> **NU HORIZONS ELECTRONICS CORP.,**        )<br>         *Defendants*                                           )<br> ─────────────────────────────                        ) | **Civil Action No. 13-cv-11105-PBS** |

**PLAINTIFF'S MOTION FOR ENTRY OF ITS<br>GLOBAL PROTECTIVE ORDER POSITIONS**

On August 16, 2013, the parties filed a Global Joint Statement regarding discovery and scheduling issues. *See, e.g.*, Case No. 1:12-cv-11935 at [Dkt. 142]. The parties agreed to submit a Global Protective Order "to the Court, on or before September 6, 2013, for consideration and entry ***consistent with*** its prior ruling in civil action number 12-cv-11935." *Id*. at p. 29 (emphasis added). As a result, Trustees of Boston University ("Boston University") filed a Global Protective Order that sets forth the parties' agreements and respective positions regarding disputed points. [Dkt. No. 147]. Boston University now files this motion in support of its positions per the agreed deadline.[1] Several reasons exist to adopt Boston University's form of the Protective Order:

First, Defendants[2] ignore the law of the case, attempt to avoid their agreement to submit an order "consistent with" the Court's prior rulings, and seek to re-litigate the imposition of a prosecution bar. This Court previously held that outside counsel, Shore Chan DePumpo LLP, for Boston University are not competitive decision-makers. Case No. 1:12-cv-11935 [Dkt. No. 110]. Defendants cannot produce any evidence to refute the Court's prior holding. *Id.* ("To satisfy its burden, the party seeking a patent prosecution bar must present facts sufficient to show that counsel at issue are involved in 'competitive decisionmaking.'"). Defendants, instead, ask the Court to speculate that Plaintiff's counsel might take actions in contempt of the protective order and which violate the ethical obligations imposed upon officers of the Court. There is no reason to presume such misconduct.[3] Such onerous provisions may only be ***considered*** if there is

---

[1] Defendants refused to file any statement of positions today as agreed.
[2] "Defendants" refers to all above-captioned defendants.
[3] *In re Sibia Neurosciences, Inc.*, No. 525, 1997 WL 6881741997 WL 688174, at *3 (Fed. Cir. 1997) (An acquisition or prosecution bar cannot "rest on a general assumption that one group of lawyers are more or less likely inadvertently to breach their duty under a protective order.").

proof—on a counsel-by-counsel basis—that outside counsel are actively involved in competitive decision-making. As this Court previously found, no such proof exists.

Second, Defendants attempt to bar Boston University from employing *any* outside consultants in this case. Defendants first define "Outside Consultant" as excluding anyone who within the last three years was or is an ***employee or consultant for any party or competitor of any opposing party***. This definition would literally cover every person with any current experience in the LED industry.

With respect to former employees, their duties to the Defendants are the subject of their employment agreements. This Court should not rewrite those employment agreements to effectively bar former employees from "competing" against their former employers by consulting for Boston University. The Defendants should not be allowed to re-write in a protective order the employment contracts of former employees to add a covenant not to compete for which the employees were not compensated and which they cannot negotiate. A protective order is not the place to define relationships between Defendants and their former employees. The same is true for former consultants. What those consultants can and cannot do should be defined by their consulting agreements, not a protective order that is *ex parte* as to the consultants, and which would fundamentally change the bargain struck between the Defendants and their past consultants.

The Defendants refuse to permit Boston University to use its professors, including the inventor at issue, by excluding any "employees … for any party" from the definition of "Outside Consultant." This leaves Boston University in the position of not possessing the ability to hire any consultants or experts who have worked in the industry for at least three years, or who have consulted for the industry in the last three years. This would bar Boston University professors

and their colleagues who have consulted for either a Defendant or a competitor in the industry, even if their consulting agreements include no such prohibition.

If Defendants' attempt to prevent Boston University from utilizing any experts through its definition fails, Defendants seek the right to prevent any qualified expert for receiving any confidential information based upon "another objectively reasonable concern", which is undefined. There are no "objectively reasonable concern[s]"; this procedure is simply meant to stymie Boston University's utilization of expert witnesses and consultants and delay their work.

Third, Defendants seek to further delay discovery by including a provision stating this Protective Order "does not govern the production of source code" and that "[s]ource code will not be produced … until the Proposed Addendum to the Protective Order concerning the production of source code is entered by the Court." *See* Global Stipulated Protective Order at ¶ 30(e). The only purpose for this provision is delay. Defendants have not defined the term "source code" nor have they identified what source code documents they anticipate producing. This is not a software case in which source code in the traditional sense will be required to be produced. But technical information related to the way that Defendants' LEDs are manufactured is highly relevant and is required to be produced. Defendants will rely on this provision and the undefined term "source code" to withhold all relevant technical documents because Defendants believe those documents should be subject to "source code" level protection.

Fourth, Defendants seek to remove the ability to utilize mock jurors. While seemingly agreeing that mock jurors can be used, Defendants refuse to permit mock jurors to "receive" any designated material. This would render any mock trial meaningless. They cannot judge a case without receiving evidence. Any mock jurors must sign the Protective Order, and will respect this Court's power or be subject to contempt.

Therefore, Boston University respectfully requests that the Court adopt its proposed Global Stipulated Protective Order provisions.

## I.  ARGUMENT

**A.  Defendants' proposed prosecution and acquisition bars are legally unjustifiable because Boston University's outside counsel are not competitive decision-makers.**

This issue arises from Defendants' proposal to delete a paragraph that would expressly allow Boston University's outside counsel to participate in the *inter partes* review proceedings of the patents-in-suit and Defendants' proposed acquisition bar, as shown below:

| Boston University's Proposal | Defendants' Proposal |
|---|---|
| Pursuant to the Court's July 19, 2013 ruling on this issue, this Protective Order does not affect the right of Plaintiff or Plaintiff's counsel to participate in any *Inter Partes* Review, Ex Parte Review, reexamination, or opposition of the patents-in-suit or of any other patent that has a common priority claim with the patents-in-suit, that claims priority to (directly or indirectly) to the patents-in-suit, or that is otherwise related to the patents-in-suit before any foreign or domestic agency, including the United States Patent and Trademark Office. | Plaintiff's Retained Outside Counsel of Record and Outside Consultants may not advise any clients or otherwise participate in the acquisition of patents involving GaN light-emitting diodes or GaN laser diode semiconductor devices for the purpose of asserting them against any of the Defendants for two years after the conclusion of the Litigation, including any appeals. |

Global Stipulated Protective Order at ¶ 16.

But under binding Federal Circuit precedent, Defendants must produce evidence sufficient to prove that Boston University's outside counsel, Shore Chan DePumpo LLP, are

competitive decision-makers before the Court may even consider whether a prosecution or acquisition bar is warranted.[4] The competitive decision-maker showing must be made "by the facts on a counsel-by-counsel basis."[5] Neither a prosecution nor acquisition bar can rest simply on "a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order."[6] The competitive decision-maker issue was resolved when Magistrate Judge Boal expressly ruled against the imposition of a prosecution bar:

> Here, Defendants argue that BU's litigation counsel should be precluded from participating in pending inter partes review proceeding before the PTO but have not provided specific evidence on a counsel-by-counsel basis. Instead, at oral argument, Defendants pointed to a sentence in the affidavit of Michael Shore, counsel for BU, that states as follows: "Boston University has engaged my firm, Shore Chan DePumpo LLP, to license and enforce U.S. Patent No. 5,686,738." See Docket No. 90 at ¶ 3. General statements are not sufficient to show competitive decision making. See Deutsche Bank, 605 F.3d at 1378. Accordingly the Court declines to order a patent prosecution bar.[7]

In light of this decision, the parties agreed, in the Global Status Report, to file a Global Protective Order "for consideration and entry **consistent with its prior ruling in civil action number 12-cv-11935**." *See, e.g.*, Case No. 1:12-cv-11935 at [Dkt. 142] (emphasis added).

---

[4] *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) ("A party seeking a protective order carries the burden of showing good cause for its issuance. The same is true for a party seeking to include in a protective order a provision effecting a patent prosecution bar…. We stated that '[w]hether an unacceptable opportunity for inadvertent disclosure exists ... must be determined ... by the facts on a counsel-by-counsel basis....' We went on to hold that the counsel-by-counsel determination should turn on the extent to which counsel is involved in 'competitive decision making' with its client.") (internal citations omitted).
[5] *Id.*
[6] *In re Sibia Neurosciences, Inc.*, No. 525, 1997 WL 688174, at *3 (Fed. Cir. Oct. 22, 1997) (unpublished).
[7] *Trustees of Boston University v. Everlight Electronics Col, Ltd.*, et al., Consolidated Civil Action No. 12-cv-11935-FDS, Dkt. 110 at 5 (D. Mass. July 19, 2013).

Nonetheless, Defendants believe this decision (and their agreement) is not binding and once more seek to impose a prosecution bar and associated acquisition bar that is based on the same previously-decided standard. But the facts have not changed. As Michael Shore previously stated, no one at Shore Chan DePumpo LLP has "ever provided Boston University with any assistance with invention disclosures, inventions under development, investigation of prior art relating to new inventions."[8] Nor has anyone at Shore Chan DePumpo LLP provided Boston University assistance in making any "strategic decision on the type and scope of patent protection available for new inventions."[9] These are exactly the considerations the Federal Circuit specifically highlighted in *Deutsche Bank* as being the hallmark of a competitive decision-maker.[10]

Defendants have expressed a belief that Michael Shore may be a competitive decision-maker as a result of his involvement with wholly-unrelated third party, Third Dimension Semiconductor. Third Dimension Semiconductor "does not conduct any operations except that it owns and licenses patents exclusively in the field of power MOSFETs, a technology completely

---

[8] *Trustees of Boston University v. Everlight Electronics Col, Ltd.*, et al., Consolidated Civil Action No. 12-cv-11935-FDS, Dkt. 90 at ¶4 (D. Mass. July 19, 2013).
[9] *Id.*
[10] *Deutsche Bank*, 605 F.3d at 1380 ("Such involvement may include obtaining disclosure materials for new inventions and inventions under development, investigating prior art relating to those inventions, making strategic decisions on the type and scope of patent protection that might be available or worth pursuing for such inventions, writing, reviewing, or approving new applications or continuations-in-part of applications to cover those inventions, or strategically amending or surrendering claim scope during prosecution. For these attorneys, competitive decision making may be a regular part of their representation, and the opportunity to control the content of patent applications and the direction and scope of protection sought in those applications may be significant. The risk of inadvertent disclosure of competitive information learned during litigation is therefore much greater for such attorneys.")

unrelated to GaN LEDs."[11] Mr. Shore is not an officer or director of Third Dimension Semiconductor.[12] Nor is Mr. Shore "involved in any decision-making of any kind at any level for a company that makes, uses, sells, offers to sell, designs, manufactures, markets, imports or seeks patents related to GaN LEDs of any type, kind or variety."[13] Bottom line, Mr. Shore is not a competitive decision-maker.

Despite this unrefuted evidence, Defendants now seek to add an acquisition bar to the Protective Order that would broadly prohibit anyone acting as either outside counsel or an outside consultant for Boston University in this case from "advis[ing] any clients or otherwise participate in the acquisition of patents involving GaN light-emitting diodes or GaN laser diode semiconductor devices." Global Stipulated Protective Order at ¶ 16(b). Simply being hired by Boston University to work on this case triggers this provision. Under the Defendants' proposal, Shore Chan DePumpo, LLP would not be allowed to advise any clients in the field of GaN LEDs for two years after the conclusion of this case, including appeals which could last several additional years.

Any expert hired in this case by Boston University would likewise be unable to pursue any sort of independent research in the broad field of LED semiconductors. This would practically divest the Court and the parties of the ability to utilize expert testimony; what expert will give up the ability to work in their chosen field to testify in one case? This is completely unwarranted and contrary to the purpose of acquisition and prosecution bars. Even if such a clause were warranted, it must be narrowly tied to a very real possibility that it would be

---

[11] Declaration of Michael W. Shore ("Shore Decl.") at ¶ 5.
[12] *Id.*
[13] *Id.* at ¶3.

"'humanly impossible' to control … inadvertent disclosure" of the protected information.[14] That is not the case; this clause is triggered regardless of whether an individual has even seen any protected information. Moreover, the term "GaN semiconductors" is not well defined and could be interpreted to include any semiconductor containing GaN, which would encompass all manner of devices not relevant to the GaN light emitting diodes and laser diodes at issue in this case.

Therefore, the Court should again deny Defendants' request to include an acquisition and prosecution bar in the Protective Order.

**B.    Defendants should not be permitted to deny Boston University its right to expert witnesses.**

Defendants attempt to eliminate Boston University's ability to utilize any qualified expert witnesses:

| **Plaintiff's Proposal** | **Defendants' Proposal** |
|---|---|
| "Outside Consultant" shall refer to a person with specialized knowledge or experience in a matter pertinent to the Litigation, who has been retained by a Party or Counsel of Record to serve as an expert witness or as a consultant in this Litigation. | "Outside Consultant" shall refer to a person with specialized knowledge or experience in a matter pertinent to the Litigation, who has been retained by a Party or Counsel of Record to serve as an expert witness or as a consultant in this Litigation, **who currently or within the last three years, is not an employee of or consultant for a Party or of a competitor of an opposing Party**. |

---

[14] *Deutsche Bank*, 605 F.3d at 1378.

Global Stipulated Protective Order ¶ 11. In contrast to Boston University's definition, Defendants remove from available outside consultants or expert witnesses anyone who currently or within the last three years: (1) consulted with or was employed by any of Defendants; (2) consulted or was employed by any competitor of Defendants; and (3) consulted or was employed by Boston University. This restriction is unilateral; Defendants are still permitted to hire consulted hired by co-defendants—their competitors in the marketplace—because those co-defendants are not "an opposing party."

With respect to Defendants' current or former employees and consultants, Defendants have the right to contract with those individuals however they wish. If Defendants believe their current or former employees have access to confidential information, those employees may be bound by common law or contractual obligations to keep such information confidential. But Defendants should not be permitted to exclude former employees from employment by Boston University if Defendants neglected to obtain such protection or the law does not otherwise provide such protection. Defendants simply want to exclude from the reach of potential experts any individual who provided any consulting or other work for each of the massive Defendants. Apple, Samsung, Seoul Semiconductor, and Epistar, for example, employ and have employed tens of thousands of individuals, have sponsored research at multiple universities (including Boston University) and have hired consultants by the thousands. Defendants should not be permitted to exclude those individuals from the group of potential experts. There is a "public interest in permitting experts to 'pursue their trade' and parties 'to select their own experts'" that Defendants should not be permitted to avoid. *Palmar Medical Techs., Inc. v. Tria Beauty, Inc.*, No. 09-11081, 2012 WL 517532, at *2 (D. Mass. Feb. 15, 2012).

When the former and/or current employees of the Defendants' competitors are added to the prohibited persons list, the entire marketplace of potential experts is foreclosed. The market for LEDs is substantially composed of Defendants and their competitors – after excluding all of the employees and consultants of the entire industry, no one is left to serve as an expert. If Defendants have a specific concern regarding a designated expert, they should raise it specifically in accord with appropriate motion practice.

Finally, Defendants' definition excludes current employees of the parties from serving as consultants for their own employer. The inventor in this case, Dr. Theodore Moustakas, is an expert in this field and Boston University may so designate him. If Defendants have an objection to Dr. Moustakas's designation, they should be required to accordingly move to exclude him.

The purpose of this definition is simply to create a tactical advantage. Defendants' limitation does not apply between Defendants, but only to the "opposing party" – Boston University. If Defendants' concerns about protecting confidential information were genuine, they would restrict access between themselves, their real competitors in the LED marketplace.

The protective order already provides the solution to Defendants' perceived problems. The parties agree that either party may object to disclosure to outside consultants upon a showing of "good cause." Global Stipulated Protective Order ¶ 20. "Good cause" means a factually supported belief that either "(1) the Person had a prior confidential relationship with an adverse Party [or] (2) the Person is a competitive decision-maker." *Id.* If any of Defendants' former or current employees had or have such a relationship, Defendants may properly object upon Boston University's notice that it intends to provide such confidential information in accord with the

PLAINTIFF'S MOTION FOR ENTRY OF ITS
GLOBAL PROTECTIVE ORDER POSITIONS                                        Page 10

protective order. Any of Defendants' concerns are addressed by this provision without impeding Boston University's right to the Outside Counsel of its choice.

Defendants seek to prevent or delay Boston University from using the Outside Consultants of its choice simply by expressing "another objectively reasonable concern." What exactly is an "objectively reasonable concern?" The parties have agreed to limit disclosure regarding individuals with a prior confidential relationship (which should be defined by contract) or individuals whom are competitive decision-makers within their organization. This is supported by law.[15] Under their undefined and unsupported standard of simply stating a "concern", Defendants' reserve the right to file motion after motion preventing Boston University from providing highly relevant information to the outside consultant of its choice on a timely basis.

**C.   Defendants cannot further delay discovery by stating that production of source code is not governed by the proposed Protective Order.**

Defendants seek to further delay both discovery and resolution of the case by adding a provision to the Protective Order that states:

> This Order does not govern the production of source code. If source code is to be produced in this Litigation, the Parties will negotiate in good faith provisions concerning the production of source code and will submit to the Court an Addendum to the Protective Order concerning the production of source code. Source code will not be produced in this Litigation until the Proposed Addendum to the Protective Order concerning the production of source code is entered by the Court. Global Stipulated Protective Order ¶ 30(e).

---

[15] *Palomar*, 2012 WL 517532, at *2 ("To prevail on their motion to disqualify, [the moving party] must prove both that (1) it was objectively reasonable for them to believe that [the expert] had a confidential relationship with [the moving party]; and (2) that [the moving party] disclosed confidential information to [the expert] that is relevant to the current litigation."); *see also Lacroix v. BIC Corp.*, 339 F. Supp. 2d 198, 200-01 (D. Mass. 2004).

PLAINTIFF'S MOTION FOR ENTRY OF ITS
GLOBAL PROTECTIVE ORDER POSITIONS                                                        Page 11

This is not a software case. This case deals with the manufacture, sale, offers for sale, and import of LEDs. Boston University does not believe that there is any need for the production of any "source code" in this case. To date, Defendants have not stated that they anticipate the production of any "source code," but have not defined "source code." It has become common in semiconductor related patent cases for defendants to resist discovery by attempting to classify various documents relating to the design and manufacture of semiconductors as "source code." These manufacturing details, such as the die set used to manufacture various related parts (and thus determine which products infringe or do not infringe in the exact same way) and the temperatures at which certain manufacturing steps are conducted (which determines infringement or non-infringement), are highly relevant and should be disclosed. If Defendants wish to designate that material as outside-counsel only, they are entitled to do so. But Boston University fears that if this provision is included in the Protective Order, Defendants will continue to resist production of technical documents by arguing that manufacturing details are "source code" and cannot be produced until a Source Code Addendum has been entered by this Court. For three months, Boston University has attempted to obtain a protective order so that it can begin receiving documents from Defendants. Defendants have resisted providing a protective order for that entire time, and have never attempted to provide a provision that explains how "source code" should be treated. And Defendants have refused to produce any information that is not publicly available under the guise that it all must be covered by a protective order. Thus, the Court should not include a "source code" provision in the Protective Order. The outside-counsel only and confidential designations are enough.

**D.     The parties should be permitted to utilize mock jurors.**

The parties seemingly agree that mock jurors are permitted. The parties agree that mock jurors should not be "officers, directors or employees of any of the Parties or their affiliates or

related to any of those officers, directors or employees." Global Stipulated Protective Order ¶ 14(i). The parties agree that mock jurors must agree to be bound by the protective order. *Id.* But Defendants want to go further, and require that no mock jurors can "receive" any Designated Material. Given the historical over-designation of materials as confidential in patent disputes (and Epistar's refusal to provide any non-publicly-available discovery in reliance upon the lack of a protective order), the prevention of any mock juror from "receiv[ing]" any Designated Material would render a mock trial useless. Any such jurors must agree to be bound by the protective order. If they fail to do so, they will be in contempt of court. That should be enough.

## II.  CONCLUSION

Boston University's outside counsel are not competitive decision makers. This is the law of the case and there is no justification for either a prosecution bar or acquisition bar in this case. No justification of Defendants' attempts to use a protective order to rewrite employment and consulting agreements to add a covenant not to compete exists, and if allowed would effectively exclude the entire universe of potential experts from Boston University's employ.

Defendants attempt to further delay this case by seeking to delay the production of technical documents unilaterally defined as "source code" until a further addendum to the Protective Order is entered should be addressed in this Protective Order, not delayed for rounds of motion practice. Accordingly, Boston University asks the Court to adopt its proposed Protective Order as the only fair, practical and balanced one offered to the Court.

Dated: September 6, 2013                    Respectfully submitted,

                                    /s/ *Michael W. Shore*
Erik Paul Belt, BBO #558620
EBelt@mccarter.com
Kelly A. Gabos, BBO #666219
kgabos@mccarter.com
McCarter & English, LLP
265 Franklin Street
Boston, Massachusetts 02110
Telephone: (617) 449-6506
Facsimile: (617) 607-6035

Michael W. Shore (Texas 18294915)
mshore@shorechan.com
Alfonso G. Chan (Texas 24012408)
achan@shorechan.com
Eve L. Henson (Texas 00791462)
ehenson@shorechan.com
Andrew M. Howard (Texas 24059973)
ahoward@shorechan.com
**SHORE CHAN DEPUMPO LLP**
901 Main Street, Suite 3300
Dallas, Texas 75202
Telephone (214) 593-9110
Facsimile (214) 593-9111

**COUNSEL FOR PLAINTIFF
TRUSTEES OF BOSTON UNIVERSITY**

## CERTIFICATE OF SERVICE

      The undersigned certifies that the forgoing document, which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                    */s/ Michael W. Shore*
                                    Michael W. Shore