# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRUSTEES OF BOSTON UNIVERSITY,<br><br>     Plaintiff,<br><br>vs.<br><br>EVERLIGHT ELECTRONICS CO. LTD. ET AL.,<br><br>     Defendants. | C.A. No. 1:12-cv-11935-PBS |
| TRUSTEES OF BOSTON UNIVERSITY,<br><br>     Plaintiff,<br><br>vs.<br><br>SEOUL SEMICONDUCTOR, LTD.  ET AL.,<br><br>     Defendants. | C.A. No. 1:12-cv-11938-PBS |
| TRUSTEES OF BOSTON UNIVERSITY,<br><br>     Plaintiff,<br><br>vs.<br><br>EPISTAR CORPORATION,<br><br>     Defendant. | C.A. No. 12-cv-12326-PBS |

TRUSTEES OF BOSTON UNIVERSITY,

      Plaintiff,

vs.

LITE-ON, INC., ET AL.,

      Defendants.

C.A. No. 12-cv-12330-PBS

TRUSTEES OF BOSTON UNIVERSITY,

      Plaintiff,

vs.

SAMSUNG ELECTRONICS CO., LTD.
ET AL.,

      Defendants.

C.A. No. 13-cv-10659-PBS

TRUSTEES OF BOSTON UNIVERSITY,

      Plaintiff,

vs.

ARROW ELECTRONICS, INC., ET AL.,

      Defendants.

C.A. No. 13-cv-11105-PBS

TRUSTEES OF BOSTON UNIVERSITY,

      Plaintiff,

vs.

AMAZON.COM, INC.,

      Defendant.

C.A. No. 13-cv-11097-PBS

TRUSTEES OF BOSTON UNIVERSITY,

      Plaintiff,

vs.

APPLE INC.,

      Defendant.

C.A. No. 1:13-cv-11575-PBS

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION
FOR ENTRY OF ITS GLOBAL PROTECTIVE ORDER POSITIONS**

## TABLE OF CONTENTS

**Page**

I.   Introduction ................................................................................................................1

II.   Argument ....................................................................................................................2

    A.   Outside Consultants Who Are Competitive Decision-Makers of Parties or Competitors of Parties Should Not Have Access to Defendants' CONFIDENTIAL - OUTSIDE COUNSEL ONLY Information (¶15(c)) ..............2

    B.   Safeguards Regarding Disclosure of Potential Outside Consultants / Experts And Their Selection Are Warranted (¶ 11, ¶ 19(h)/(i)/(j), & ¶ 20) ................................3

        1.   Plaintiff Has Identified No Applicable "Discovery Exemption" or Privilege Which Should Restrict Identification of Potential Consultants....4

        2.   Defendants Should Be Afforded A Reasonable Opportunity To Object To Potential Consultants ................................................................................5

        3.   Disclosure of Highly Confidential Information to the Inventor of the Patents-in-Suit And Employees Of The Parties Should be Prevented........6

    C.   Safeguards Are Warranted to Bar Counsel Carte Blanche from Engaging in Any PTO Proceedings in Any Role (¶ 16(a)) .................................................................8

    D.   Safeguards Regarding Disclosure To One Shore Chan Counsel Who Is A Competitive Decision Maker Are Warranted (¶ 15(b)) .........................................10

    E.   Safeguards Regarding Disclosure to Counsel Are Warranted Given Counsel's Admitted Control of Over 67,000 Patents and Frequent Involvement in Semiconductor Litigation (¶ 16(b)) ......................................................................14

    F.   Safeguards Regarding Disclosure to Mock Jurors Are Warranted (¶ 14(i)(2)) .....16

    G.   Defendants' Language On Use of Designated Material Is Helpful in Avoiding an Unauthorized Disclosure (¶ 21) ........................................................................16

    H.   To the Extent Plaintiff Seeks Production of Source Code, Appropriate Protective Provisions Are Necessary (¶ 30(e)) ...................................................................17

III.   Conclusion ...............................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AG Fur Atherische Ole v. Gucci America, Inc.*
Civ. No. 04-cv-280, 2006 WL 838996 (S.D.N.Y. Mar. 28, 2006) ...........................................2

*Ares-Serono, Inc. v. Organon Int'l B.V.*
153 F.R.D. 4 (D. Mass. 1993) ...............................................................................................2, 3

*Cal. Inst. of Tech. v. Canon U.S.A., Inc.*
Civ. No. 2:08-cv-08637 (C.D. Cal. Dec. 31, 2008) ...............................................................15

*Cal. Inst. of Tech. v. STMicroelectronics NV*
Civ. No. 2:10-cv-09099 (C.D. Cal. Nov. 24, 2010) ...............................................................15

*Catch a Wave Techs. v. Sirius XM Radio, Inc.*
Civ. No. C 12-05971-WHA (N.D. Cal. Aug. 6, 2013) ...........................................................15

*Fairchild Semiconductor Corp. v. Power Integrations, Inc.,*
Civ. No. 2:06-cv-00151 (E.D. Tex. Apr. 11, 2006) ...............................................................15

*Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor Inc.*
Civ. No. 2:08-cv-00158 (D. Me. May 17, 2008) ...............................................................11, 12

*Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor Inc.*
Civ. No. 09-158-PH, 2009 WL 1210638 (D. Me. Apr. 30, 2009) ........................11, 13, 14, 15

*Fast Memory Erase LLC v. Spansion Inc.*
Civ. No. 3:08-cv-00977 (N.D. Tex. Jun. 09, 2008) ...............................................................15

*Figa v. Apple Inc.*
Civ. No. 1-08-cv-10304, Dkt. 25 ...............................................................................................6

*Fujitsu Ltd. v. Nanya Tech. Corp. et al.*
Civ. No. 4:06-cv-06613 (N.D. Cal. Oct. 24, 2006) ...............................................................15

*Greenliant Sys., Inc. v. Xicor LLC*
Civ. No. 3:11-cv-00631 (N.D. Cal. Feb. 11, 2011) ...............................................................15

*HSM Portfolio LLC et al. v. Fujitsu Ltd.*
Civ. No. 1:11-cv-00770 (D. Del. Sept. 01, 2011) ...............................................................15

*Intel Corp. v. VIA Techs., Inc.*
198 F.R.D. 525 (N.D. Cal. 2000) ...........................................................................................12

*Jagex Ltd. V. Impulse Software,*
 273 F.R.D. 357 (D. Mass. 2011)...........................................................................17

*Northbrook, Digital LLC v. Vendio Servs., Inc.*
 Civ. No. 07-2250, 2008 WL 2390740 (D. Minn. Apr. 4, 2008)...............................12

*Power Mosfet Tech v. Siemens AG,*
 Civ. No. 2:99-cv-00168 (E.D. Tex. Aug. 27, 1999) ..........................................12, 15

*Safe Flight Instr. Corp. v. Sundstrand Data Control Inc.*
 682 F. Supp. 20 (D. Del. 1988)................................................................................6

*ST Sales Tech Holdings, LLC v. Daimler Chrysler Co.*
 Civ. No. 6:07-cv-346, 2008 WL 5634214 (E.D. Tex. Mar. 14, 2008) ....................10

*Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*
 236 F.R.D. 146 (W.D.N.Y. 2006)............................................................................6

*Third Dimension Semiconductor, Inc. v. Alpha & Omega Semiconductor, Inc.*
 Civ. No. 3:12-cv-02130 (N.D. Cal. Apr. 27, 2012) ...........................................12, 14

*Third Dimension Semiconductor Inc. v. Fairchild Semiconductor Int'l Inc.,*
 Civ. No. 6:08-cv-00200 (E.D. Tex. May 17, 2008)...........................................12, 15

*Third Dimension Semiconductor Inc. v. Infineon Techs. North Am. Corp.,*
 Civ. No. 6:08-cv-00129 (E.D. Tex. Apr. 11, 2008)...........................................12, 15

*Third Dimension Semiconductor, Inc. v. Rohm Semiconductor USA, LLC*
 Civ. No. 3:12-cv-02132 (N.D. Cal. Apr. 27, 2012) ...........................................12, 14

*Trustees of Boston University v. Everlight Elecs. Co., et al.*
 Civ. No. 1:12-cv-11935-PBS .........................................................................1, 9, 11

*U.S. Steel Corp. v. United States*
 Civ. No. 730 F.2d 1465 (Fed. Cir. 1984).............................................................2, 10

*Unwired Planet, LLC v. Apple, Inc.*
 Civ. No. 3:12-cv-00505-RCJ (VPC), 2013 WL 1501489 (D. Nev. Apr. 11, 2013)...............16

*Vasudevan Software Inc. v. International Business Machines Corp, et al..*
 Civ. No. C 09–05897, 2010 WL 3629830 (N.D. Cal. Sept. 14, 2010).....................2

*Wang Laboratories v. CFR Associates, Inc.*
 125 F.R.D. 10 (D. Mass. 1989)................................................................................3

**STATUTES**

37 C.F.R. § 42.121 ...................................................................................................9

35 U.S.C. § 305................................................................................................................................9

## I.      Introduction

Defendants in the above-captioned cases (collectively, "Defendants") offer the following joint response in opposition to Plaintiff Trustees of Boston University's ("Plaintiff") motion for entry of its proposed disputed Global Protective Order provisions (Dkt. 148).[1]  In the disputed provisions, Defendants have made proposals narrowly tailored to address the legitimate concern of misuse of their confidential information beyond the scope of this case.  In particular:

- Defendants seek to protect their information properly designated as CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY[2] from disclosure to employees of the parties and decision-makers that compete with the parties (including one of Plaintiff's counsel who is a competitive decision-maker, as determined by another court in this Circuit, and based on evidence not before this Court when it considered certain protective order issues in the *Everlight* action) (Global Protective Order ¶¶ 11, 15);

- Defendants seek to preserve their ability to raise legitimate objections to proposed Outside Consultants in good faith and to prevent Plaintiff from relying on unspecified "discovery exemptions" to avoid identifying a potential consultant's conflicting business interests in the area of gallium nitride ("GaN") LEDs (¶¶ 19, 20); and

- Defendants seek to prevent Plaintiff's outside counsel from leveraging Defendants' confidential information to acquire additional patents to wield against Defendants, given counsel's frequent involvement in semiconductor patent litigation and asserted control of tens of thousands of patents in this area (¶ 16).

Defendants' remaining proposals are similarly designed to prevent the unauthorized disclosure of confidential information (e.g., to mock jurors, and through conversations and presentations), while avoiding prejudice to Plaintiff.

---

[1] All citations to docket entries are for the consolidated *Trustees of Boston University v. Everlight Elecs. Co., et al.* action (1:12-cv-11935-PBS).  Substantially identical documents were filed in each of the related actions identified in the caption of this document.

[2] *See* Global Protective Order, ¶ 6 at 4 (CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY information defined as "financial or technical or commercially sensitive competitive information" which "if disclos[ed] to others would create a substantial risk of serious injury to the Producing Party.")

## II.     Argument

### A.     Outside Consultants Who Are Competitive Decision-Makers of Parties or Competitors of Parties Should Not Have Access to Defendants' CONFIDENTIAL - OUTSIDE COUNSEL ONLY Information (¶15(c))

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| (¶15(c)) Outside Consultants of the Receiving Party to whom disclosure is reasonably necessary for this Litigation and provided that: (a) such Outside Consultant has signed the "Agreement To Be Bound By Protective Order" attached hereto as Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all parties as set forth in Paragraph 20 below. | (¶15(c)) Outside Consultants of the Receiving Party to whom disclosure is reasonably necessary for this Litigation and provided that: (a) such Outside Consultant has signed the "Agreement To Be Bound By Protective Order" attached hereto as Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all parties as set forth in Paragraph 20 below; *and (c) such Outside Consultant is not involved in competitive decision-making, as defined by U.S. Steel v. United States, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a party.* |

In Paragraph 15(c), Plaintiff seeks to permit disclosure of "CONFIDENTIAL-OUTSIDE COUNSEL EYES ONLY" materials to Outside Consultants who are involved in competitive decision-making of behalf of a party or a competitor.  The Federal Circuit has cautioned that when individuals are engaged in "competitive decision-making" – including advice and participation in pricing and product design made in light of similar or corresponding information about a competitor – there is risk of misuse of confidential information, even inadvertently.  *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 & n. 3 (Fed. Cir. 1984).  This is a critical factor routinely used by courts in determining whether to approve a consultant/expert as truly independent under protective orders.  *See Ares-Serono, Inc. v. Organon Int'l B.V.*, 153 F.R.D. 4, 5 (D. Mass. 1993) (citing "individual's relationship to or status within the receiving party's business" and individual's "involvement in receiving party's competitive decisions"); *accord AG Fur Atherische Ole v. Gucci America, Inc.*, No. 04-cv-280, 2006 WL 838996, *2 (S.D.N.Y. March 28, 2006); *and see Vasudevan Software Inc. v. International Business Machines Corp., et al.*, Civ. No. C 09–05897, 2010 WL 3629830, *4 (N.D. Cal. Sept. 14, 2010) (imposing *U.S. Steel*

competitive decision-making bar as to experts in protective order; no person who engages in competitive decision-making can access producing party's highly confidential information); *Wang Laboratories v. CFR Associates, Inc.,* 125 F.R.D. 10 (D. Mass. 1989) (Saris, J.) (defendant's expert precluded from access to plaintiff's confidential information because expert was currently a consultant for competitors of the plaintiff).

Defendants face a substantial risk of competitive injury if their highly technical and commercially sensitive information is reviewed by an Outside Consultant who is also a decision-maker for one of their competitors, regardless of whether the Outside Consultant agrees to abide by the terms of the protective order.  Plaintiff articulates no justification for permitting competitive decision-makers to access the most confidential of Defendants' documents, merely asserting instead that "the entire marketplace of potential experts" would be foreclosed should Defendants' language be adopted.  Dkt. 148 at 10.  Plaintiff presents no evidence that it cannot find an expert employed as an academic, or a consultant at a non-competitive company, or that it has engaged in any related searching.  *Cf. Ares-Serono*, 153 F.R.D. at 7 ("[t]his Court also finds it material that plaintiffs underwent significant efforts to retain, albeit unsuccessfully, the services of another expert").  Even if it had presented such evidence, Plaintiff has not shown—and cannot show—why any purported hardship outweighs the serious threat of economic injury to Defendants attendant with disclosure of their most sensitive information to competitive decision-makers.  There is no reason to disregard a standard relied on by numerous courts to prevent dissemination of highly confidential information to conflicted experts.

**B.      Safeguards Regarding Disclosure of Potential Outside Consultants / Experts And Their Selection Are Warranted (¶ 11, ¶ 19(h)/(i)/(j), & ¶ 20)**

Plaintiff seeks to water down several other critical safeguards for Outside Consultants, attempting (i) to avoid disclosure of competing business interests of prospective consultants, (ii)

- 3 -

to hamstring Defendants' ability to object to such consultants, and (iii) to allow disclosure of

"CONFIDENTIAL – OUTSIDE COUNSEL EYES' ONLY" documents to party-employees.

The Court should reject Plaintiff's proposals.

> **1.** ***Plaintiff Has Identified No Applicable "Discovery Exemption" or Privilege Which Should Restrict Identification of Potential Consultants***

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| (¶19(h)) a list of all companies (including companies that retained the individual through counsel or other agents) with which the individual has consulted or by which the individual has been employed within the last five years ***unless such disclosure would violate a privilege or discovery exemption under the Federal Rules of Civil Procedure or the Federal Rules of Evidence***; | (¶19(h)) a list of all companies (including companies that retained the individual through counsel or other agents) with which the individual has consulted or by which the individual has been employed within the last five years; |
| (¶19(i)) an identification of any individual or entity with or for whom the person is or has been employed or provided consulting services to relating to the design, development, operation, or patenting of GaN light-emitting diodes or GaN laser diode semiconductor devices or relating to the acquisition of intellectual property assets relating to the same ***unless such disclosure would violate a privilege or discovery exemption under the Federal Rules of Civil Procedure or the Federal Rules of Evidence***; | (¶19(i)) an identification of any individual or entity with or for whom the person is or has been employed or provided consulting services to relating to the design, development, operation, or patenting of GaN light-emitting diodes or GaN laser diode semiconductor devices or relating to the acquisition of intellectual property assets relating to the same; |

The foregoing provisions concern the type of information which parties must disclose

regarding potential experts – in particular, those with potentially conflicting business interests –

so that other parties can determine whether or not there is good cause to object to their

appointment.  Plaintiff largely agrees with the disclosure obligation, but then proposes an

exception that threatens to swallow the rule: that the party proposing the expert should *not* be

obligated to identify the entities with which the proposed expert has consulted if it would

"violate a privilege or discovery exemption under the Federal Rules of Civil Procedure or the

Federal Rules of Evidence."  Plaintiff cannot identify (and has failed to even mention this in its

WEST\242495436.2

motion) any "discovery exemption" or "privilege" which could operate to "exempt" Plaintiff from disclosing this information.  This broadly-worded provision would seemingly provide Plaintiff a vehicle to evade its disclosure obligations without even needing to articulate any justification.  In contrast, Defendants seek to identify whether potential experts have conflicting business interests competitive with Defendants which warrant a determination that they are not truly "independent" or pose too great a risk of misusing Defendants' most sensitive information, even if inadvertently.

>    **2.     *Defendants Should Be Afforded A Reasonable Opportunity To Object To Potential Consultants***

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| (¶20(3))  [Boston University opposes this provision] | (¶20(3))  there is another objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Designated Materials in a way or ways that are inconsistent with the provisions contained in this Order. |

Plaintiff argues that concerns regarding designated experts should be "raised specifically in accord with the appropriate motion practice."  Dkt. 148 at 10.  This is exactly what Defendants are attempting to do by including the above-referenced language regarding objections into the expert designation and disclosure process.  Under Plaintiff's proposal, a party may *only* object to disclosure of Designated Material to Outside Consultants if there is a "factually supported belief that either the Person had a prior confidential relationship with an adverse Party [or] (2) the Person is a competitive decision-maker."  *Id*.  There are other situations, however, in which Defendants could register legitimate objections – for example, a proposed expert that had a prior confidential consulting relationship regarding the accused technology with a co-defendant competitor that is *not* an adverse Party.  Further, any potential prejudice to Plaintiff is minimal, especially insofar as the protective order requires the objecting party to (i) set forth in detail the facts upon which any objection is registered, and (ii) move for a protective order within a

discrete time period or the objection is waived.  Defendants' proposed language – tied to an

"objectively reasonable concern" – has previously been adopted by this Court,[3] and adequately

protects the parties.

> **3.**      ***Disclosure of Highly Confidential Information to the Inventor of the Patents-in-Suit And Employees Of The Parties Should be Prevented***

| Plaintiff's Proposal | Defendants' Proposal |
| --- | --- |
| (¶ 11) "Outside Consultant" shall refer to a person with specialized knowledge or experience in a matter pertinent to the Litigation, who has been retained by a Party or Counsel of Record to serve as an expert witness or as a consultant in this Litigation. | (¶ 11) "Outside Consultant" shall refer to a person with specialized knowledge or experience in a matter pertinent to the Litigation, who has been retained by a Party or Counsel of Record to serve as an expert witness or as a consultant in this Litigation, **who currently or within the last three years, is not an employee of or consultant for a Party or of a competitor of an opposing Party**. |

Plaintiff's proposal regarding potential categories of Outside Consultants would

expressly *permit* selection of (i) its own employees, including, but not limited to the inventor of

the patents-in-suit, Dr. Theodore Moustakas, and (ii) employees of numerous Defendant

competitors, thereby allowing an improper back-door for disclosure of "CONFIDENTIAL-

OUTSIDE COUNSEL EYES ONLY" information to non-independent parties.  Many courts

have agreed to the restrictions on Outside Consultant categories that Defendants seek in the

instant case.  *See, e.g., Tailored Lighting, Inc. v. Osram Sylvania Products, Inc*., 236 F.R.D. 146,

149 (W.D.N.Y. 2006) (refusing to allow inventor to review highly confidential documents as "it

seems unreasonable to expect that anyone working to further his own scientific and technological

interests would be able assuredly to avoid even the subconscious use of confidential information

revealed through discovery that is relevant to those interests"); *see also Safe Flight Instr. Corp.*

*v. Sundstrand Data Control Inc*., 682 F. Supp. 20, 22 (D. Del. 1988) (refusing to allow plaintiff's

---

[3] *See, e.g*., *Figa v. Apple Inc*., 1-08-cv-10304, Dkt. 25 at 17, ¶13(d) (D. Mass., June 18, 2008) (Dein, J.).

president who held numerous patents to review confidential information since he continued to research and develop ideas in the marketplace).

The disclosure of Defendants' highly confidential information to Dr. Moustakas raises particular concerns.  Dr. Moustakas has been hailed as a "prolific academic entrepreneur" and recently launched his own ultraviolet LED company, which may be based on the same GaN material at issue in this action.[4]  As a current employee of Plaintiff, Dr. Moustakas also appears to be actively involved in the expansion of Plaintiff's patent portfolio, as he is an active researcher in the field of LED technology with over thirty published patents worldwide and several more pending in the related fields of nitride semiconductors, amorphous silicon, and diamond materials.  *See* Exhibit 2.  His review of Defendants' "CONFIDENTIAL-OUTSIDE COUNSEL EYES ONLY" documents, therefore, raises a serious risk of inadvertent misuse of highly sensitive information.

The potential issue is not limited to Dr. Moustakas, as Plaintiff's proposal would allow for disclosure to a seemingly unlimited number of "other professors" of Plaintiff who, as "Outside Consultants," could also gain access to Defendants' Designated Material when they would not otherwise be able to do so.  Plaintiff's proposal would permit use of employees of the parties as potential experts – presenting the very real possibility of disclosure of highly sensitive business information among *directly competing entities*, especially given that many Defendants compete with one another.  Additionally, Defendants are concerned that Plaintiff may further its

---

[4]  *See, e.g.*, Exhibit 1, http://www.bu.edu/otd/2013/07/17/boston-university-names-theodore-moustakas-its-innovator-of-the-year/; *see also* http://www.bu.edu/today/2013/bu-innovator-of-the-year-theodore-moustakas/ ("Moustakas is also the founder of RayVio Corp., a venture-backed company that makes ultraviolet LEDs, a compact, energy-efficient, durable, and environmentally friendly substitute for mercury lamps used in water purification and disinfection systems.").

attempts to hire former employees of Defendants as experts as a ruse to obtain trade secrets or

privileged information outside of the context of Court-controlled discovery.[5]

### C.   Safeguards Are Warranted to Bar Counsel Carte Blanche from Engaging in Any PTO Proceedings in Any Role (¶ 16(a))

| Plaintiff's Proposal | Defendants' Proposal |
| --- | --- |
| (¶ 16(a)) Pursuant to the Court's July 19, 2013 ruling on this issue,[*] this Protective Order does not affect the right of Plaintiff or Plaintiff's counsel to participate in any Inter Parties Review, Ex Parte Review, reexamination, or opposition of the patents-in-suit or of any other patent that has a common priority claim with the patents-in-suit, that claims priority to (directly or indirectly) to the patents-in-suit, or that is otherwise related to the patents-in-suit before any foreign or domestic agency, including the United States Patent and Trademark Office.<br><br>[*]Dkt. No. 110 in case nos. 12-cv-11935, 12-cv-1326, 12-cv-12330 at 5 ("Accordingly, the Court declines to order a patent prosecution bar."). | (¶ 16(a)) [Defendants oppose this provision.] |

In Paragraph 16(a), Plaintiff appears to seek blanket pre-approval from the Court for ***any***

of its counsel to participate in ***any way*** in any *inter partes* review, *ex parte* review,

reexamination, or opposition of the patents-in-suit or "any other patent that has a common

priority claim with the patents-in-suit, that claims priority to (directly or indirectly) to the

patents-in-suit, or that is otherwise related to the patents-in-suit."  Plaintiff identifies no basis for

---

[5] Plaintiff's recent actions have demonstrated that it seeks to do just that.   In particular, Plaintiff recently contacted Brian Wilcox, a former Vice President of Sales for Seoul Semiconductor North America, to attempt to hire him as an expert, even though he would not be qualified to serve as an expert on any issue in this action.  *See* Exhibit 3 (public LinkedIn profile for Mr. Wilcox).  Mr. Wilcox does, however, possess considerable insight into Seoul Semiconductor's confidential sales data and prior litigation efforts.  When Seoul Semiconductor asked Plaintiff to refrain from *ex parte* contact with Mr. Wilcox and others similarly situated in view of their "possession of Seoul Semiconductor's trade secrets and privileged information," Plaintiff stated that it would not do so and would instead "leave no stone unturned" and continue its "investigation."  Exhibits 4, 5.

such an extraordinary provision, which appears structured only to allow Plaintiff's counsel to use highly proprietary information about Defendants' products and manufacturing learned through discovery to seek new patent claims or amend claims before the PTO or foreign tribunals.

Although the Court declined to enter a prosecution bar in the *Everlight* action, Case No. 1:12-cv-11935, Dkt. 110, that was because there was no evidence before the Court that Plaintiff's counsel were involved in relevant competitive decision-making, with respect to the specific counsel and *inter partes* review proceedings at issue.  Even setting aside the issue of whether one of Plaintiff's attorneys is a competitive decision-maker as discussed below, Plaintiff's proposal that it be granted blanket permission to engage in *any* prosecution-related activity in *any* proceeding, whether initiated by defendants or not, and whether involving an asserted patent or not, far exceeds the Court's prior Order and is inappropriate.

The Court's Order itself is contrary to Plaintiff's proposal.  As the Court recognized, patent prosecution activities are varied, and some such activities may constitute competitive decision-making.  *See* Dkt. 110, at 4-5 (quoting *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010)).  Thus, the Court's determination that a blanket **prohibition** on engaging in **any** activity in *inter partes review* proceedings on an asserted patent was not warranted at that time lends no support to the provision Plaintiff now proposes seeking a blanket **permission** to engage in **any** prosecution activity, no matter how substantive or competitively sensitive—and no matter whether the prosecution activities are those that constitute competitive decision-making.[6]  Plaintiff has refused to forswear amending its claims or seeking new claims designed to cover Defendants' technologies in any such PTO proceedings, illustrating the risk

---

[6] For example, whereas there are strict limits on a patentee's ability to submit amended "substitute claims" in *inter partes* review proceedings, *see* 37 C.F.R. § 42.121, a patentee can submit a virtually unlimited number of new claims in a reexamination, *see* 35 U.S.C. § 305.

- 9 -

that Plaintiff's counsel could use Defendants' highly confidential information to seek claims

intended to cover Defendants' products but avoiding the prior art.  As the Court's Order

indicates, the permissibility of litigation counsel's involvement in prosecution should be

determined on a case-by-case, counsel-by-counsel basis, consistent with the Court's Order and

controlling Federal Circuit authority.

### D. Safeguards Regarding Disclosure To One Shore Chan Counsel Who Is A Competitive Decision Maker Are Warranted (¶ 15(b))

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| (¶ 15(b)) Retained outside Counsel of Record to any party in the above-captioned cases and the employees of such outside Counsel of Record (or such counsel's law firm) who work under the supervision of, support such counsel and assist such counsel in this Litigation, and who are not members, employees, officers or directors of a Party to this Litigation; | (¶ 15(b)) Retained outside Counsel of Record to any party in the above-captioned cases, **_provided that such Counsel of Record is not involved in competitive decision-making, as defined by U.S. Steel v. United States, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party,_** and the employees of such outside Counsel of Record (or such counsel's law firm) who work under the supervision of, support such counsel and assist such counsel in this Litigation, and who are not members, employees, officers or directors of a Party to this Litigation. |

As in the case of Outside Consultants, when litigation counsel is engaged in "competitive

decision-making" there is risk of misuse of confidential information, even inadvertently.  *U.S.*

*Steel*, 730 F.2d at 1468 & n. 3.  Access to confidential material "should be denied or granted on

the basis of each individual counsel's actual activity," with respect to competitive decision-

making.  *Id.* at 1468. Competitive decision-making must be evaluated "by the facts on a counsel-

by-counsel [or consultant-by-consultant] basis," *Id.*  Other factors to be considered in

determining whether to deny outside counsel access to confidential information include the

hardship imposed by the restriction, the timing of the remedy, and the potential impairment of

the other party's ability to prosecute or defend its claims.  *See ST Sales Tech Holdings, LLC v.*

*Daimler Chrysler Co.*, Civ. No. 6:07-cv-346, 2008 WL 5634214, at *2 (E.D. Tex. Mar. 14,

2008).

Defendants recognize that the Court previously found that there was insufficient evidence that Plaintiff's counsel was involved in relevant competitive decision-making, with respect to the *Everlight* action and *inter partes* review proceedings, Case No. 1:12-cv-11935, Dkt. 110. Yet, Defendants—most of whom were not parties to the prior proceedings in the *Everlight* case and have not had the opportunity to be heard on this issue—have significant information that one of Plaintiff's numerous outside counsel, Michael Shore, is a competitive decision-maker who should not be permitted access to "CONFIDENTIAL–OUTSIDE COUNSEL ONLY" material. Disqualification of Mr. Shore from receipt and use of Defendants' "CONFIDENTIAL–OUTSIDE COUNSEL ONLY" information is an equitable and appropriate remedy here, given: (i) Mr. Shore's role in a third-party company which has litigated numerous semiconductor patent infringement claims; (ii) the number of other counsel from two different law firms who presently are representing the Plaintiff's interests in these lawsuits; and (iii) the lack of prejudice Plaintiff will incur, given the early stage of this litigation.

In *Fairchild Semiconductor Corp. v Third Dimension Semiconductor, Inc.* ("*Fairchild*"), the court determined that Mr. Shore "is involved in *litigation-based* competitive decision making" for Third Dimension Semiconductor, Inc. ("3D"). Exhibit 6, Civ. No. 09-158-PH, 2009 WL 1210638, *10 (D. Me. Apr. 30, 2009) (emphasis in original). In particular, the court found that Mr. Shore personally owns about three percent of 3D's stock and is one of the three Directors of 3D. *Id.* at *3. Mr. Shore is also a part owner of Shofin Enterprises LLC, which has an investment interest in Power Mosfet Technologies, LLC ("PMT"), which was formed "for the purpose of acquiring and asserting United States and Chinese patents" and partly owns 3D. *Id.* According to publicly available information, 3D holds at least thirteen patents relating to

MOSFET (metal-oxide-semiconductor field-effect transistor) semiconductor technology.[7]

Additionally, 3D has enforced those patents in at least seven different actions, some of which

were not resolved until after Plaintiff began filing the instant actions.[8]  The *Fairchild* court found

Mr. Shore to be a competitive decision-maker because he serves as 3D's litigation counsel and is

involved in 3D's patent licensing activities including patent litigation settlement negotiations.

*Id.* at * 9.[9]  Given the significant business of many Defendants in electronic components and

devices, and given that, as noted in Boston University's Introduction to Electronics course,

"[t]he MOSFET is by far the most widely used transistor in both digital and analog circuits and

---

[7] According to the United States Patent and Trademark Office ("PTO") records, the following semiconductor patents issued or were subsequently assigned to 3D: U.S. Patent Nos. 5,216,275 ("Semiconductor Power Devices With Alternating Conductivity Type High-Voltage Breakdown Regions"); 6,635,906 ("Voltage Sustaining Layer With Opposite-Doped Islands For Semi-Conductor Power Devices"); 6,936,867 ("Semiconductor High-Voltage Devices"); 7,015,104 ("Technique For Forming the Deep Doped Columns in Superjunction"); 7,023,069 ("Method For Forming Thick Dielectric Regions Using Etched Trenches"); 7,052,982 ("Method For Manufacturing a Superjunction Device With Wide Mesas"); 7,109,110 ("Method of Manufacturing a Superjunction Device"); 7,199,006 ("Planarization Method of Manufacturing a Superjunction Device"); 7,227,197 ("Semiconductor High-Voltage Devices"), 7,271,067 ("Voltage Sustaining Layer With Opposite-Doped Islands For Semiconductor Power Devices"); 7,354,818 ("Process For High Voltage Superjunction Termination"); 7,439,583 ("Tungsten Plug Drain Extension"); 8,071,450 ("Method For Forming Voltage Sustaining Layer With Opposite-Doped Islands For Semiconductor Power Devices").  *See* Exhibit 7.

[8] *Third Dimension Semiconductor, Inc. v. Rohm Semiconductor USA, LLC.*, 3:12-cv-02132 (N.D. Cal. Apr 27, 2012) (settled August 2012); *Third Dimension Semiconductor, Inc. v. Alpha & Omega Semiconductor, Inc.*, 3:12-cv-02130 (N.D. Cal. Apr 27, 2012) (settled October 2012); *Third Dimension Semiconductor Inc. v. Fairchild Semiconductor Int'l Inc.*, 6:08-cv-00200 (E.D. Tex. May 17, 2008); *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor Inc.*, 2:08-cv-00158 (D. Me. May 17, 2008); *Third Dimension Semiconductor Inc. v. Infineon Techs. North Am. Corp.*, 6:08-cv-00129 (E.D. Tex. Apr 11, 2008); *Power Mosfet Tech v. Siemens AG*, 2:99-cv-00168 (E.D. Tex. Aug 27, 1999).

[9] *Accord Northbrook, Digital LLC v. Vendio Servs., Inc.*, C.A. 07-2250 (PJS/JJG), 2008 WL 2390740, at *16 (D. Minn. Apr. 4, 2008) ("Involvement in a party's licensing activity … implicates competitive decision-making"); *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 530 (N.D. Cal. 2000) (in house counsel's "involvement in licensing through litigation constitutes competitive decision-making, because her advice and counsel necessarily affect licensing decisions.").

is the backbone of modern electronics,"[10] there is a significant risk that 3D may seek to target Defendants in future enforcement efforts.

Here, all factors weigh in favor of precluding just one of Plaintiff's attorneys, Mr. Shore, from receiving Defendants' "CONFIDENTIAL–OUTSIDE COUNSEL ONLY" information. The risk of inadvertent disclosure or misuse of such information is high in view of the facts recounted in the *Fairchild* case and the negotiations between the parties in the instant case.  Mr. Shore has already been found to be a competitive decision-maker for (and partial owner of) 3D, an entity that exists only to acquire and enforce semiconductor patents, and Plaintiff seeks broad discovery into the details of Defendants' semiconductor products and manufacturing processes. In negotiating the protective order, Plaintiff refused to disclose the role of its counsel with respect to 3D or any other entities involved or potentially involved in the evaluation, enforcement or acquisition of semiconductor patents or technology.  Plaintiff would only represent that its counsel, Mr. Shore, has "no interest in any company that makes, sells, offers to sell, imports, designs or uses GaN LEDs."  This response fails to address connections with entities otherwise involved in GaN or other semiconductor patents or technology, including acquisition and enforcement of such patents, which might be asserted against Defendants in the future.  In contrast, the risk of harm to Plaintiff from the remedy requested by Defendants is limited, as Defendants seek preclusion with respect only to Mr. Shore.  Plaintiff is represented by Shore Chan DePumpo LLP ("Shore Chan"), an intellectual property litigation firm with at least ten other attorneys, and the McCarter & English law firm, with nearly fifty intellectual property attorneys in its Boston office alone, according to the firms' websites.  With respect to timing, Defendants have promptly raised this issue early in the case, prior to the entry of a protective

---

[10] Exhibit 8, EC410 Lab, "Transistor Curve Tracer," at http://www.bu.edu/eng/courses/ ec410/documents/transistor-curve-tracer-ec410.pdf.

WEST\242495436.2

order or a discovery plan.  Finally, Defendants seek a narrowly tailored remedy, the preclusion of

a single attorney from receiving only "CONFIDENTIAL–OUTSIDE COUNSEL ONLY"

information.

> **E.    Safeguards Regarding Disclosure to Counsel Are Warranted Given Counsel's Admitted Control of Over 67,000 Patents and Frequent Involvement in Semiconductor Litigation (¶ 16(b))**

| Plaintiff's Proposal | Defendants' Proposal |
| --- | --- |
| [Boston University opposes this provision] | Plaintiff's Retained outside Counsel of Record and Outside Consultants may not advise any clients or otherwise participate in the acquisition of patents involving GaN light-emitting diodes or GaN laser diode semiconductor devices for the purpose of asserting them against any of the Defendants for two years after the conclusion of the Litigation, including any appeals. |

Defendants request a patent acquisition bar preventing Plaintiff's lawyers and experts

from involvement in acquiring additional patents involving GaN technologies for assertion

against Defendants, for a period of two years from the conclusion of this matter.  In view of

Plaintiff's counsel's admitted control of over 67,000 patents relevant to semiconductors and its

frequent involvement in semiconductor litigation, this provision is both reasonable and

necessary.  Courts have issued such a patent acquisition bar where, as here, defendants have

demonstrated a reasonable concern that those with access to their confidential information will,

inadvertently or otherwise, use that knowledge to assist in the acquisition of patents on behalf of

its clients to use against defendants.

Plaintiff's retained law firm, Shore Chan, purports to manage and look for opportunities

to enforce a large collection of patents relevant to semiconductor companies, and has litigated

more than ten semiconductor patent infringement cases.[11]  In *Fairchild*, the court found that this

---

[11] *Third Dimension Semiconductor, Inc. v. Rohm Semiconductor USA, LLC,* 3:12-cv-02132 (N.D. Cal. Apr 27, 2012); *Third Dimension Semiconductor, Inc. v. Alpha & Omega*

firm manages a portfolio of over 67,000 patents, after counsel sent Fairchild an email claiming that the patents were relevant to Fairchild:

> The 67,000 patents to which he referred in that e-mail are patents held by [Shore Chan]'s clients, not Shore's personally.  *See id*. [Shore Chan] manages those patents for its clients' benefit, including reviewing the portfolios to identify infringers and potential licensees.  *See id*.  It is Shore's obligation to his clients as their attorney to look for and investigate potential infringement of the clients' patents in all areas of technology, not just multiple epitaxial (or trench) superjunction devices.  *See id*.

*Fairchild,* 2009 WL 1210638, at *7.

Where a firm frequently advises clients in obtaining and enforcing patents in a specific subject matter area, a patent acquisition bar is warranted.  *See, e.g., Catch a Wave Techs. v. Sirius XM Radio, Inc.*, No. C 12-05971-WHA, Dkt. 47 (N.D. Cal. Aug. 6, 2013) (Exhibit 9).  In *Catch a Wave*, the court granted a patent acquisition bar against a firm that frequently litigated cases involving satellite transmission technology, finding reasonable the "*quid pro quo*" of preventing "attorneys from—inadvertently or otherwise—relying on the confidential information [obtained through the protective order] when they advise other parties anticipating litigation against [defendant]."  *Id.* at 2.  Issuing an acquisition bar would *not* require a finding that Plaintiff's counsel is likely to violate the protective order, as the court explained: "Without impugning the integrity of plaintiff's counsel, an attorney who has learned the intricacies of [a

---

*Semiconductor, Inc.*, 3:12-cv-02130 (N.D. Cal. Apr 27, 2012);  *HSM Portfolio LLC et al. v. Fujitsu Ltd.*, 1:11-cv-00770 (D. Del. Sept 01, 2011); *Greenliant Sys., Inc. v. Xicor LLC*, 3:11-cv-00631 (N.D. Cal. Feb 11, 2011); *Cal. Inst. of Tech. v. STMicroelectronics NV*, 2:10-cv-09099 (C.D. Cal. Nov 24, 2010); *Cal. Inst. of Tech. v. Canon U.S.A., Inc.*, 2:08-cv-08637 (C.D. Cal. Dec 31, 2008); *Fast Memory Erase LLC v. Spansion Inc.*, 3:08-cv-00977 (N.D. Tex. Jun 09, 2008); *Third Dimension Semiconductor Inc. v. Fairchild Semiconductor Int'l Inc.*, 6:08-cv-00200 (E.D. Tex. May 17, 2008); *Third Dimension Semiconductor Inc. v. Infineon Techs. North Am. Corp.*, 6:08-cv-00129 (E.D. Tex. Apr. 11, 2008); *Fujitsu Ltd. v. Nanya Tech. Corp. et al.*, 4:06-cv-06613 (N.D. Cal. Oct 24, 2006); *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 2:06-cv-00151 (E.D. Tex. Apr. 11, 2006); *Power Mosfet Tech. v. Siemens AG*, 2:99-cv-00168 (E.D. Tex. Aug 27, 1999).

defendant's] secret technologies will be hard-pressed not to rely on that knowledge in a subsequent suit against [the defendant]. The two-year patent acquisition bar allows time for the limitations of human memory to run their course or for the information to become largely stale." *Id.*[12]

**F.      Safeguards Regarding Disclosure to Mock Jurors Are Warranted (¶ 14(i)(2))**

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| (¶ 14(i)(2)) No such mock jurors or focus group members shall retain any copies of any Designated Material | (¶ 14(i)(2)) No such mock jurors or focus group members shall ***receive or*** retain any copies of any Designated Material |

Defendants' proposal limiting access to Designated Material by mock jurors is not designed to inhibit Plaintiff's counsel from having an effective mock jury as Plaintiff suggests. Indeed, the parties may disclose presentations and other documents created by counsel that are *derived* from Designated Material to mock jurors. There is no need (and Plaintiff fails to even articulate one) why mock jurors would need to receive copies of highly confidential technical and financial documents, when the parties are expressly permitted to resort to summary presentations and documents created by counsel to explain the various aspects of a case instead.

**G.      Defendants' Language On Use of Designated Material Is Helpful in Avoiding an Unauthorized Disclosure (¶ 21)**

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| (¶ 21) [Boston University opposes this provision] | (¶ 21) Information contained or reflected in Designated Materials shall not be disclosed in conversations, presentations by parties or counsel, in court or in other settings that might reveal Designated Material, except in accordance with the terms of this Order. |

---

[12] *Accord Unwired Planet, LLC v. Apple, Inc.*, No. 3:12-cv-00505-RCJ (VPC), 2013 WL 1501489, at *7 (D. Nev. Apr. 11, 2013) (Exhibit 10) (determining good cause existed to include acquisition bar that plaintiff's outside counsel could not use confidential information for the purpose of giving advice on patent acquisitions, as it "strikes a balance between [plaintiff's] need to access confidential information to prosecute this case, and [defendant's] justifiable concern that [plaintiff] not use this information to acquire patents to assert against [defendant].")

Defendants believe the above-referenced provision is important to protect their confidential information and ensure that all appropriate efforts are made to maintain their confidentiality.  It is unclear why Plaintiff opposes this provision, as Plaintiff offers no reasons in its motion.  *See* Dkt. 148.

### H. To the Extent Plaintiff Seeks Production of Source Code, Appropriate Protective Provisions Are Necessary (¶ 30(e))

| Plaintiff's Proposal | Defendants' Proposal |
| --- | --- |
| (¶ 30(e)) [Boston University opposes this provision] | (¶ 30(e)) This Order does not govern the production of source code.  If source code is to be produced in this Litigation, the Parties will negotiate in good faith provisions concerning the production of source code and will submit to the Court an Addendum to the Protective Order concerning the production of source code.  Source code will not be produced in this Litigation until the Proposed Addendum to the Protective Order concerning the production of source code is entered by the Court. |

Plaintiff admits that "this is not a software case" and that it "does not believe that there is any need for the production of any 'source code' in this case."  Dkt. 148 at 12.  Defendants *agree* that there should be no need to produce source code.  Yet, the discovery of source code remains an open dispute, with Plaintiff having argued for "no limitation on discovery of source code outside those provided by the Federal Rules of Civil Procedure."  Dkt. 142 at 28.  If source code is ultimately produced in this litigation (contrary to Defendants' contention), appropriate safeguards are essential.  Courts have recognized the need for additional protections for source code, and even adopt default standards for source code access.[13]  Defendants are willing to negotiate appropriate protections, if and when there is a need for source code discovery.

---

[13] *See, e.g., Jagex Ltd. v. Impulse Software*, 273 F.R.D. 357, 359 (D. Mass. 2011) (Gorton, J.) (setting procedures for inspection of source code); District of Delaware Default Standard for Access to Source Code, available at http://www.ded.uscourts.gov/court-info/local-rules-and-orders/guidelines.  Such provisions typically provide for secure storage and limited access to source code, and limits on printing and duplication.

Plaintiff, however, asks the Court to issue a protective order *without any source code protections whatsoever*, arguing that the standard protective order designations "are enough."  Dkt. 148 at 12.  This is insufficient and threatens to deny protections that are commonly and appropriately afforded to source code.

**III.     Conclusion**

    For the reasons set forth above, the Court should enter Defendants' proposed provisions for the protective order and reject Plaintiff's proposed provisions.

WEST\242495436.2

Dated: September 20, 2013

Respectfully submitted,

EVERLIGHT ELECTRONICS CO., LTD.
AND EVERLIGHT AMERICAS, INC.

EPISTAR CORPORATION

LITE-ON, INC., LITE-ON SERVICE USA,
INC., LITE-ON TRADING USA, INC.,
AND LITE-ON TECHNOLOGY CORP.

*/s/ Ming-Tao Yang*

E. Robert Yoches (*pro hac vice*)
Finnegan, Henderson, Farabow,
  Garrett & Dunner, LLP
901 New York Avenue NW
Washington, DC 20001-4413
Telephone:      202-408-4000
Facsimile:      202-408-4400
E-mail: bob.yoches@finnegan.com

Ming-Tao Yang (*pro hac vice*)
Tina E. Hulse (*pro hac vice*)
Finnegan, Henderson, Farabow,
 Garrett & Dunner, LLP
3300 Hillview Avenue
Palo Alto, CA 94304-1203
Telephone:      650-849-6600
Facsimile:      650-849-6666
E-mail: ming.yang@finnegan.com
E-mail: tina.hulse@finnegan.com

Christopher S. Schultz (BBO No. 630814)
Finnegan, Henderson, Farabow,
  Garrett & Dunner, LLP
Two Seaport Lane
Boston, MA 02210-2001
Telephone:      617-646-1600
Facsimile:      617-646-1666
E-mail: christopher.schultz@finnegan.com

- 19 -

SEOUL SEMICONDUCTOR CO., LTD.,
SEOUL SEMICONDUCTOR, INC., and
SEOUL OPTODEVICE CO., LTD.

*/s/ Vito J. DeBari*
Scott P. Lopez, BBO # 549556
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA  02210
Tel.: (617) 439-4990
Fax: (617) 439-3987
splopez@lawson-weitzen.com

Vito J. DeBari (*pro hac vice*)
Jonathan S. Caplan (*pro hac vice*)
Aaron M. Frankel (*pro hac vice*)
Kramer, Levin, Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, New York  10036
vdebari@kramerlevin.com
jcaplan@kramerlevin.com
afrankel@kramerlevin.com
Tel.: 212- 715-9100
Fax: 212-715-8000

Jennifer L. Jonak (*pro hac vice*)
JONAK PUGH
One Maritime Plaza, Suite 1600
San Francisco, CA 94111
jenny@jonak.com
Tel:    510-501-6276
Fax:    510-201-2010

WEST\242495436.2

SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA,
INC.,
SAMSUNG LED CO., LTD.,
SAMSUNG ELECTRO-MECHANICS
CO., LTD.,
SAMSUNG ELECTRO-MECHANICS
AMERICA, INC., and
SAMSUNG LED AMERICA, INC.

Robert T. Haslam (*pro hac vice*)
Kurt G. Calia (*pro hac vice*)
Covington & Burling LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Tel:  (650) 632-4700
Fax:  (650) 632-4800
rhaslam@cov.com
kcalia@cov.com

Jeffrey H. Lerner *(pro hac vice)*
David A. Garr *(pro hac vice)*
Chad P. Albert *(pro hac vice)*
Covington & Burling LLP
1201 Pennsylvania Ave. NW
Washington, DC 20004
Tel:  (202) 662-6000
Fax:  (202) 662-6291
jlerner@cov.com
dgarr@cov.com
calbert@cov.com

*/s/ Daniel P. Tighe*
Daniel P. Tighe, BBO # 556583
Adam R. Doherty, BBO # 669499
Prince Lobel Tye, LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel:  (617) 456-8000
Fax:  (617) 456-8100
dtighe@princelobel.com
adoherty@princelobel.com

- 21 -

                                          NU HORIZONS ELECTRONICS LLC,
                                          ARROW ELECTRONICS, INC.,
                                          COMPONENTSMAX, INC., and
                                          NRC ELECTRONICS, INC.

                                          */s/ Daniel P. Tighe*
Robert T. Haslam *(pro hac vice)*        Daniel P. Tighe, BBO # 556583
Kurt G. Calia *(pro hac vice)*           Adam R. Doherty, BBO # 669499
Covington & Burling LLP                  Prince Lobel Tye, LLP
333 Twin Dolphin Drive, Suite 700        100 Cambridge Street, Suite 2200
Redwood Shores, CA 94065                 Boston, MA 02114
Tel:  (650) 632-4700                     Tel:  (617) 456-8000
Fax:  (650) 632-4800                     Fax:  (617) 456-8100
rhaslam@cov.com                          dtighe@princelobel.com
kcalia@cov.com                           adoherty@princelobel.com
*Representing ComponentsMAX and NRC*

Jeffrey H. Lerner *(pro hac vice)*
David A. Garr *(pro hac vice)*
Chad P. Albert *(pro hac vice)*
Covington & Burling LLP
1201 Pennsylvania Ave. NW
Washington, DC 20004
Tel:  (202) 662-6000
Fax:  (202) 662-6291
jlerner@cov.com
dgarr@cov.com
calbert@cov.com
*Representing ComponentsMAX and NRC*

John R. Posthumus *(pro hac vice)*
Sheridan Ross P.C.
1560 Broadway, Suite 1200
Denver, CO 80202
jposthumus@sheridanross.com
Tel.: 303-863-9700
Fax: 303-863-0223
*Representing Arrow and Nu Horizons*

WEST\242495436.2

AMAZON.COM, INC.

*/s/ Kurt Glitzenstein*
Indranil Mukerji (BBO #644059)
FISH & RICHARDSON P.C.
1425 K St. NW, 11th Floor
Washington, DC 20005
Phone: 202-783-5070
Fax: 202-783-2331
mukerji@fr.com

Kurt Glitzenstein (BBO # 565312)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Phone:  617-542-5070
Fax:  617-542-8906
glitzenstein@fr.com

Robert Courtney (*pro hac vice*)
Phillip Goter (*pro hac vice*)
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South Sixth St.
Minneapolis, MN 55402
Phone: 612-335-5070
Fax: 612-288-9696
courtney@fr.com
goter@fr.com

- 23 -

APPLE INC.

*/s/ Nicholas G. Papastavros*

Mark D. Fowler (*pro hac vice*)
Summer Krause (*pro hac vice*)
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA  94303-2215
Telephone:     650.833.2000
Facsimile:     650.833.2001
mark.fowler@dlapiper.com
summer.krause@dlapiper.com

Gerald T. Sekimura (*pro hac vice*)
Stephanie Wang (*pro hac vice*)
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA  94105
Telephone:     415.836.2500
Facsimile:     415.836.2501
gerald.sekimura@dlapiper.com
stephanie.wang@dlapiper.com

Nicholas G. Papastavros, BBO # 635742
Maya P. Choksi, BBO # 679861
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: 617.406.6000
Facsimile:  617.406.6119
nick.papastavros@dlapiper.com
maya.choksi@dlapiper.com

- 24 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 20, 2013.

_/s/Ming-Tao Yang_
Ming-Tao Yang

WEST\242495436.2