**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TRUSTEES OF BOSTON UNIVERSITY,<br>Plaintiff,<br>vs.<br>EVERLIGHT ELECTRONICS CO., LTD. ET AL.,<br>Defendants. | C.A. No. 1:12-cv-11935-PBS |

**NON-PARTY APPLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**

Non-Party Apple Inc. ("Apple") pursuant to Federal Rule of Civil Procedure 45 files this motion and accompanying memorandum to quash Trustees of Boston University's ("BU") ***third*** subpoena to Apple to produce documents, information, or objects or to permit inspection of premises in a civil action and motion for protective order.[1] First, the subpoena is invalid because it was served well after the close of written discovery, a deficiency BU itself must recognize, having made an identical argument to this Court in response to third party subpoenas served by defendants after the close of written discovery. Second, the subpoena is unduly burdensome as its requests are overly broad, unlimited in time, request documents BU has already (or could if it tried) obtained from the defendants that are parties in the action and request documents that Apple already has informed BU do not exist. Finally, the subpoena violates the geographic limitations specified in Rule 45(c), by requiring the production of documents in Boston, Massachusetts, rather than 100 miles from Cupertino, California, Apple's principal place of

[1] Federal Rule 45 requires a motion to quash be filed in the court for the district where compliance is required. Here, because BU improperly identifies Boston, Massachusetts as the compliance location, litigation on the subpoena must take place in the District of Massachusetts – a forum that is not convenient for Apple. *See Semex Alliance v. Elite Dairy Genomics, LLC*, No. 3:14-cv-87, 2014 WL 1576917 (S.D. Ohio Apr. 17, 2014).

business and headquarters. Each of these reasons provides an independent basis and support for Apple's motion to quash. Apple also seeks a motion for protective order preventing BU from serving Apple with any further subpoenas in different district courts across the country.

## I. FACTUAL AND MEET-AND-CONFER BACKGROUND

Starting in October 2012, BU began filing a series of cases in this judicial district alleging claims of patent infringement relating to light emitting diodes (LEDs), culminating in 44 different cases filed against various defendants. This series of litigations began with BU filing patent infringement suits against the LED companies, Epistar Corporation, Everlight Electronics Co., Ltd., Everlight Americas, Inc., Lite-On Inc., Lite-On Service USA, Inc., Lite-On Trading USA, Inc., and LiteOn Technology Corp. (the current defendants in the underlying case) (the "Epistar Defendants"). These cases were consolidated for pre-trial purposes (the "Epistar Cases"). In the Epistar Cases, BU served over 200 third-party subpoenas to the Epistar Defendants' customers and potential customers. Declaration of Christine Corbett In Supp. of Mot. to Quash and Mot. for Protective Order ("Corbett Decl."), ¶ 2, Ex. A. Apple received one of these third-party subpoenas, which eventually culminated in BU filing suit in July, 2013 against Apple alleging claims of patent infringement relating to the LEDs incorporated in Apple's products. *Id.* As a Defendant in the case, Apple incurred significant expense responding to discovery requests, producing documents, serving invalidity and non-infringement contentions, participating in the claim construction process and addressing BU's aggressive discovery tactics. *Id.*, ¶ 3. As this Court is aware, the case against Apple was ultimately dismissed on January 16, 2014, pursuant to a settlement between the parties. Corbett Decl., ¶ 4, Ex. B.

On April 22, 2014, after the close of written discovery in this case, Apple was served with a second, third-party subpoena from BU requesting the production of documents on twelve

different, overbroad topics. *Id.*, ¶ 5, Ex. C. The subpoena improperly required Apple to produce documents to BU's outside counsel's office, Shore Chan DePumpo LLP in Dallas, Texas by May 21, 2014. *Id.* On May 5, 2014, Apple served its objections to BU's subpoena. Corbett Decl., ¶ 6, Ex. D. On May 7, 2014, Apple and BU met-and-conferred to discuss the scope of the subpoena. *Id.*, ¶ 7. The parties engaged in further meet-and-confer correspondence following the May 7 telephone conference. *Id.*, ¶ 8, Ex. E. On May 19, the parties held a further meet-and-confer conference, but were unable to resolve the outstanding issues and BU refused to withdraw its facially defective subpoena. *Id.*, ¶ 9. Left with no other choice, on May 21, 2014, Apple filed a motion to quash the subpoena in the Northern District of Texas, arguing that the subpoena was (1) facially defective for failing to satisfy the geographic limitations of Federal Rule 45(c); (2) untimely; and (3) overly burdensome. Corbett Decl., ¶ 10, Ex. F. A mere two days later, on May 23, 2014 – after Apple had incurred significant fees and costs in drafting and filing a motion to quash – BU withdrew the subpoena, issued a third subpoena to Apple and requested that Apple withdraw its motion to quash filed in the Northern District of Texas. Corbett Decl., ¶ 11, Ex. G. While BU did decrease the total number of requests for production of documents, the third subpoena remains burdensome, continues to violate Federal Rule 45(c) by requiring production of documents in Boston, Massachusetts and was served well after the close of written discovery.

On May 29, 2014, Apple acknowledged service of the third subpoena and noted to BU that the third subpoena continues to violate Federal Rule 45 and was served after the close of written discovery. Corbett Decl., ¶ 12, Ex. H. In that same correspondence, Apple also informed BU that it has no responsive documents for three of the six requests for production of documents and that for two of the remaining requests, responsive documents can and should be

obtained from the Epistar Defendants. *Id.* Apple requested that BU withdraw the third subpoena. *Id.* On May 29, 2014 and June 1, 2014, BU's counsel responded and refused to withdraw the facially defective subpoena. Corbett Decl., ¶¶ 13-14, Exs. I-J. On June 5, 2014, Apple and BU held a further telephonic conference, but were unable to resolve or narrow the disputes. *Id.*, ¶ 15. On June 9, 2014, Apple served its objections to BU's third subpoena. Corbett Decl., ¶ 17, Ex. K. Left with no other choice, Apple was forced to withdraw its motion to quash filed in the Northern District of Texas and to file a motion to quash on the same grounds in this judicial district. Corbett Decl., ¶ 16.

## II. ARGUMENT AND AUTHORITIES

Federal Rule 45 <u>requires</u> a court to quash or modify a subpoena that "(i) fails to allow a reasonable time to comply, (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c), (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d). Here, BU's third subpoena to Apple subjects Apple to undue burden as the subpoena demands discovery from a non-party after the close of written discovery and seeks documents that can be obtained from the Epistar Defendants, do not exist or are irrelevant. Moreover, BU's subpoena must be quashed as it improperly requires Apple to comply beyond the geographical limitations of Federal Rule 45(c).

### A. BU's Subpoena Should Be Quashed Because It Is Untimely.

BU's subpoena is invalid because it was served after the close of written discovery in the underlying case. Written fact discovery in the Epistar Cases closed on March 31, 2014. (Dkt. #74) BU served its third party subpoena on Apple on or about May 27, 2014 – nearly two months after the close of written discovery. Corbett Decl., Ex. G. As such, BU's subpoena is invalid and should be quashed. *MedImmune, LLC v. PDL Biopharma, Inc.*, C08-05590 JF HRL,

2010 WL 1266770 (N.D. Cal. Apr. 1, 2010) (quashing a third party subpoena that was served after the discovery cutoff); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 190 F.R.D. 556, 561 (S.D. Cal. 1999) ("Case law establishes that subpoenas under Rule 45 are discovery, and must be utilized within the time period permitted for discovery in a case."); *NSight, Inc. v. PeopleSoft, Inc.*, No. C04–003836, 2006 WL 988807, *3 (N.D. Cal., Apr.13, 2006) (noting that a majority of jurisdictions hold that FRCP 45 discovery is pretrial discovery that must be served within the designated discovery period); *see also Alper v. United States*, 190 F.R.D. 281, 284 (D. Mass. 2000) (Neiman, J.) ("Plaintiff cannot now obtain through one means, Rule 45, what he has been precluded from obtaining through another, the expired discovery schedule.").

The only justification BU has provided for its failure to timely serve this subpoena on Apple during the written discovery period, is that the deadline only applies to "party" written discovery. Corbett Decl., ¶ 8, Ex. E. However, this statement is directly contrary to BU's arguments to this Court in its own motion to quash two third party subpoenas served by the Epistar Defendants two days after the close of written discovery. BU argued, among other things, that the Epistar Defendants' subpoenas were untimely because they were served after the March 31 close of written discovery. (Dkt. # 465 filed in Case 1:12-cv-11935). Now, BU is taking an inconsistent and incorrect position.

During meet-and-confer correspondence, BU also argued that the written discovery deadline was extended to July 31, 2014 and, therefore, its subpoena to Apple is timely. However, BU never requested that the extension of written discovery include an extension of third-party subpoenas. Indeed, BU was very specific as to the types of written discovery that it sought to extend beyond the March 31 deadline. Specifically, on April 16, 2014 – after the close of written discovery – BU filed a motion to amend the written discovery deadline to allow BU to

"serve 10 additional damages-related interrogatories, 10 additional damages-related document requests, and email discovery requests on 5 additional custodians for each defendant…." (Dkt. #447 filed in Case 1:12-cv-11935). On May 8, 2014, the Court granted, in part, BU's motion to amend the written discovery deadline and allowed "some additional written discovery on damages issues." (Dkt. # 494 filed in Case 1:12-cv-11935). The Court's May 8, 2014 Order specifically identifies the additional written discovery that would be permitted after the March 31, 2014 deadline. *Id.* Notably, at no point in its motion to amend the scheduling order did BU seek an extension of time to serve third-party subpoenas and the Court's Order does not extend that deadline beyond March 31st. *Id.* As such, BU's subpoena is untimely and should be quashed.

**B. BU's Subpoena Must Be Quashed Because It Is Unduly Burdensome.**

Although a party is free to subpoena records from a nonparty under Federal Rule of Civil Procedure 45, the scope of the subpoena is limited by Rule 26(b)(1). *See, e.g., Dimitric v. Texas Workforce Comm'n*, 07-cv-0247, 2008 WL 2630089, at *1 (S.D. Tex. June 30, 2008); *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 177 F.R.D. 443, 443–44 (D. Minn. 1997). Federal Rule 26(b)(2) limits discovery when "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." *See Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) (noting same). The First Circuit has also held that a subpoena may be quashed if the responsive information was already provided by other witnesses, as duplicative subpoenas to a non-party constitute an undue burden and are not permitted. *See id.*

The First Circuit has long recognized that the burden on non-parties is a special factor weighing strongly against discovery from non-parties. *Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41-42 (1st Cir. 2003). A court may consider the expense and

inconvenience if a subpoena is issued to a non-party, as a subpoena to a non-party should not be enforced if the reasons for resisting discovery outweigh the need for the discovery. *Id; see Heidelberg Americas, Inc.*, 333 F.3d at 42. Moreover, a court may find that a subpoena presents an undue burden when the subpoena is facially overbroad. *Heidelberg Americas*., 333 F.3d at 41 (affirming district court's grant of nonparty motion to quash when subpoena imposed undue burden on nonparty); *see also Accusoft Corp. v. Quest Diagnostics, Inc.,* Civ. No. 12-cv-40007-FDS, 2012 WL 1358662 (D. Mass. Apr. 18, 2012) (Saylor, J.) (quashing subpoenas to nonparties when requested discovery could be more easily obtained from defendants themselves).

Here, the documents BU requests in its subpoena are unduly burdensome and facially overbroad for multiple reasons. First, BU's subpoena includes several document requests related to the Epistar Defendants that could have and should have been requested by BU from the Epistar Defendants themselves. Specifically, BU requests the production of the following documents from non-party Apple:

- *All* communications (including attachments) between Apple and any of the Epistar Defendants relating to LEDs (Request No. 1).
- Documents such as purchase orders, sales agreements, invoices, or bill of ladings, evidencing the terms of Apple's purchases of LED chips from any of the Epistar Defendants, including negotiations of sales terms, etc. (Request No. 5).
- *All* communications or documents from or to any of the Epistar Defendants containing quote sheets for InGaN LEDs or products containing InGaN LEDs (Request No. 6).

Corbett Decl., Ex. G. As evident from the face of the requests, BU is seeking documents from Apple that are in the possession of the Epistar Defendants. As has been noted by other courts, a

non-party should not be burdened when the documents sought are also obtainable by a party to the litigation:

> Here, the vast majority of the discovery sought from TPGI is discovery obtainable from a source more direct, convenient, and less burdensome-namely, from Defendants. Notably, at the hearing on the motions to quash, counsel for Nidec represented that the discovery at issue consisted of, in essence, documents provided by Defendants to third parties-potential bidders for the shares of JVC stock-regarding Defendants' assessment about the patents at issue and the instant litigation. There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.

*Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007); *see also Insituform Tech. v. Cat Contracting*, 914 F. Supp. 286, 287 (N.D. Ill. 1996) (holding a party should not be permitted to seek information from a non-party that they can obtain from the opposing party); *Davis v. Ramen*, 2010 WL 1948560, at *1 (E.D. Cal. May 11, 2010) (denying a request for a subpoena duces tecum because the plaintiff had not demonstrated that the records were only obtainable through the non-party).

During meet-and-confer communications, BU argued that the Epistar Defendants have not produced the requested documents, despite motions to compel the Epistar Defendants to do so. However, Apple should not be thrown in the middle of the discovery disputes between BU and the Epistar Defendants and be forced to decipher what has or has not been produced. There is no dispute that BU can and should obtain the documents from the Epistar Defendants and requesting that Apple undertake the effort to produce all communications and documents with the Epistar Defendants is unreasonable and burdensome. BU also argued that it was entitled to the same set of documents from Apple (as it had already received from the Epistar Defendants) in order to "verify" the Epistar Defendants' document production. Such a demand, however, is improper. *See Insituform Tech., Inc. v. CAT Contracting, Inc.*, 914 F. Supp. 286, 287 (N.D. Ill.

1996) (granting nonparty's motion to quash notice of deposition where it appeared that the deposition was sought to verify information already obtained from the defendants). Therefore, because BU has already obtained (or should be able to obtain if it has not already done so) this information from the Epistar Defendants who are parties to the case, BU cannot demonstrate a specific need for these documents from non-party Apple.[2]

BU's remaining requests are either facially overbroad, not limited to any specific time period, or fail to specify with any particularity exactly what documents BU seeks from Apple. For example, BU seeks the production of "all communications (including attachments)" between Apple and any of its "subsidiaries, agents or related companies relating to Defendants' LEDs." Corbett Decl., Ex. G. Putting aside the fact that Apple already informed BU that it does not have any documents responsive to this request (Request No. 2), this request highlights the over-breadth of BU's document requests.

Similarly, Request No. 3, which seeks all of Apple's documents and communications relating to Apple's sampling, testing, or other evaluation of the Epistar Defendants' LEDs, also is overbroad and seeks documents outside the scope of permitted discovery. During meet-and-confer communications, BU argued that documents responsive to Request No. 3 are relevant to indirect infringement. Corbett Decl., Ex. J. BU's argument is unpersuasive. Discovery relating to indirect infringement has closed as this Court expressly allowed only specific damages related discovery to proceed past the discovery deadline ("The Court also finds it appropriate to allow some additional written discovery on ***damages*** issues.") (Dkt. # 494 filed in Case 1:12-cv-11935) (emphasis added).

[2] BU offered to identify search terms for the collection of Apple documents. However, given that these same search terms can be (or should have already been) provided to Defendants in this case and would result in the same collection of documents, there is no identifiable need that require Apple to undertake the significant expense and time associated with document collection.

In summary, as a non-party, Apple should not be forced to search for, collect, review and produce documents that are equally in the possession of the Epistar Defendants (Request Nos. 1, 5 and 6). Apple also should not be forced to produce documents that are outside the scope of permitted discovery (Request No. 3). And, in any event, Apple has already informed BU that it does not have any documents responsive to Request Nos. 2, 4 and 5.[3]

### C. BU's Subpoena Must Be Quashed Because It Requires Apple To Comply Beyond The Geographical Limits Specified In Rule 45(c).

Federal Rule of Civil Procedure 45 allows for "the production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . ." Fed. R. Civ. P. 45(c)(2). BU's subpoena violates Rule 45(c)(2) by requiring compliance in Boston, Massachusetts – a forum inconvenient to non-party Apple. Specifically, Apple's corporate headquarters, principal place of business, the location of any relevant documents and Apple's in-house and primary outside counsel are in or near Cupertino, California.[4] Declaration of Mark Buckley In Supp. of Mot. to Quash and Mot. for Protective Order ("Buckley Decl."), ¶¶ 3-5. This is a fact that BU very well knows, as it served its subpoena by hand to Apple's legal

---

[3] With respect to Request No. 5, Apple already has informed BU that it does not have documents such as purchase orders, sales agreements, invoices, or bill of ladings evidencing the terms of Apple's purchases of LED chips from any of the Defendants. To the extent Request No. 5 also seeks communications between Apple and the Epistar Defendants, those documents can and should be obtained from the Epistar Defendants themselves.

[4] BU argues that because Apple admitted in its answer to BU's complaint that "Apple conducts business in the Commonwealth of Massachusetts and in this judicial district," compliance in Boston, Massachusetts satisfies Federal Rule 45. This is nonsensical as BU's reading of Federal Rule 45 would require every company with a national presence to theoretically face litigation regarding subpoenas in every district court across the country. Such a result would undermine the purpose of the revisions to Rule 45 – which expressly was to ensure that litigations concerning subpoenas occur in a district convenient to the nonparty. First Texas and now Massachusetts are district courts that are inconvenient to Apple.

department in Sunnyvale, California, located less than four miles from Apple's Cupertino, California primary campus. There is no dispute that Boston, Massachusetts is not within 100 miles of Cupertino, California. And, while Apple operates two offices within the District of Massachusetts, only fourteen employees are based in these locations and Apple is not aware of any relevant technical, marketing, sales or financial documents related to any of Apple's products taking place in these locations. Buckley Decl., ¶ 6. There is no dispute that Apple's corporate headquarters and principal place of business are in the Northern District of California and that having to face litigation concerning BU's subpoena in Massachusetts is inconvenient.

In fact, BU's failure to comply with Rule 45's geographic limitations has created significant inconvenience and added expense on Apple, the exact concern the recent amendments to Rule 45 seek to avoid: "Proposed Rule 45(c)(2)(A) was changed to call for production 'within 100 miles of where the person [subject to the subpoena] resides, is employed or regularly transacts business in person.' ***This change would ensure that if litigation about a subpoena is necessary it will occur at a location convenient for the nonparty being subpoenaed***." Corbett Decl., Ex. L. (emphasis added); *see also Shaw Grp., Inc. v. Zurich Am. Ins. Co*., No. 12-257-JJB, 2014 WL 204244 (M.D. La. Jan. 17, 2014) ("[E]nforcement of subpoenas to nonparties is still directed to the district court of the place of compliance. This ensures that the nonparty is not subject to the burden and expense of enforcing its rights and interests in every state and federal district merely because a party to a lawsuit in that state or district wants records in the non-party's possession.").

Forcing Apple to file a motion to quash in the District of Massachusetts (and previously in the Northern District of Texas) is directly at odds with the revisions to Federal Rule 45 – namely to ensure that any litigation concerning a subpoena occurs at a location convenient for

the nonparty.[5] This is particularly true where Apple has now had to enlist counsel in both Dallas, Texas and Boston, Massachusetts to address BU's continued service of facially defective subpoenas on Apple. As such, Apple respectfully requests an order quashing the subpoena for failure to comply with Federal Rule of Civil Procedure 45(c)(2).

## III. MOTION FOR PROTECTIVE ORDER

Federal Rule 26(c) specifically empowers the Court to issue protective orders "for good cause shown" the making of "any order which justice requires" "to protect a party or person from…undue burden and expense." FED. R. CIV. P. 26(c); *see Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) ("a court 'may make any order which justice requires to protect a party or person from…undue burden'"). A district court has "broad discretion" to decide "when a protective order is appropriate and what degree of protection is required." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir.1993) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). The "good cause" standard in Federal Rule 26(c) is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case. *Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 402 (1st Cir. 2005) (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959-60, 334 U.S. App. D.C. 165 (D.C. Cir. 1999)).

Here, good cause exists for the issuance of a protective order. As discussed in detail above, BU's subpoena is not in furtherance of a good faith attempt to obtain relevant information

[5] During meet-and-confer communications, BU misses the point regarding the importance of compliance with Federal Rule 45(c)(2). BU argues that the compliance location is irrelevant as it has offered to allow Apple to produce its documents in any geographic location and to allow Apple to produce any electronic documents via an FTP site. Corbett Decl., Ex. J. However, the main concern (and that addressed by the revisions to Federal Rule 45) regarding BU's continued refusal to comply with Federal Rule 45(c)(2) is that it has forced Apple to file motions to quash in now two inconvenient districts, thereby increasing Apple's burden and expense in responding to the subpoena.

from Apple – instead, it appears intended to inconvenience Apple by forcing it to defend itself in numerous courts across the country. Indeed, this is now BU's *third* subpoena to Apple to produce documents in this litigation – and, the third subpoena continues to violate Federal Rule 45(c) and remains defective, overbroad, and unduly burdensome. As a non-party that settled its case with BU nearly six months ago, Apple has been forced to retain counsel and bear the expense of seeking the relief herein both in this Court and in the Northern District of Texas. To ensure it is not subject to the continued undue expense and harassment associated with BU's unfounded and facially overbroad subpoenas, a protective order enjoining any further Federal Rule 45 subpoenas on Apple and protecting Apple from having to respond to any further BU subpoenas is appropriate.

## IV. CONCLUSION

For the reasons stated above, Apple respectfully requests that this Court quash BU's subpoena to produce documents, information, or objects or to permit inspection of premises served on non-party Apple and issue a protective order.

Dated: June 9, 2014

Respectfully submitted,

**APPLE INC.**

*/s/ Nicholas G. Papastavros*
Nicholas G. Papastavros, BBO # 635742
Maya P. Choksi, BBO # 679861
DLA Piper LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: 617.406.6000
Facsimile: 617.406.6119
nick.papastavros@dlapiper.com
maya.choksi@dlapiper.com

Mark D. Fowler
Christine Corbett
Summer Krause
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, CA 94303-2215
Telephone: 650.833.2000
Facsimile: 650.833.2001
mark.fowler@dlapiper.com
christine.corbett@dlapiper.com
summer.krause@dlapiper.com

**LOCAL RULE 7.1 CERTIFICATION**

I hereby certify that I, counsel for Apple, conferred telephonically with Andrew Howard, counsel for BU and attempted in good faith to resolve the issues presented in this motion. Mr. Howard agreed to discuss an alternative venue for the production of documents and to discuss search terms for the collection of Apple documents, but would not agree to withdraw the subpoena.

*/s/Christine Corbett*
Christine Corbett

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 9, 2014.

*/s/Nicholas G. Papastavros*
Nicholas G. Papastavros