**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| TRUSTEES OF BOSTON UNIVERSITY,<br>    Plaintiff,<br>    v.<br>EVERLIGHT ELECTRONICS CO., LTD.,<br>et al.,<br>    Defendants. | Consolidated Civil Action No.<br>12-11935-PBS |
| TRUSTEES OF BOSTON UNIVERSITY,<br>    Plaintiff,<br>    v.<br>EPISTAR CORPORATION, et al.,<br>    Defendants. | Civil Action No. 12-12326-PBS |
| TRUSTEES OF BOSTON UNIVERSITY,<br>    Plaintiff,<br>    v.<br>LITE-ON INC., et al.,<br>    Defendants. | Civil Action No. 12-12330-PBS |

May 27, 2015

Saris, Chief Judge.

## MEMORANDUM AND ORDER

Plaintiff Trustees of Boston University (BU) objects to the magistrate judge's order declining to compel Defendant Epistar Corporation (Epistar) to produce documents and communications relating to legal opinions sought and obtained from the Finnegan

1

law firm.[1] (Docket Nos. 823, 843). BU argues that the magistrate judge clearly erred when it found that Epistar did not waive its attorney-client privilege and work product immunity during a deposition of Meng-Chun Kuo, Epistar's Director of Intellectual Property. For the following reasons, the Court **<u>SUSTAINS</u>** BU's objection (Docket No. 843) and **<u>ALLOWS IN PART</u>** BU's motion to compel (Docket No. 717).

## I. FACTUAL AND PROCEDURAL BACKGROUND

BU accuses Defendants Epistar, Everlight Electronics Co. (Everlight), and Lite-On, Inc. (Lite-On) of infringing U.S. Patent No. 5,686,738 (the '738 patent), which describes a type of gallium nitride film commonly found in light-emitting diodes (LEDs). Shortly after initiating this lawsuit, BU deposed Meng-Chun Kuo, Director of Intellectual Property at Epistar. Kuo was designated as a witness for "All opinions EPISTAR has received regarding validity, and infringement (including willful infringement) of the '738 patent." At the deposition, Kuo was represented by an attorney from the Finnegan law firm.

During her deposition, Kuo testified that Epistar was specifically relying on an opinion from counsel to avoid a finding of willful infringement. She then asked to speak to her attorney in private to determine "whether this is about privileged information or not." After speaking with counsel, Kuo

---

[1] Finnegan, Henderson, Farabow, Garrett & Dunner LLP

admitted that Epistar sought an opinion from Finnegan in 2007 after co-defendant Everlight warned them that Epistar products may be infringing the '738 patent. According to Kuo, Epistar prepared an analysis report of its Venus-series of nitride products, which it gave to Finnegan. Finnegan then told Epistar in an oral opinion that its products did not infringe the '738 patent.

Following these admissions, BU's attorney clarified with Kuo, "And when you say 'no infringement,' you're talking no infringement by the Venus products of the '738 patent, based upon the analysis that Epistar provided the attorneys?" Kuo responded, "Yes." Later on during the deposition, Kuo also confirmed that the analysis sent to Finnegan in 2007 still exists, although she is not sure where that file is currently stored.

BU moved to compel Epistar to produce all documents and communications relating to any infringement or invalidity opinions rendered orally or in writing by Finnegan to Epistar concerning the '738 patent. (Docket No. 717). The magistrate judge denied the motion, finding that Kuo's statements during the deposition did not constitute a waiver of the attorney-client privilege. (Docket No. 823). BU now objects to this ruling, which Epistar opposes. (Docket Nos. 843, 861).

Importantly, the magistrate judge also ordered Epistar to choose whether it will assert an advice of counsel defense in

response to BU's claim of willful infringement. (Docket No. 1001). In a reversal from Kuo's deposition, Epistar now indicates that it will not be relying on Finnegan's opinion or any other advice of counsel as a defense. (Docket No. 1188).

## II. LEGAL STANDARDS

A district judge may reconsider a pretrial ruling of a magistrate judge only "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); see also Fed R. Civ. P. 72(a). Under the "clearly erroneous" standard, the Court will accept the magistrate judge's findings of fact and conclusions drawn therefrom unless "after scrutinizing the entire record, we form a strong, unyielding belief that a mistake has been made." Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999) (quotation marks omitted). Under the "contrary to law" standard, the district court's review is plenary. See PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010) ("[F]or questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under Rule 72(b)'s de novo standard.").

The Federal Circuit will generally apply the law of the regional circuit with respect to questions involving attorney-client privilege. Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1346 (Fed. Cir. 2005); see also Centocor Ortho Biotech,

4

Inc. v. Abbott Labs., 636 F.3d 1341, 1347 (Fed. Cir. 2011) ("For issues not unique to patent law, we apply the law of the regional circuit in which the appeal would otherwise lie."). The Federal Circuit will apply its own law, however, when dealing with questions regarding a party's waiver of attorney-client privilege in light of an assertion of the advice-of-counsel defense in response to a charge of willful infringement. In re EchoStar Comm'cns Corp., 448 F.3d 1294, 1298 (Fed. Cir. 2006).

**III. DISCUSSION**

**A. Whether Epistar Waived Attorney-Client Privilege**

The Court must first determine whether Epistar waived attorney-client privilege during the deposition of Meng-Chun Kuo. The magistrate judge found that Kuo merely revealed the existence of Finnegan's opinion regarding infringement, which is consistent with the requirements of a privilege log. The magistrate judge also did not find a waiver when Kuo disclosed Finnegan's ultimate legal conclusion, explaining that Epistar did not reveal the "content" of any attorney-client communications. For example, the magistrate judge did not believe that Kuo revealed what Epistar told its attorneys or disclosed the reasoning behind Finnegan's legal conclusion.

The First Circuit has approved Wigmore's recitation of the essential elements of the attorney-client privilege: (1) where legal advice of any kind is sought (2) from a professional legal

5

adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. United States v. MIT, 129 F.3d 681, 684 (1st Cir. 1997) (quoting 8 J. Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961)). "The privilege protects not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Texaco P.R., Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 883 (1st Cir. 1995) (quoting Upjohn Co. v. United States, 449 U.S. 383, 390 (1981)). "The rationale for the privilege is that safeguarding communications between attorney and client encourages disclosures by the client to the lawyer that facilitate the client's compliance with the law and better enable the client to present legitimate arguments should litigation arise." Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002).

The First Circuit has also recognized that the attorney-client privilege may be waived. "Ordinarily, deliberate disclosure of a privileged communication, where no privilege protects this further disclosure, waives a communication privilege." United States v. Rakes, 136 F.3d 1, 5 (1st Cir. 1998). This is because disclosure to third parties "destroys the

confidentiality upon which the privilege is premised." Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011) (quotation marks omitted)). The First Circuit has also recognized that "conduct can serve to waive the attorney-client privilege by implication." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22-23 (1st Cir. 2003). For example, there may be an implied waiver where a party (1) places the attorney-client relationship itself at issue; or (2) asserts reliance on an attorney's advice as an element of a claim or defense. See id. at 24 (citing Sedco Int'l, S. A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982)). Federal Circuit law adheres to identical principles. See In re Seagate Tech., LLC, 497 F.3d 1360, 1372 (Fed. Cir. 2007) ("The attorney-client privilege belongs to the client, who alone may waive it."); Echostar, 448 F.3d at 1301 ("The client can waive the attorney-client privilege when, for instance, it uses the advice to establish a defense.").

With respect to partial disclosures of an attorney-client communication, however, First Circuit law is less developed. "It is crystal clear that any previously privileged information actually revealed . . . los[es] any veneer of privilege." In re Keeper of Records, 348 F.3d at 23. But the First Circuit has not ruled on when a partial disclosure of an attorney-client communication results in a waiver of the rest of the communication. Here, for example, Epistar disclosed the ultimate

7

legal conclusion reached by Finnegan but did not reveal the legal reasoning supporting the attorney's conclusion. Courts have handled these types of partial disclosures differently.

For starters, courts generally agree that "[n]ot every passing reference to counsel . . . will trigger a waiver of the privilege." United States v. Gorski, 36 F. Supp. 3d 256, 268 (D. Mass. 2014). For example, "indicating the fact or topic of a confidential communication" does not waive attorney-client privilege. Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., 2008 WL 3285751, at *3-4 (N.D. Ill. Aug. 8, 2008); see also United States v. White, 887 F.2d 267, 271 (D.C. Cir. 1989) ("An averment that lawyers have looked into a matter does not imply an intent to reveal the substance of the lawyers' advice."). But courts disagree about whether a waiver occurs once a client begins to disclose the substance of attorney-client communications, such as the attorney's conclusions or recommendations.

Some courts hold that "[f]urther inquiry into the substance of the client's and attorney's discussions does implicate the privilege and an assertion is required to preserve it." GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1273 (Fed. Cir. 2001) (citing Nguyen v. Excel Corp., 197 F.3d 200, 206 (5th Cir. 1999)); see also United States v. Smith, 454 F.3d 707, 713 (7th Cir. 2006) (client who began his answer with "what the lawyer told

me-certainly indicates a willingness to waive the privilege"). Even when a party discloses just part of an attorney-client communication or merely gives the conclusion, it is typically enough to waive the privilege for the communication disclosed. See In re Grand Jury Subpoena (Zerendow), 925 F. Supp. 849, 855 (D. Mass. 1995) ("A client may waive the privilege by testifying as to part of a privileged communication." (citing In re Grand Jury Investigation (Tinari), 631 F.2d 17, 19 n.1 (3d Cir. 1980)); United States v. Jacobs, 117 F.3d 82, 91 (2d Cir. 1997) abrogated on other grounds by Loughrin v. United States, 134 S. Ct. 2384, 2388 n.2 (2014) (holding that disclosure of an inaccurate summary of letters from legal counsel was "as effective a waiver as a direct quotation" with respect to the letters); United States v. Mendelsohn, 896 F.2d 1183, 1189 (9th Cir. 1990) (holding that a waiver may occur even when a client misstates what his attorney told him); Electro Sci. Indus., Inc. v. Gen. Scanning, Inc., 175 F.R.D. 539, 543 (N.D. Cal. 1997) ("[I]t makes no sense to hold that no waiver occurs when what is disclosed is the most important part of the privileged communication, but not the details."); 1 McCormick on Evidence § 93 (7th ed. 2013) ("Waiver may be found . . . from conduct such as partial disclosure which would make it unfair for the client to invoke the privilege

thereafter.").[2]

Meanwhile, other courts have recognized an exception to the waiver rule when a client merely discloses a summary or conclusion of the attorney's legal opinions. See Zenith Elec. Corp. v. Exzec, Inc., 1997 WL 798908, at *4 (N.D. Ill. Dec. 24, 1997) (holding that "mere restatements of an attorney's conclusion do not disclose a particular attorney-client communication and therefore does not constitute a waiver."); Furminator, Inc. v. Kim Laube & Co., 2009 WL 5176562, at *2 (E.D. Mo. Dec. 21, 2009) ("Several courts have determined that disclosing a general summary of a legal opinion does not amount to a waiver of privilege."). In Zenith, a party sent two opinion letters drafted by attorneys to a research institute. 1997 WL 798908, at *4. The opinion letters contained a list of prior art, the name of an article given to the attorney, a list of previously considered patents, and a brief description of the party's product. Id. As a result, the Court found that the defendant had waived attorney-client privilege over the opinion letters. Id. But the Court also stated that a mere "paraphrase" or "restate[ment]" of an attorney's ultimate conclusions would

---

[2] BU also cites to In re Target Tech. Co., 208 F. App'x 825 (Fed. Cir. 2006) where the Court found waiver based on an "extrajudicial disclosure that revealed the attorney's conclusion, but did not reveal the details of the privileged communication." Id. at 826-27. The Court observes that this case is unpublished and nonprecedential. See Fed. Cir. R. 32.1(c).

not be a waiver. Id. Accordingly, disclosure of an attorney's ultimate conclusion, without more, may not be sufficient to waive the privilege. See Elan Microelectronics Corp. v. Pixcir Microelectronics Co., 2013 WL 4499006, at *8 (D. Nev. Aug 14, 2013) (holding that a powerpoint presentation referring to legal opinions from counsel did not waive the privilege).

With these principles in mind, the magistrate judge's ruling was clearly erroneous or contrary to law in at least two ways:

First, Epistar waived the attorney-client privilege by disclosing the substance and content of its request for legal advice from Finnegan. The magistrate judge focused on whether merely disclosing Finnegan's bare conclusion about infringement constituted a waiver. As mentioned above, courts are split on how to handle that question. But Epistar's disclosures here went further than any of those cases. Kuo stated during her deposition that Epistar contacted Finnegan after Everlight informed them of infringement concerns regarding the '738 patent in 2007. More to the point, Kuo also stated that Epistar prepared an analysis of the Venus-series of products, which was transmitted to Finnegan for purposes of obtaining a legal opinion regarding potential infringement of the '738 patent. Indeed, the attorney for BU clarified with Kuo, "And when you say 'no infringement,' you're talking no infringement by the Venus products of the '738 patent, based upon the analysis that Epistar provided the attorneys?"

11

(emphasis added). Kuo responded, "Yes." At the very least, Epistar waived its privilege over the analysis report that it prepared and gave to Finnegan, which was the basis of the legal opinion. See Upjohn, 449 U.S. at 396 (explaining that attorney-client privilege shields against the question: "What did you say or write to the attorney?"); Chicago Bd. Options Exch., 2008 WL 3285751, at *3 ("There is a significant difference between indicating the fact or topic of a confidential communication with an attorney and revealing its content.").

Second, the circumstances surrounding Kuo's disclosures indicate that she was deliberately waiving any confidentiality in communications between Epistar and Finnegan relating to the 2007 non-infringement opinion. In the context of judicial proceedings, Epistar made Kuo available to be deposed on the topic of "All opinions EPISTAR has received regarding validity, and infringement (including willful infringement) of the '738 patent." Shortly after questions on this topic began, Kuo also asked to speak to a Finnegan attorney to determine "whether this is about privileged information or not." Following a brief break, Kuo agreed to answer the questions, and at no time did Kuo or her Finnegan attorney assert attorney-client privilege. See 8 Wright, Miller, et al., Federal Practice & Procedure § 2016.1 (3d ed.) ("In the deposition context, as at trial, the objection should ordinarily be asserted when a question seeking privileged

material is asked, and the questioner may explore the propriety
of the objection with questions going to availability of the
privilege."). In short, Kuo chose to disclose information about
Epistar's communications with Finnegan (1) in a deposition (2) in
the presence of a Finnegan attorney (3) after speaking to a
Finnegan attorney about whether the questions implicated
privilege. All of these circumstances indicate that Epistar did
not intend to keep these communications private. See In re Sealed
Case, 877 F.2d 976, 980 (D.C. Cir. 1980) ("[I]f a client wishes
to preserve the privilege, it must treat the confidentiality of
attorney-client communications like jewels–if not crown
jewels."). For these reasons, logic and fairness dictate that
Epistar waived its attorney-client privilege.

**B. Scope of the Waiver**

The next question is how to define the scope of the waiver.
BU has suggested that Kuo's disclosures are an implied waiver of
privilege for every other attorney-client communication on the
same subject-matter, including any other opinions provided by
Finnegan relating to infringement or invalidity of the '738
patent. But this suggestion is contrary to First Circuit
precedent.

The First Circuit has instructed that the scope of implied
waiver is "almost invariably premised on fairness concerns." In
re Keeper of Records, 348 F.3d at 24. For example, implied

waivers over an entire subject matter have been found where "the party asserting the privilege placed protected information in issue for personal benefit through some affirmative act, and the court found that to allow the privilege to protect against disclosure of that information would have been unfair to the opposing party." Id. (quotation marks omitted); see also Rakes, 136 F.3d 1, 5 (explaining that waiver is "directed against selective disclosures"). In these circumstances, a subject-matter waiver discourages a party who might otherwise try to "selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process." In re Keeper of Records, 348 F.3d at 24.

The fairness concerns that might require an implied subject-matter waiver over all communications between Finnegan and Epistar relating to invalidity or infringement of the '738 patent are not present her. In particular, Epistar has recently decided not to make communications with Finnegan an issue in this case. Nor is it trying to benefit from the disclosure by, for example, using it as part of an advice-of-counsel defense. Id. ("Where a party has not thrust a partial disclosure into ongoing litigation, fairness concerns neither require nor permit massive breaching of the attorney-client privilege."). Granted, Epistar referred to Finnegan's non-infringement opinion as a reason not to allow BU's motion to add a willful infringement claim to its

14

complaint. But Epistar has now decided that it will not be raising an advice-of-counsel defense at summary judgment or at trial. (Docket No. 1188). As a result, at this time the Court does not compel the production of all attorney-client communications between Epistar and Finnegan regarding the '738 patent. Instead, the Court merely compels Epistar to disclose all attorney-client communications relating to the non-infringement opinion provided by Finnegan in 2007. In all other respects, BU's objection to the magistrate judge's order is overruled.[3]

## ORDER

The Court **SUSTAINS** BU's objection (Docket No. 843) and **ALLOWS IN PART** BU's motion to compel. Epistar is hereby compelled to produce all attorney-client communications relating to the non-infringement opinion provided by Finnegan in 2007. In all other respects, BU's objection to the magistrate judge's order is **OVERRULED**.

       /s/ PATTI B. SARIS  
       Patti B. Saris

---

[3] In particular, BU also argues that Epistar waived any work product immunity with respect to Finnegan's non-infringement opinion. The Court finds that BU has insufficiently briefed this issue and declines to overrule the magistrate judge's ruling on this point. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

Chief United States District Judge