# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRUSTEES OF BOSTON UNIVERSITY,<br><br>    Plaintiff,<br><br>  v.<br><br>EVERLIGHT ELECTRONICS CO., LTD.<br>and EVERLIGHT AMERICAS, INC.,<br><br>    Defendants. | Consolidated Civil Action No.<br>12-cv-11935-PBS |
| TRUSTEES OF BOSTON UNIVERSITY,<br><br>    Plaintiff,<br><br>  v.<br><br>EPISTAR CORPORATION,<br><br>    Defendant. | Consolidated Civil Action No.<br>12-cv-11935-PBS<br><br>Unconsolidated Civil Action No.<br>12-cv-12326-PBS |
| TRUSTEES OF BOSTON UNIVERSITY,<br><br>    Plaintiff,<br><br>v.<br><br>LITE-ON INC., ET AL,<br><br>    Defendants. | Consolidated Civil Action No.<br>12-cv-11935-PBS<br><br>Unconsolidated Civil Action No.<br>12-cv-12330-PBS |

**DEFENDANTS' SECOND MOTION FOR FINDING OF CONTEMPT BY PLAINTIFF'S LEAD COUNSEL AND SUPPORTING MEMORANDUM**

Defendants Epistar Corporation, Everlight Electronics Co., Ltd., Everlight Americas, Inc., Lite-On Technology Corp., Lite-On Inc., Lite-On Trading USA, Inc., and Lite-On Service USA, Inc., (collectively, "Defendants") hereby move the Court for a finding of contempt by Plaitniff's lead counsel, Michael Shore, for sending additional emails in violation of the Court's

prior Orders and the Massachusetts Rules of Professional Conduct applicable to proceedings before this Court under Local Rule 83.6.1. During trial, Mr. Shore repeatedly sent emails making improper accusations about and threats seeking to intimidate Defendants' counsel. As a result, the Court ordered Mr. Shore, "I think right now you shouldn't issue any more e-mails. Do it through Mr. Evans, Mr. Belt, whatever. … No more e-mails, okay. … So the sanction is no more e-mails." ECF No. 1598 (Tr. of Jury Trial – Day Eight) at 8-5:8-21. Since then, Mr. Shore has violated the Court's Order over a dozen times, including threatening to disparage Defendants' counsel if they did not convince their clients to settle for more than double the jury verdict. As shown below, sending inappropriate emails to try to extort a settlement is part of Mr. Shore's regular practice. The Court called Mr. Shore's emails during trial "toxic" and said "you do not exemplify civility." *Id.* at 8-5:2-4. Mr. Shore's emails before and after trial show he is incapable of civility in the practice of law. Thus, Defendants seek an Order:

a) permanently enjoining Mr. Shore from sending any further emails to Defendants' counsel in this or any other case related to the patent-in-suit and from further disparaging and/or threatening Defendants or their counsel in any way; and

b) revoking Mr. Shore's *pro hac vice* admission to this Court, or alternatively instituting a formal disciplinary proceeding against Mr. Shore for his repeated violations of the Court's Orders and of the Massachusetts Rules of Professional Conduct.

**TABLE OF CONTENTS**

| **Title** | **Page** |
|---|---|
| I.   FACTUAL BACKGROUND | 2 |
|     A. Mr. Shore Made Improper Accusations and Threats During and After Trial, and the Court Unequivocally Barred Him From Sending Any More Emails | 2 |
|     B. Mr. Shore's Emails Before Trial Were Even Worse, and Included Blatant Attempts to Interfere in Defendants' Attorney-Client Relationship | 4 |
| II.  LEGAL STANDARDS | 10 |
|     A. Contempt | 10 |
|     B. Rules of Professional Conduct and Revocation of Admission Pro Hac Vice | 10 |
| III. ARGUMENT | 12 |
|     A. Mr. Shore Repeatedly Violated the Court's Order, Constituting Contempt | 12 |
|     B. Mr. Shore Violated Multiple Provisions of the Massachusetts Rules of Professional Conduct | 12 |
| IV.  CONCLUSION | 14 |

## TABLE OF AUTHORITIES

**Cases** | **Page**

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)   10

*Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987)   10

**Statutes and Rules**

Massachusetts Rules of Professional Conduct, Rule 3.4   11, 13

Massachusetts Rules of Professional Conduct, Rule 4.1   11

Massachusetts Rules of Professional Conduct, Rule 8.4   11, 13

Massachusetts Rules of Professional Conduct, Rule 8.4(h)   14

**MEMORANDUM IN SUPPORT OF DEFENDANTS' SECOND MOTION FOR FINDING OF CONTEMPT BY PLAINTIFF'S LEAD COUNSEL**

Defendants file this Second Motion for a Finding of Contempt by Plaintiff's Lead Counsel (the "Motion"), Michael Shore, for sending additional emails in violation of the Court's prior Orders and Massachusetts Rules of Professional Conduct applicable in this Court.

During the trial of this action, Mr. Shore repeatedly sent emails making improper accusations about and threats toward Defendants' counsel. When the emails were first brought to the Court's attention on November 9, 2015, the Court ordered Mr. Shore to "never send an email like that again" and noted, "I will consider that after the trial, if it continues for a course of conduct, as sanctionable." ECF No. 1594 (Tr. of Jury Trial – Day Four) at 4-115:6, 4-262:4-6. Mr. Shore promptly violated this first Order, and Defendants filed their first motion for a finding of contempt on November 16, 2015. *See* ECF No. 1574. The Court called Mr. Shore's emails "toxic," faulted him for lacking civility, and ordered him not to send any more emails, as quoted above. ECF No. 1598 (Tr. of Jury Trial – Day Eight) at 8-5:2-21.

Since the trial, Mr. Shore has violated the Court's second order over a dozen times. *See* Decl. of S. Steinberg in Supp. of Motion ("Steinberg Decl.") ¶ 36, Exs. 30-34. The day after trial ended, he threatened to disparage Defendants' counsel if their clients did not offer Plaintiff more than double the jury verdict. *Id.*, Ex. 30. Since then, Mr. Shore has ignored repeated requests that he follow the Court's Orders and stop sending emails, claiming that "[t]he 'no email' instruction ended with trial. You will deal with me, and no one else." *Id.*, Ex. 31. The same day, he sent another email calling Defendants' counsel "churlish and unprofessional." *Id.*, Ex. 32. Right before Christmas, he demanded 2.5 times the jury verdict, writing that it "is going to look cheap in a few weeks. You are captaining a sinking ship and advising the potential survivors not to accept the only lifeboat. The Taiwanese have received enough bad legal advice. Give them

1

some advice they can follow and survive." *Id.*, Ex. 33. After another reminder about the Court's order, Mr. Shore replied "[t]hat order expired with the trial." *Id.*, Ex. 34.

As shown below, Mr. Shore's recent emails have simply continued his regular practice throughout this case. In frequent (sometimes daily) emails couched as "Rule 408" settlement offers, Mr. Shore has repeatedly disparaged and threatened Defendants and their counsel, and tried to interfere in the attorney-client relationship, in an attempt to intimidate Defendants into settling this case. As the Court recognized during trial, Mr. Shore "do[es] not exemplify civility," and indeed, the email history shows he is incapable of civility in the practice of law.

Defendants seek an Order:[1]

a) permanently enjoining Mr. Shore from sending any further emails to Defendants' counsel in this or any other case related to the patent-in-suit and from further disparaging and/or threatening Defendants or their counsel in any way; and

b) revoking Mr. Shore's *pro hac vice* admission to this Court, or alternatively instituting a formal disciplinary proceeding against Mr. Shore for his repeated violations of the Court's Orders and of the Massachusetts Rules of Professional Conduct.

## I. FACTUAL BACKGROUND

### A. Mr. Shore Made Improper Accusations and Threats During and After Trial, and the Court Unequivocally Barred Him from Sending Any More Emails.

On November 5, 2015, Plaintiff's lead counsel, Michael Shore, emailed Defendants' counsel falsely accusing them of trying to perpetrate fraud on the Court and threatening to reveal the falsely alleged fraud unless Everlight agreed not to offer any evidence to reduce its royalty

---

[1] Mr. Shore's egregious actions further warrant monetary sanctions against his firm and issue sanctions against Plaintiff to be addressed when appropriate. The relief sought in this Motion is not exclusive of further sanctions.

base. *See* Steinberg Decl. Ex. 29.  Defendants brought Mr. Shore's improper intimidation tactics to the Court's attention on November 9, 2015, and the Court ordered Mr. Shore as follows:

- "In the meantime, let me just say this, we'll unravel it later, never send an email like that again."

- "You, Mr. Shore, can never do an e-mail like that. We don't execute lawyers. I don't know whether that was the middle of the night or you lost your -- I tell my children and I'm telling you, when you're angry, never write an e-mail."

- "Okay, so that cannot happen again, and I will consider that after the trial, if it continues for a course of conduct, as sanctionable."

*See* ECF No. 1594 (Tr. of Jury Trial – Day Four) at 4-115:6, 4-261:17-21, 4-262:4-6.  After the Court issued its Order, Mr. Shore said this was "chicken shit."  *See* Steinberg Decl. ¶ 29.

In violation of the Court's order, Mr. Shore sent several more improper emails the following weekend, falsely alleging "perjury" and "lying" by Meng-chun Kuo, and that Defendants' counsel "knew it was misleading to the point of fraudulent."  *See* ECF No. 1574-1; Steinberg Decl. Ex. 29.  Defendants moved for a finding of contempt and asked the Court to order Mr. Shore not to send any more emails to Defendants' counsel.  ECF No. 1574.  The Court ordered Mr. Shore as follows:

- "Mr. Shore, you are the author of the toxic e-mail series, and we're supposed to have civility among attorneys, and you do not exemplify civility.  It's not as bad as that other e-mail, my goodness, but I don't know why you do that. … I think right now you shouldn't issue any more e-mails. Do it through Mr. Evans, Mr. Belt, whatever. … No more e-mails, okay. … So the sanction is no more e-mails."

ECF No. 1598 (Tr. of Jury Trial – Day Eight) at 8-5:2-21.  After the Court issued its Order, Mr. Shore again called it "chicken shit" and told Defendants' counsel "You're lucky we're in a federal courthouse right now."  *See* Steinberg Decl. ¶ 30.

Thankfully, Mr. Shore did refrain from sending further emails during the trial.  *Id.* ¶ 31. However, as soon as the trial ended, Mr. Shore resumed sending emails to Defendants' counsel in violation of the Court's orders.  First, Mr. Shore demanded $30 million, more than twice the jury verdict, as a settlement, otherwise he threatened to disparage Defendants' counsel, writing:

3

> Offer BU $30 million for a release of the Defendants and ALL other remaining Defendants to the extent they have infringed based upon Epistar parts. It is likely the best deal you can hope for at this point. … I have been very careful not to disparage you or your firm despite the horrible things you have said about me, my client and my firm in Court and in pleadings (all untrue). Do not tempt me to reconsider being so gracious. There are limits.

*Id.*, Ex. 30.  Last week, in response to Defendants' counsel's request that he comply with the Court's order and not send further emails, Mr. Shore wrote that:

> As long as you are counsel of record, I will email and call to represent BU. You can choose to be churlish and unprofessional in responding, but you will not dictate which BU counsel communicates with you as Defendants' lead counsel. … Your bad attitude and meritless filings are making things worse. I politely suggest you start trying to solve your clients' extremely serious problems, of which I have never been one.

*Id.*, Ex. 32.  The following week, he demanded 2.5 times the jury verdict, writing "that $35 million is going to look cheap in a few weeks. You are captaining a sinking ship and advising the potential survivors not to accept the only lifeboat. The Taiwanese have received enough bad legal advice. Give them some advice they can follow and survive." *Id.*, Ex. 33.  In all, Mr. Shore has sent over a dozen emails to Defendants' counsel since the trial. *Id.* ¶ 36.

### B. Mr. Shore's Emails Before Trial Were Even Worse, and Included Blatant Attempts to Interfere in Defendants' Attorney-Client Relationship.

From Defendants' current counsel's experience over the past several months and reviewing correspondence with Defendants' prior counsel, Mr. Shore's inappropriate emails during and after trial continued his regular practice.  Throughout this case, Mr. Shore has sent frequent (sometimes daily) emails couched as "Rule 408" settlement offers that disparage, threaten, and try to intimidate and interfere in the relationship between Defendants and their counsel.  Some of the more notable examples are highlighted below.

On September 9, 2013, Mr. Shore sent a "Rule 408" email threatening to sue another thirty (30) alleged customers of Epistar if it did not settle, stating that:

> Each customer will know that it was sued purely as a result of your clients' refusal to either engage in reasonable discussions or agree that damages in the manufacturer cases can be based upon worldwide sales without proof of inducement. … To avoid these 30

4

cases being filed and an extreme escalation in BU's demands as a result, substantial progress in settlement must be made this week.

*Id.*, Ex. 1, pp. 2-3.  He later wrote "please share my actual emails with your client" to ensure his threats reached Defendants themselves.  *Id.* at p. 1.

On February 13, 2014, Mr. Shore sent another "Rule 408" email stating that if Defendants were not willing to settle:

> Then they will continue to blindly follow their lawyers' advice, pay their lawyers millions in fees to obtain uncertainty and ultimately lose the case. … At some point, they will figure out that speaking to me is their only option other than trial and a humiliating loss. … If you wanted what was best for your clients, you would figure out a way to meet with me professionally and get them out of the tar baby they keep hitting and kicking to their extreme detriment. … Please pass this email on to your client, verbatim.

*Id.*, Ex. 4, p. 3.  The following day, he sent another email saying "Its going to keep getting worse (more expensive), and they have Finnegan to blame, not BU." *Id.*, Ex. 4, p. 1.  This appears to be Mr. Shore's first of several attempts to interfere in Defendants' attorney-client relationship through the guise of a "Rule 408" email.

On February 18, 2014, Mr. Shore sent another "Rule 408" email stating that "Your clients are delusional, and the person running the case will be fired when its over." *Id.*, Ex. 6.  This appears to be Mr. Shore's first of several attempts to intimidate Defendants into settling by arguing that their in-house personnel would be fired otherwise.  Later that day, he emailed again saying "Your client blew another chance to cut their losses.  Keep billing them and telling them how BU's demands are more unreasonable than your bills." *Id.*, Ex. 7.

On February 26, 2014, Mr. Shore sent two more "Rule 408" emails, the first alleging that Epistar filed a "fraudulent" motion, and the second threatening that "[t]ell your client to contact me before something else bad happens." *Id.*, Ex. 8.  A week later, Mr. Shore sent another "Rule 408" email alleging that Epistar's motion was "fraudulent" and threatening that "BU will be seeking death penalty sanctions." *Id.*, Ex. 9.

5

On April 10, 2014, Mr. Shore sent a "Rule 408" email telling Defendants' prior counsel:

> I write this email because when I am confronted by illogical positions being taken by educated persons, my natural curiosity asks "Is he crazy, stupid, greedy for fees because he lacks work or is it something else I am missing?" … I think a Boston jury gives me $25 million or more, and I think it will be willful. No idea if Saris will double or treble, but your misconduct and complete discovery stonewalling is not going to help. I got rich because people used to make me try cases. The great Carl Roth coined the phrase, "The worst enemy of a real trial lawyer is a defendant who can do math because those guys settle smart." You Bob, cannot do math.

*Id.*, Ex. 10, pp. 4-5.

On April 16, 2014, Mr. Shore sent another "Rule 408" email saying:

> You are wrong on literally everything. … Meng asked Dr. Ching to set up a meeting with me, and asked to mediate at that meeting. … This case will be fun to try in Boston. You will make a ton in fees, your side will lose many times what Epistar has offered, and I will go to the next case. … I have no idea what the relationship is between Dr. Ching and Epistar, but he asked me several times over weeks to try and help Epistar as part of my firm's Taiwan relationship for 15 years. … There is zero pressure on our side, money in the bank and a defendant who appears to BU as delusional about its exposure. … Its a perfect situation for me. BU will never accept a deal it thinks is less valuable than what early settlers paid who did not file BS Rule 11 motions and stonewall discovery. You don't get a better deal for being an [fill in expletive of choice].

*Id.*, Ex. 11.  This appears to be Mr. Shore's second attempt to interfere in Defendants' attorney-client relationship, this time by arranging to meet directly with Epistar personnel through a third-party intermediary named Dr. Ching.

On April 29, 2014, Mr. Shore sent another "Rule 408" email saying:

> The Rule 11 Motion was a horrific mistake that is about to come back to bite Epistar and its lawyers – do not bother to argue that Epistar did not deny to the Court that it made the LED in the LEDLight.com bulb. The more you make that argument, the more guilty you look. We all know that your client is in deep trouble when the Court finds out that Epistar made the part in the LEDLight.com bulb, that it was not sold exclusively to Bridgelux by Epistar, that it is not a unique part to Bridgelux and that it Epistar had the ability to obtain samples and verify its manufacture by Epistar before it filed the Rule 11 Motion and chose not to do so only to enable it to make a false/misleading argument. I can see very bad things happening to the party to filed such motion seeking the most draconian relief against a respected university. … Tell your client to make a deal before both of you end up on the wrong side of a very bad situation.

*Id.*, Ex. 12, pp. 2-3.  Later that day, Mr. Shore sent another email saying:

> Waiting for defense lawyers to finish making their fee goal to discuss settlement is a waste of time and money as a contingent fee lawyer.  If a case has to be tried, fine. But if it can settle, I want it to settle early so I can spend my time (unbilled) on other things. It is

6

not a sign of weakness, but common sense, something you seem not to understand. Your client's interest are aligned with mine in that if we can get a deal, get it before spending money on Finnegan churning the file. If not, get the case tried efficiently, again to keep Finnegan from wasting time and making money that belongs to either BU or Epistar. Your interests are clear.

*Id.*, Ex. 13.

On September 8, 2014, the Court rejected Plaintiff's arguments about Defendants filing a "fraudulent" motion, and warned Plaintiff's counsel as follows:

> BU has filed eight motions seeking sanctions in this case, many of which included serious charges against the Defendants and their counsel. Docket Nos. 307, 358, 400, 403, 502, 513, 521, and 645. The instant motion alleges particularly serious charges: "perpetrating multiple frauds upon this Court through the use of perjured testimony, false attorney arguments, and the intentional non-disclosure of material information." Docket No. 523 at 1. Except for one instance where the Court imposed sanctions much less severe than those sought by BU, see Docket No. 634, the Court has largely denied BU's requests for sanctions. Counsel are reminded that they should be cautious about making such serious accusations against opposing parties and counsel.

ECF No. 796, pp. 10-11.

The day after the Court's order, Mr. Shore sent more "Rule 408" emails trying again to drive a wedge between Defendants and their prior counsel, arguing that Epistar "keeps pumping money into the Finnegan spin machine hoping to hide damages evidence that just keeps leaking out around your stone wall of obstruction. I honestly feel sorry for Epistar. What you are doing to them was as predictable as it is obscene." *Id.*, Ex. 14, p. 3. Later that day, he wrote that:

> You see Epistar as cash cows to be milked, then slaughtered. … As for making money, what have you billed Epistar in this case to date? … Your strategy stinks, Bob, but you seem unable to smell your own mess so you just make more. …
>
> Your client hired the wrong lawyers, employed a disastrous strategy and will end up paying in fees and damages 10X what they could have settled for in Taiwan. Its not "sound and fury" Bob, it is a sad, pathetic story that Taiwanese companies have to suffer again and again because lawyers like you tell them to "Be tough (read: Pay me big fees)" and "Send a message (read: Pay me big fees)" and "Don't set a bad precedent (read: Pay me big fees)". Epistar, Lite-On and Everlight will figure it out after you have bled them dry.
>
> Your client needs a new law firm to give them an independent perspective because you obviously cannot or will not do it. You can't admit you were wrong, so you just compound the error like a blackjack player doubling down again and again. The house wins, Bob. BU is the house. The problem here is that you are gambling with somebody

7

else's money, and getting paid to do it. Its the sick reality of our legal system: Hourly fee lawyers get paid more to create conflict than to resolve it.

*Id.*, pp. 1-2.

On December 17, 2014, Mr. Shore wrote to Defendants' counsel that "Your summary judgment pleadings are meritless, vexatious and wasteful." *Id.*, Ex. 15. Later that day, he wrote:

> You are abusing Epistar. The MSJ's are literally funny in their ineptitude. I would laugh if I did not have to spend time and money responding to them. Meng told RP[X] a few days ago she regrets not paying them $4.6 million, but that she would be fired for recommending an RPX deal now at more money. So your client regrets following your advice, and feels trapped into a trial she does not want -- trapped by following Finnegan's self-serving advice. Show her THIS email. [Show] her chairman.

*See* Ex. 16. This was another attempt to threaten an Epistar employee with being fired if Epistar did not settle. The next day, Mr. Shore wrote "I do not know if Epistar is stubborn or foolishly following bad legal advice, but the first step to get out of a hole is to stop digging." *Id.*, Ex. 17.

On March 12, 2015, in another attempt to interfere in Defendants' attorney-client relationship, Mr. Shore sent an email addressed to Epistar employee, "Meng Kuo C/O Finnegan," arguing:

> Finnegan is just wasting its clients' money and making the case harder to settle. BU understands that Epistar is following Finnegan's advice in regards to settlement. We also understand that as the demands go up (as BU wins every major ruling in the case), it is difficult for you to explain to upper management why earlier settlement offers were not accepted. RPX told us that you were concerned about being fired if you settled now for more than the amount RPX wanted. That is not BU's problem. Epistar made a mistake based on bad legal advice. That happens sometimes. Blame Finnegan, not yourself. It will, however, be your fault if you do not get a settlement now that you have watched everything Finnegan has told you turn out to be wrong: IPR, claims construction, damages, MSJ's and the failures in discovery. Continuing to follow bad directions only gets you more lost. Lead yourself. Drop the bad guide.

*Id.*, Ex. 18. Later that month, he wrote to Defendants' counsel that "You have managed to get the point across that your client blindly follows bad advice." *Id.*, Ex. 19.

In May 2015, Mr. Shore sent numerous disparaging "Rule 408" emails, saying that:

- "You need to stop before this gets more embarrassing for you and your client." *Id.*, Ex. 20.

- "It is clear that you wasted your clients' money filing MSJ motions." *Id.*, Ex. 21.

8

- "You are delusional in your damages assessment, just as you were delusional about the IPR, the claims construction, the efforts to block discovery, the 4 summary motions you filed (and lost miserably at great expense) and literally everything else you have told your client. Pass this email and question on to MJ Wang: If your lawyers have been dead wrong (at huge expense) on every other issue and strategy in the case, why do you believe their advice on damages?" *Id.*, Ex. 22.

On May 22, 2015, Mr. Shore asked that "BU would appreciate an acknowledgement that you are communicating their settlement offers and your clients' response(s)," to again ensure that his disparagements and threats couched as "Rule 408" offers were sent directly to Defendants. *Id.*

On June 13, 2015, Mr. Shore tried again to interfere in the attorney-client relationship through another third-party intermediary named William Chiang, writing to him that:

> Finnegan Henderson has literally been wrong on every single promise they have made to Epistar in this case. Finnegan was wrong about the IPR proceedings, the claims construction, the discovery issues, the motion for summary judgment on damages, the motion for summary judgment on invalidity and the motion for summary judgement on infringement. Finnegan has massively wasted their clients' time and gotten fat on fees doing it. Why does Epistar continue to follow the instructions of a law firm that has been WRONG on everything while it bills millions of dollars to LOSE? Epistar cannot dig its way out of a hole. At some point, they need to fire Finnegan Henderson, pay BU and move forward.
>
> Once Friday, June 19, 2015 passes without a deal, BU will simply stop communicating on settlement. Finnegan will continue to bill Epistar millions, and their partners will get big bonuses based on losing this case but billing Epistar millions to lose. All of the money paid by Epistar to Finnegan has been wasted. I am sure Finnegan partners are congratulating themselves every time Epistar pays another bill. It is disgusting to me that Finnegan is making millions while Epistar and BU have to suffer through litigation.
>
> Please pass this email on to the Epistar, Lite-On and Everlight CEOs so they know that BU is not going to wait around for the Defendants to wake up and realize that they are being taken advantage of by their lawyers. BU can only be reasonable if they have a reasonable negotiating partner. The Defendants are listening to their lawyers without realizing that those lawyers only continue to make money if the case does not settle.

*Id.*, Ex. 23. Mr. Chiang forwarded this to Epistar employee, Meng-chun Kuo, as requested. *Id.*

Defendants ultimately retained new counsel, and Mr. Shore continued sending inappropriate emails. On August 14, 2015, Mr. Shore wrote that:

> Your clients again appear misguided by horrible legal advice based on the complete nonsense and out of context statements in your email. Everlight's prior trials have no relevance, and cherry picking out of date statements from year old orders is at best an indicator of your ignorance of the record as a whole. … I feel sorry for your clients as you take them over the cliff by the hour.

9

*Id.*, Ex. 24.  Later that day, he then inappropriately told Defendants' counsel to "put your malpractice carrier on notice now."  *Id.*, Ex. 25.

> On September 10, 2015, Mr. Shore wrote that:
>
> [I]t is clear you have no idea the hole you are sitting in dug by Finnegan. … I have no idea how you think you will escape, and perhaps you don't care so long as you get paid, but your clients deserve better. Get them to pay the $16.5 million and they can hire you guys to sue Finnegan for malpractice. The longer you extend the case, the more the disaster coming is yours. … Your case is horrible. Move on.

*Id.*, Ex. 26.  On October 17, 2015, Mr. Shore renewed his inappropriate accusations of malpractice by Defendants' current counsel, writing that:

> You have really put yourself in a bad position. You claimed that the license defense was always in play (which is false and you know it) … you have stated in open court that Epistar always intended a license defense based on the Bridgelux license, but YOUR FIRM admittedly failed to designate a witness or documents until I told you about that failure in a motion in limine and in open court. … That appears to me to be malpractice … That was not a Finnegan mistake. That was a Rich Vasquez mistake.

*Id.*, Ex. 27.

## II.  LEGAL STANDARDS

### A.  Contempt

The Court has inherent authority to punish a person for contempt.  *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987).  The Supreme Court has further explained that:

> [A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it. … In addition, it is firmly established that "[t]he power to punish for contempts is inherent in all courts." [] This power reaches both conduct before the court and that beyond the court's confines, for "[t]he underlying concern that gave rise to the contempt power was not ... merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial."

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (citations omitted).

### B.  Rules of Professional Conduct and Revocation of Admission *Pro Hac Vice*

Local Rule 83.6.1 provides that:

> The rules of professional conduct for attorneys appearing and practicing before this court shall be the Massachusetts Rules of Professional Conduct adopted by the Massachusetts Supreme Judicial Court, as set forth as Rule 3:07 of that court … All attorneys who are

10

>admitted or authorized to practice before this court shall comply with its rules of professional conduct in all matters they handle before this court.

Local Rule 83.6.3 provides that an attorney may be disciplined for, among other things, "(1) violation of the rules of professional conduct of this court; (2) willful, recurrent, or egregious violation of these local rules or any order of the court … ."  Under Local Rule 83.6.4, the types of discipline after a finding of misconduct can include "(2) revocation of an admission *pro hac vice* or other admission for a limited purpose under Rule 83.5.3 … and (6) such other disciplinary action as may be reasonable under the circumstances."

The Massachusetts Rules of Professional Conduct require that "[a] lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others.  A lawyer should demonstrate respect for the legal system and for those who serve it, including … other lawyers … ."  Preamble: A Lawyer's Responsibilities at ¶ 3.  The Rules require that "[a] lawyer shall not: … knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."  Mass. Rules of Prof. Conduct, Rule 3.4 (Fairness to Opposing Party and Counsel).  The Rules require that "[i]n the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person … ."  Mass. Rules of Prof. Conduct, Rule 4.1 (Truthfulness in Statements to Others).  Lastly, the Rules state that:

>It is professional misconduct for a lawyer to:
>(a) violate or attempt to violate the Rules of Professional Conduct, …
>(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
>(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>(d) engage in conduct that is prejudicial to the administration of justice; …
>(h) engage in any other conduct that adversely reflects on his or her fitness to practice law.

Mass. Rules of Prof. Conduct, Rule 8.4 (Misconduct).

## III. ARGUMENT

### A. Mr. Shore Repeatedly Violated the Court's Order, Constituting Contempt.

The Court's most recent Order unequivocally prohibits Mr. Shore from sending "any more emails" to Defendants' counsel.[2] ECF No. 1598 (Tr. of Jury Trial – Day Eight) at 8-5:2-21. Contrary to Mr. Shore's claims that the Court's Order "ended with trial" and "expired with the trial" (*see* Steinberg Decl. Exs. 31, 34), the Order had no time limit. Significantly, this action continues within the Court's jurisdiction, with Mr. Shore continuing to appear *pro hac vice* before this Court – there is no basis for Mr. Shore to assert that the Court's Order "ended with trial." Mr. Shore has sent over a dozen emails to Defendants' counsel since the end of trial, including at least one threat to disparage Defendants' counsel if their clients did not settle for double the jury verdict, despite repeated reminders of the Court's Order from Defendants' counsel. Not only are Mr. Shore's actions in contempt of the Court's Orders, they are "willful, recurrent, [and] egregious violation[s]" of the Court's Orders, warranting discipline under Local Rule 83.6.3, including revocation of Mr. Shore admission *pro hac vice*.

### B. Mr. Shore Violated Multiple Provisions of the Massachusetts Rules of Professional Conduct.

The Massachusetts Rules of Professional Conduct prohibit lawyers from using the law's procedures "to harass or intimidate others," and require that they demonstrate respect for other lawyers. Preamble: A Lawyer's Responsibilities at ¶ 3. As the chronology above shows, Mr. Shore has repeatedly harassed and tried to intimidate Defendants and their counsel through baseless accusations, threats, and disparaging remarks. He has demonstrated a complete lack of respect for Defendants' prior and current counsel and the legal system.

---

[2] Plaintiff remains able to email "through Mr. Evans [or] Mr. Belt," who have demonstrated themselves to be capable of a greater level of civility in written communications with Defendants' counsel than Mr. Shore has demonstrated.

12

The Rules of Professional Conduct also prohibit lawyers practicing in this state from "knowingly disobey[ing] an obligation under the rules of a tribunal."  Mass. Rules of Prof. Conduct, Rule 3.4 (Fairness to Opposing Party and Counsel).  The Court clearly informed Mr. Shore that he should send "[n]o more e-mails, okay. … So the sanction is no more e-mails." ECF No. 1598 (Tr. of Jury Trial – Day Eight) at 8-5:12-21.  Yet he has knowingly and repeatedly disobeyed this Order continually since the end of trial.

The Rules of Professional Conduct also prohibit lawyers from engaging in conduct "involving dishonesty, fraud, deceit or misrepresentation," or "that is prejudicial to the administration of justice."  Mass. Rules of Prof. Conduct, Rule 8.4 (Misconduct).  As shown above, Mr. Shore has repeatedly tried to interfere in Defendants' attorney-client relationship in ways that are deceitful and prejudicial.  His emails couched as "Rule 408" settlement offers have falsely accused Defendants' counsel of fraud on numerous occasions, even after the Court warned him over a year ago to "be cautious about making such serious accusations against opposing parties and counsel."  ECF No. 796, pp. 10-11.  Mr. Shore's emails accused Defendants' prior counsel of being "greedy for fees," "churning the file," "wasting time and making money that belongs to either BU or Epistar," "see[ing] Epistar as cash cows to be milked, then slaughtered," "abusing Epistar," "wasting its clients' money," and having "massively wasted their clients' time and gotten fat on fees doing it."  In these emails, some of which he sent to third-parties to forward to Defendants instead of going through Defendants' counsel, Mr. Shore accused Defendants' current and prior counsel of malpractice and repeatedly urged Defendants to fire their lawyers and negotiate directly with him.  This conduct has been prejudicial to Defendants and to the administration of justice in this case, and also violates the

prohibition against "any other conduct that adversely reflects on his or her fitness to practice law." *See* Mass. Rules of Prof. Conduct, Rule 8.4(h).

Mr. Shore's numerous violations of the Rules of Professional Conduct warrant discipline under Local Rule 83.6.3, including revocation of his admission *pro hac vice* under Local Rule 83.6.4.

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and issue an Order:

a) permanently enjoining Mr. Shore from sending any further emails to Defendants' counsel in this or any other case related to the patent-in-suit and from further disparaging and/or threatening Defendants or their counsel in any way; and

b) revoking Mr. Shore's *pro hac vice* admission to this Court, or alternatively instituting a formal disciplinary proceeding against Mr. Shore for his repeated violations of the Court's Orders and of the Massachusetts Rules of Professional Conduct.


Dated:  January 13, 2016                         Respectfully submitted,

/s/ Richard C. Vasquez
Richard C. Vasquez (*pro hac vice*)
CA State Bar No. 127228
**VASQUEZ BENISEK & LINDGREN LLP**
3685 Mt. Diablo Boulevard, Suite 300
Lafayette, CA  94549
925-627-4250-Phone
925-403-0900-Fax
Email:  rvasquez@vbllaw.com

Susan G. L. Glovsky (BBO# 195880)
Hamilton Brook Smith Reynolds
155 Seaport Blvd.
Boston, MA 02210
Susan.Glovsky@hbsr.com
Tel: (617)-607-5995

Fax: (978) 341-0136
susan.glovsky@hbsr.com

*Counsel for Defendants Epistar Corp., Everlight Elecs. Co., Ltd., Everlight Americas, Inc., Lite-On, Inc., Lite-On Serv. USA, Inc., Lite-On Tech. Corp.*

### CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(2), I hereby certify that we attempted in good faith to resolve the issue raised by this Motion. Specifically, after receiving numerous emails from Mr. Shore after trial, on December 14, 2015, I reminded him that "you have been ordered not to email the defendants." He responded that "The 'no email' instruction ended with trial. You will deal with me, and no one else. If you would like to raise the email issue with the Court, feel free to do so." After Mr. Shore emailed me again that evening, I wrote "Don't send me any more emails." He responded "As long as you are counsel of record, I will email and call to represent BU. You can choose to be churlish and unprofessional in responding, but you will not dictate which BU counsel communicates with you as Defendants' lead counsel." After Mr. Shore sent more emails, my colleague, Eric Benisek, wrote to him that "This is a friendly reminder that you're under a court order not to email opposing counsel and that you should leave that to Chris and/or Erik. We would rather not seek enforcement of the Court's order for a second time." Mr. Shore responded "That order expired with the trial."

/s/Richard C. Vasquez
Richard C. Vasquez

### CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2016, the foregoing **DEFENDANTS' SECOND MOTION FOR FINDING OF CONTEMPT BY PLAINTIFF'S LEAD COUNSEL** and accompanying documents were electronically filed using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/Richard C. Vasquez
Richard C. Vasquez