**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ──────────────────────────── ) | |
| TRUSTEES OF BOSTON UNIVERSITY, ) | |
|      Plaintiff, ) | |
| ) | Consolidated Civil Action No. |
|     v. ) | 12-11935-PBS |
| ) | |
| EVERLIGHT ELECTRONICS CO., LTD.,) | |
| et al., ) | |
|     Defendants. ) | |
| ──────────────────────────── ) | |
| ) | |
| TRUSTEES OF BOSTON UNIVERSITY, ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 12-12326-PBS |
|     v. ) | |
| ) | |
| EPISTAR CORPORATION, et al., ) | |
|     Defendants. ) | |
| ──────────────────────────── ) | |
| ) | |
| TRUSTEES OF BOSTON UNIVERSITY, ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 12-12330-PBS |
|     v. ) | |
| ) | |
| LITE-ON INC., et al., ) | |
|     Defendants. ) | |
| ──────────────────────────── ) | |

**MEMORANDUM AND ORDER**

July 22, 2016

Saris, C.J.

**INTRODUCTION**

The plaintiff, Trustees of Boston University (BU), seeks an

award of enhanced damages pursuant to 35 U.S.C. § 284 on the

ground that the defendants, Epistar and Everlight, willfully

1

infringed the '738 Patent. At trial, the jury found that both defendants willfully infringed the patent.[1] The Court instructed the jury: "To prove willfulness, Boston University must persuade you by clear and convincing evidence . . . that the defendant actually knew, or it was so obvious that the defendant should have known, that its actions constituted an unjustifiably high likelihood of infringement of a valid patent." Trial Tr. vol. 10, Docket No. 1600 at 28-29. This instruction was based on the subjective willfulness prong of In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). BU argues that the jury's willfulness finding is binding on the Court, that enhanced damages are required, and that the Court's discretion lies only in deciding what amount of enhanced damages to award. The defendants respond that, because Halo Electronics, Inc. v. Pulse Electronics, Inc., 136 S. Ct. 1923 (2016), completely rejected the Seagate test, the Court should accord no weight to the jury's finding of willful infringement because it was based on the wrong standard.

After a hearing and a review of the record, the Court, in the exercise of its discretion, declines to award enhanced damages because the plaintiff has not demonstrated that the

---

[1] Verdict Form, Docket No. 1589 at 3.

defendants' actions constitute egregious misconduct. Therefore, BU's motion for enhanced damages (Docket No. 1632) is **DENIED**.

## DISCUSSION

After a finding of infringement, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. The Federal Circuit employs a two-step process to determine whether enhanced damages are warranted:

> First, the fact-finder must determine if an accused infringer is guilty of conduct, such as willfulness, upon which increased damages may be based. If so, the court then exercises its discretion to determine if the damages should be increased given the totality of the circumstances.

Mentor H/S, Inc. v. Med. Device Alliance, Inc., 244 F.3d 1365, 1380 (Fed. Cir. 2001) (internal citations omitted).

Until the Supreme Court's recent decision in Halo, courts evaluated willfulness under a two-part test with an objective and a subjective inquiry. See Seagate, 497 F.3d at 1371. Under the Seagate standard, to satisfy the objective prong, a patentee had to prove "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." Id. "The state of mind of the accused infringer [was] not relevant to this objective inquiry." Id. This objective prong tended not to be met where an accused infringer relied on a reasonable defense to a charge of infringement. Spine Solutions, Inc. v. Medtronic

Sofamor Danek USA, Inc., 620 F.3d 1305, 1319 (Fed. Cir. 2010).
If the objective prong was satisfied, the patentee then had to
"demonstrate that this objectively-defined risk (determined by
the record developed in the infringement proceeding) was either
known or so obvious that it should have been known to the
accused infringer." Seagate, 497 F.3d at 1371.

Halo reflects a sea change with respect to Seagate. In
Halo, a defendant had intentionally copied the patentee's
products and chosen the "high-risk/high-reward" strategy of
competing now and worrying about the legal consequences later.
136 S. Ct. at 1931. The Federal Circuit reversed the district
court's award of treble damages because the defendant raised
reasonable defenses at trial. Id. Reversing the Federal Circuit,
the Supreme Court held: "Awards of enhanced damages under the
Patent Act over the past 180 years establish that they are not
to be meted out in a typical infringement case, but are instead
designed as a 'punitive' or 'vindictive' sanction for egregious
infringement behavior." Id. at 1931-32. Enhanced damages are
"generally appropriate under § 284 only in egregious cases" of
culpable behavior. Id. at 1932. The Court concluded that the
Seagate test "is unduly rigid, and it impermissibly encumbers
the statutory grant of discretion to district courts." Id.
(quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134
S. Ct. 1749, 1755 (2014)). Requiring "a finding of objective

4

recklessness in every case before district courts may award
enhanced damages . . . excludes from discretionary punishment
many of the most culpable offenders, such as the wanton and
malicious pirate who intentionally infringes another's patent."
Id. (internal quotation marks omitted).

The Court eliminated the ability of an infringer to avoid
enhanced damages by relying on an objectively reasonable defense
that was created by his "attorney's ingenuity" solely for
litigation, and was not relied upon by the infringer at the time
of infringement. See id. at 1933. Instead, "culpability is
generally measured against the knowledge of the actor at the
time of the challenged conduct." Id. The Court also rejected
Seagate's requirement that willfulness be proven by clear and
convincing evidence. Id. at 1934 (stating that § 284 "imposes no
specific evidentiary burden, much less such a high one").
Finally, the Supreme Court was clear that § 284 "commits the
determination whether enhanced damages are appropriate to the
discretion of the district court," finding that the language of
§ 284 "clearly connotes discretion". Id. at 1931, 1934 (internal
quotation marks omitted).

Justice Breyer's concurrence also provides helpful
guidance. "First, the Court's references to 'willful misconduct'
do not mean that a court may award enhanced damages simply
because the evidence shows that the infringer knew about the

patent <u>and nothing more</u>." <u>Id.</u> at 1936 (Breyer, J., concurring)
(emphasis in original). Justice Breyer noted that "while the
Court explains that 'intentional or knowing' infringement 'may'
warrant a punitive sanction, the word it uses is <u>may</u>, not <u>must</u>."
<u>Id.</u> (emphasis in original). "It is circumstance that transforms
simple knowledge into such egregious behavior, and that makes
all the difference." <u>Id.</u> (internal quotation marks and
alterations omitted).

In addition to arguments addressed to the <u>Halo</u>
egregiousness standard, both parties rely heavily on the factors
listed in <u>Read Corp. v. Portec, Inc.</u>, 970 F.2d 816, 827 (Fed.
Cir. 1992). One court has relied on these factors post-<u>Halo</u> as
"useful guideposts in determining the egregious [sic] of the
defendant's conduct." <u>Finjan, Inc. v. Blue Coat Sys., Inc.</u>, No.
13-CV-03999-BLF, 2016 WL 3880774, at *16 (N.D. Cal. July 18,
2016). While the <u>Read</u> factors remain helpful to this Court's
analysis, the touchstone for awarding enhanced damages after
<u>Halo</u> is egregiousness.

The defendants highlight the actions they undertook when
Cree first accused Everlight of infringement in 2007. Everlight
informed Epistar, its chip supplier, of Cree's allegations, and,
in response, Epistar hired two law firms to provide infringement
opinions and obtained third-party testing of its accused
products. Epistar determined that its chips did not infringe the

6

'738 Patent for two reasons: (1) its chip's buffer layer was composed of aluminum nitride, not gallium nitride; and (2) its buffer layer was single crystalline, not non-single crystalline as claimed in the '738 Patent. Epistar provided this analysis to Everlight, and, in January 2008, Everlight presented this non-infringement position to Cree along with samples of Epistar chips for further testing. After the January 2008 meeting, Cree and Everlight reached a business solution, whereby Everlight agreed to buy more Cree chips. From January 2008 to the filing of the present suit, Cree did not take any action against Everlight for its infringement.

BU claims that Epistar intentionally attempted to conceal its infringement by instructing its lawyers only to analyze the first aluminum nitride layer and not the gallium nitride layers above it. However, in 2007, without the benefit of a formal claims construction order by any court, Epistar understood the buffer layer to be the first layer directly above the sapphire substrate. Meng Kuo, the director of Epistar's intellectual property division, testified that this understanding was the "industry practice" for identifying the buffer layer. Laches Tr. vol. 1, Docket No. 1681 at 154. Because this layer was aluminum nitride, Kuo believed that Epistar's chips did not infringe the '738 Patent. The Court credits this explanation. See Trs. of Boston Univ. v. Everlight Elecs. Co., No. 1:12-cv-11935-PBS,

7

2016 WL 1676543, at *2 (D. Mass. Apr. 26, 2016). Further, Everlight provided Cree with samples of the accused products. Providing an accuser with the means to determine infringement, in the form of product samples, is not an action to conceal infringement.

BU contends that the defendants could not have maintained their position regarding the chip's aluminum nitride buffer layer in good faith after the claims construction order in the Cree/BridgeLux litigation. The August 2008 claims construction order construed the term "on" to mean "positioned indirectly or directly above." BridgeLux, Inc. v. Cree, Inc., No. C 06-6495 PJH, 2008 WL 3843072, at *12 (N.D. Cal. Aug. 15, 2008). Kuo testified that she never read this claims construction order even though she was aware of the litigation and that, once she heard from BridgeLux that the case had settled, she did not investigate further. Regardless of Kuo's personal knowledge, it is unlikely that Epistar, or its lawyers, were unaware of the claims construction order in BridgeLux, which casts doubt on Epistar's understanding of where its chip's buffer layer was located. However, the defendants were not bound to accept a claims construction in litigation that they did not participate in. While BridgeLux put the defendants on notice that they may be infringing, that notice alone does not make the infringement egregious, especially since the defendants' noninfringement

position with respect to the single crystalline nature of their chip's buffer layer, a position they maintained through trial, persisted after the BridgeLux claims construction order. The defendants point out that Cree did not reinitiate negotiations with Everlight after the August 2008 claims construction order.

Finally, BU argues that the jury's verdict is binding on the Court with respect to the defendants' subjective willfulness and, thus, warrants an award of enhanced damages. The Federal Circuit recently held: "We do not interpret Halo as changing the established law that the factual components of the willfulness question should be resolved by the jury." WBIP, LLC, v. Kohler Co., No. 2015-1038, 2016 WL 3902668, at *15 (Fed. Cir. July 19, 2016). However the court noted that "this is not to say that a jury verdict of willful infringement ought to result in enhanced damages." Id. at *15 n.13. "The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages . . . ." Halo, 136 S. Ct. at 1933 (emphasis added). Assuming without deciding that the jury's verdict, based on the subjective prong of the now-overruled Seagate test, is sufficient to find subjective willfulness, the Court still finds, in its discretion, that the defendants' conduct did not rise to the level of egregiousness meriting an award of enhanced damages.

Unlike the defendants in Halo, the Court finds that the defendants did not deliberately copy the '738 Patent, did not try to conceal the chips found to be infringing, did reasonably investigate the scope of the patent, and did form a good faith belief that their products did not infringe based on their view of the proper claim construction and crystallinity of their buffer layer.

BU also relies heavily on alleged examples of the defendants' litigation misconduct to support its argument for enhanced damages. While litigation misconduct may be relevant to a determination of enhanced damages, "enhanced damages may not 'serve to compensate patentees' for infringement-related costs or litigation expenses." Halo, 136 S. Ct. at 1929, 1937; see also Spectralytics, Inc. v. Cordis Corp., 649 F.3d 1336, 1349 (Fed. Cir. 2011) (finding "attorney misconduct or other aggravation of the litigation process may weigh heavily with respect to attorney fees, but not for enhancement of damages"). The Court will separately address BU's allegations regarding litigation misconduct and its request for attorneys' fees under 35 U.S.C. § 285.

This Court finds that BU has not proven by a preponderance of evidence that the defendants engaged in the type of egregious conduct necessary for an award of enhanced damages pursuant to § 284 under the standard articulated in Halo.

## ORDER

BU's motion for enhanced damages (Docket No. 1632) is

**DENIED**.


                                        /s/PATTI B. SARIS
                                        Patti B. Saris
                                        Chief United States District Judge