**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TRUSTEES OF BOSTON UNIVERSITY, ) <br>         Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> EVERLIGHT ELECTRONICS CO., LTD.,) <br> et al., ) <br>         Defendants. ) <br> ) | Consolidated Civil Action No. 12-cv-11935-PBS |
| TRUSTEES OF BOSTON UNIVERSITY, ) <br>         Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> EPISTAR CORPORATION, et al., ) <br>         Defendants. ) <br> ) | Civil Action No. 12-cv-12326-PBS |
| TRUSTEES OF BOSTON UNIVERSITY, ) <br>         Plaintiff, ) <br> ) <br>       v. ) <br> ) <br> LITE-ON INC., et al., ) <br>         Defendants. ) | Civil Action No. 12-cv-12330-PBS |

**MEMORANDUM AND ORDER**

July 22, 2016

Saris, C.J.

**INTRODUCTION**

In November 2015, a jury found that Defendants Epistar, Everlight, and Lite-On infringed U.S. Patent No. 5,686,738 and awarded Plaintiff Trustees of Boston University (BU) $13,665,000

1

in damages. BU now moves for an award of attorneys' fees, expert
witness fees, and costs. In total, BU seeks more than $11
million: $9,359,276 in attorneys' fees, $1,188,220 in expert
fees, and $1,084,058 in costs. BU offers two primary bases for
its proposed award: that Epistar and Everlight willfully
infringed the '738 patent, and that all three defendants engaged
in litigation misconduct. Defendants reject BU's contention that
their litigation positions were factually and legally
unsupported, argue that the case was reasonably litigated, and
assert that BU's own litigation misconduct precludes a fee award
in BU's favor. After hearing, the Court **ALLOWS** in part and
**DENIES** in part BU's motion for fees and costs (Docket No. 1732).

## DISCUSSION

## I.   Attorneys' Fees

### A. Legal Standard

Under 35 U.S.C. § 285, the court "in exceptional cases may
award reasonable attorney fees to the prevailing party." An
exceptional case is "simply one that stands out from others with
respect to the substantive strength of a party's litigating
position (considering both the governing law and the facts of
the case) or the unreasonable manner in which the case was
litigated." Octane Fitness LLC v. ICON Health & Fitness, Inc.,
134 S. Ct. 1749, 1756 (2014). "Section 285 demands a simple
discretionary inquiry; it imposes no specific evidentiary

burden, much less a high one." Id. at 1758; see also Highmark
Inc. v. Allcare Health Mgmt. Sys., Inc., 134 S. Ct. 1744, 1748
(2014) ("[T]he determination whether a case is 'exceptional'
under § 285 is a matter of discretion.").

"There is no precise rule or formula for making these
determinations." Octane Fitness, 134 S. Ct. at 1756 (internal
citation and alteration omitted). However, factors supporting a
finding of exceptionality include "frivolousness, motivation,
objective unreasonableness (both in the factual and legal
components of the case) and the need in particular circumstances
to advance considerations of compensation and deterrence." Id.
at 1756 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534
n.19 (1994)). "[A] case presenting either subjective bad faith
or exceptionally meritless claims may sufficiently set itself
apart from mine-run cases to warrant a fee award." Id. at 1757.

"Litigation misconduct and unprofessional behavior may
suffice, by themselves, to make a case exceptional under § 285."
Rambus Inc. v. Infineon Techs. AG, 318 F.3d 1081, 1106 (Fed.
Cir. 2003). "In cases deemed exceptional only on the basis of
litigation misconduct, however, the amount of the award must
bear some relation to the extent of the misconduct." Id. An
award of "attorney fees under section 285 should be tailored by
a court to the situation before it." Power Mosfet Techs., LLC v.
Siemens AG, 378 F.3d 1396, 1415 (Fed. Cir. 2004). "[T]he award

of the total amount of a fee request is unusual." Takeda Chem.
Indus., Ltd. v. Mylan Labs., Inc., 549 F.3d 1381, 1390 (Fed.
Cir. 2008).

"[A] finding of willful infringement does not require a
finding that a case is exceptional," though "the willfulness of
the infringement by the accused infringer may be a sufficient
basis in a particular case for finding the case 'exceptional'
for purposes of awarding attorney fees." Golight, Inc. v. Wal-
Mart Stores, Inc., 355 F.3d 1327, 1340 (Fed. Cir. 2004)
(internal citations and quotation marks omitted); see also
Veracode, Inc. v. Appthority, Inc., 137 F. Supp. 3d 17, 99 n.56
(D. Mass. 2015) ("The majority of the case law after Octane
Fitness . . . makes clear that a totality test still governs,
and that willfulness is a relevant but not dispositive
consideration."). "Although an attorney fee award is not
mandatory when willful infringement has been found, precedent
establishes that the court should explain its decision not to
award attorney fees." Spectralytics, Inc. v. Cordis Corp., 649
F.3d 1336, 1349 (Fed. Cir. 2011).

**B. Analysis**

BU argues that it is entitled to attorneys' fees under 35
U.S.C. § 285 because Everlight and Epistar willfully infringed
the '738 patent, and because the defendants engaged in vexatious
litigation tactics and discovery misconduct. Defendants concede

that Everlight provided BU with incomplete or inaccurate sales
data and ask the Court to limit any fee award to those fees
incurred as a result of this misconduct. Defendants assert that
there is otherwise no evidence that they litigated the case
unreasonably. Defendants also counter that their legal arguments
had merit, that BU failed to meet its burden to show that its
fees are reasonable, and that BU engaged in its own litigation
misconduct. Defendant Lite-On additionally argues that it should
not be considered for an award of fees and costs because it was
a prevailing party under Federal Rule of Civil Procedure 68 and
because the plaintiff did not contend that Lite-On willfully
infringed the '738 patent.

First, most of the defendants' litigation positions had
merit. In determining whether a case is exceptional under § 285,
the court must examine the "'substantive strength of the party's
litigating position,'" "not the correctness or eventual success
of [that] position." SFA Sys., LLC v. Newegg, Inc., 793 F.3d
1344, 1348 (Fed. Cir. 2015) (emphasis in original) (quoting
Octane Fitness, 134 S. Ct. at 1756). "A party's position on
issues of law ultimately need not be correct for them
to . . . be found reasonable." Id.

Factual and legal support existed for both parties'
positions on the central issues of this litigation. On
infringement, the Court denied both parties' motions for summary

judgment. Trs. of Boston Univ. v. Everlight Elecs. Co., 105 F.

Supp. 3d 116 (D. Mass. 2015). In denying the defendants' motion

for judgment as a matter of law on the issue of invalidity, the

Court noted that both parties presented strong arguments in

support of their respective positions as to whether the patent

was adequately enabled, particularly with respect to the

amorphous buffer layer. On damages, defendants reasonably

opposed a damages award on the plaintiff's design-win theory.[1] As

well, the defendants ultimately prevailed on their post-trial

argument that the evidence does not support the lump-sum damages

awards against Epistar and Everlight. For the most part, the

defendants' contentions were not patently unsupportable so as to

justify a full award of attorneys' fees.

Second, the defendants' litigation conduct—with two

critical exceptions discussed below—was not unreasonable. While

counsel on both sides were aggressive and at times uncivil, that

is unfortunately true in many patent cases. Here, both sides

tangoed. Considering the totality of the circumstances, the

Court cannot assign blame for this contentiousness to one side.

For these reasons, as well as those outlined in the Court's

order denying BU's request for enhanced damages, the Court finds

that the jury's finding of subjective willfulness with respect

_____

[1] The Court deferred deciding whether this theory was viable. The
issue became moot when BU sought and obtained a lump-sum award.

to Epistar and Everlight[2] does not make this an "exceptional case" so as to warrant a complete award of attorneys' fees.

However, during two phases of this case, the defendants did engage in litigation misconduct that supports a partial award of attorneys' fees to BU: (1) Everlight's ever-changing explanation of the sales data that it provided BU and (2) the October 2014 trip to Taiwan to review the defendants' sales data.

First, BU is entitled to attorneys' fees incurred as a direct result of Everlight's shifting litigation positions regarding the contents of the sales data that it provided to BU.[3] In April 2014, Everlight produced several sales data spreadsheets to BU. Defendants concede that prior counsel for Everlight "inexplicably suggested to BU's counsel that the sales data only included packages containing GaN LEDs." Docket No. 1741 at 18. For two years, BU relied on this representation. BU's damages expert, Mr. Alan Ratliff, formulated his expert report on the basis of Everlight's description of this data. Just six weeks before trial, on October 5, 2015, Everlight's expert stated that BU had erred in defining the royalty base. In his report, Dr. Russell W. Mangum III explained that Mr. Ratliff's calculations "include[d] numerous products which I

---

[2] BU did not argue that Lite-On willfully infringed the '738 patent.
[3] BU's brief accurately portrays the litigation history on this point. See Docket No. 1733.

understand are not accused of infringing the '738 Patent."
Docket No. 1426, Ex. 3 at 29. He then provided his own revised
estimates, noting that "the effect of eliminating non-accused
products is substantial." Id.

Everlight's change in position was costly, both for BU and
the Court. Nine additional briefs were filed, and BU was forced
to revisit its royalty base calculations during the final weeks
of trial preparation. The issue also caused significant
confusion at trial.

Worse still, Everlight's explanation for the dramatic
about-face repeatedly changed. Everlight now refers to the
episode as a mistake resulting in the "over-identification of
GaN LED products" and Everlight "overstating its GaN sales
figures." Docket No. 1741 at 5, 23. But, in October 2015,
Everlight claimed that the error was of BU's making, asserting
that BU had used its access to Everlight's SAP system to falsely
include non-GaN products in its royalty base: "BU used its own
derivation of the data, not the produced documents it possessed
since August 2014." Docket No. 1456 at 8. Everlight then accused
BU of using this false information to its benefit, arguing that
"BU had the ability and the motivation" to check Mr. Ratliff's
figures against Everlight's SAP database, but BU "chose not to,
for the obvious inference that it preferred a higher damages
number over an accurate one." Id. Everlight changed course again

at trial when it suggested that its original spreadsheets had

properly included both GaN and non-GaN products because BU's

infringement contentions included both. Confusion over the sales

data, Everlight then claimed, was not because BU augmented the

spreadsheets Everlight provided with additional non-GaN product

data, but because Everlight had produced a spreadsheet

responsive to BU's overly broad infringement contentions. Unable

to definitively resolve whether the data that Everlight produced

in April 2014—and upon which Mr. Ratliff relied—included only

GaN products or both GaN and non-GaN products, the Court gave

the jury an adverse inference instruction.[4] I find that Everlight

acted negligently in the production of inaccurate sales data

which likely overstated Everlight's damages, that its former

counsel negligently represented the content of the sales data,

and that Everlight acted in bad faith when it tried to place the

---

[4] "I instruct you that Everlight's prior lawyers misidentified
the nature of the sales evidence regarding the royalty base that
Everlight relied on at trial. This misidentification may have
compromised Boston University's ability to test the truth and
accuracy of Everlight's damages evidence at trial. Any confusion
that you may have on the issue of damages due to Everlight's
misidentification should be decided in favor of Boston
University. Any confusion or difficulties caused by Everlight's
misidentification should be held against Everlight, not Boston
University, and not Epistar or Lite-On. However, it is up to you
to determine whether Boston University has proven the amount of
the royalty base for Everlight." Trial Tr. vol. 10, Docket No.
1600 at 43-44.

blame on BU. This last-minute confusion prejudiced BU in the presentation of the damages case.

For this reason, the Court orders Everlight to pay BU its attorneys' fees directly attributable to the misrepresentation surrounding the sales data that Everlight originally described as including only GaN products.[5]

Second, BU is entitled to attorneys' fees incurred in preparation for and during its October 2014 trip to Taiwan to inspect sales documents. For nearly a year, the parties squabbled over the extent and means of production of relevant sales data. In July 2014, BU and Epistar appeared to reach an agreement on the production of purchase order data relating to the accused products. Soon after, Epistar informed BU that it could only inspect the documents at its facilities in Taiwan. In response, BU offered to cover the costs of shipping the documents from Taiwan to the United States. Epistar refused.

---

[5] At hearing, BU informed the Court that it could tabulate this subset of attorneys' fees. Post-Trial Hearing Tr., Docket No. 1756 at 131-32. BU is instructed to do so. While the defendants contest the aggregate amount of attorneys' fees that BU seeks as being unreasonable, see Docket No. 1741 at 18-21, Everlight's counsel confirmed at hearing that Everlight would not challenge BU's hourly rate if the Court ordered a narrower fee award. Docket No. 1756 at 145. The attorneys' fee award includes all briefing, discovery, and expert preparation with respect to Everlight's sales base. It does not include briefing on other damages issues, like design-win and the entire market value rule. Be reasonable so the Court does not have a second round of litigation on attorneys' fees.

Epistar countered that BU could instead pay for the documents to be scanned. BU objected to doing so. On September 30, 2014, Magistrate Judge Boal expressed concern with Epistar's obstinacy, noting that during "the course of discovery in this case, Epistar inappropriately attempted to shift to BU its obligations to search for and review documents for responsiveness and confidentiality," and reminding "Epistar that it has an obligation to review and identify documents which are responsive to BU's requests." Docket No. 832 at 4 n.3.

Ultimately, BU had to repeatedly travel to Taiwan to obtain access to the sales data. In its October 2014 trip, BU visited Taiwan to review the pertinent documents onsite at Epistar's facilities. However, Epistar "did not review any of the documents prior to making them available to BU." Docket No. 911 at 3-4. Magistrate Judge Boal again noted that the Court was "left with the impression that Epistar has been dragging its heels in the course of discovery" and "continues to attempt to shift to BU its own discovery obligations." Id. at 5. Magistrate Judge Boal ordered Epistar to reimburse BU for its travel expenses for the unproductive trip to Taiwan.[6]

---

[6] In exchange for access to the defendants' SAP systems, BU agreed to forego its right to this discovery sanction.

Accordingly, the Court orders Epistar to pay BU attorneys'
fees incurred in preparation for and during BU's October 2014
trip to Taiwan.

## II.   Expert Fees

### A. Legal Standard

"Section 285 does not include shifting of expert
fees . . . ." Amsted Indus. Inc. v. Buckeye Steel Castings Co.,
23 F.3d 374, 379 (Fed. Cir. 1994). A district court may,
however, "invoke its inherent power to impose sanctions in the
form of reasonable expert fees in excess of what is provided for
by statute." Takeda Chem. Indus., 549 F.3d at 1391. "The use of
this inherent power is reserved for cases with 'a finding of
fraud or abuse of the judicial process.'" Id. (quoting Amsted
Indus., 23 F.3d at 378). A finding of fraud, however, is not
required, as "courts may use sanctions in cases involving bad
faith that cannot be otherwise reached by rules or statutes."
Id.; see also iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1380
(Fed. Cir. 2011) (stating that "a court can invoke its inherent
power to award such fees in exceptional cases based upon a
finding of bad faith").

### B. Analysis

The Court orders Everlight to pay BU those expert fees
incurred as a result of the misrepresentation regarding the
sales data that Everlight produced in April 2014. As the

12

foregoing discussion demonstrates, Everlight acted in bad faith, particularly in its repeated attempts to pin the blame on BU's expert. When it finally identified the issue, Everlight blamed BU—without basis—for adding non-GaN products to Everlight's original spreadsheet and for making overly broad infringement contentions that included GaN and non-GaN products.

Because the Court's award of attorneys' fees does not compensate BU for the additional resources expended by Mr. Ratliff in the weeks following Everlight's change in position, the Court finds that an award of expert fees is warranted. See MarcTec, 664 F.3d at 921-22 (upholding expert fee award where "vexatious conduct and bad faith increased the cost of litigation in ways that are not compensated under § 285").

## III. Costs

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. The defendants do not oppose BU's request for costs. The Court orders all three defendants, jointly and severally, to pay costs accrued prior to Lite-On's Rule 68 offer on July 23, 2015. The Court orders Epistar and Everlight, jointly and severally, to pay all subsequent costs incurred by BU. The parties shall meet and

13

confer to agree on a bill of costs or narrow the areas of dispute. Again, be reasonable.

## ORDER

The plaintiff's motion for attorneys' and expert fees (Docket No. 1732) is **ALLOWED** in part and **DENIED** in part in accordance with the Court's memorandum. The plaintiff's motion for costs (Docket No. 1732) is **ALLOWED** in accordance with the Court's memorandum. After conferring with opposing counsel to narrow the areas of dispute, BU is ordered to submit an affidavit supporting its attorneys' and expert fees using the lodestar method with contemporaneous records of hours, hourly rate, and the subject matter of the work performed.[7]

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge

---

[7] The plaintiff's motion to strike (Docket No. 1742) is moot. Because the Court did not award BU all of its fees, the Court did not consider whether the claimed fees were reasonable. The Court had no occasion, therefore, to consider BU's offer to compromise in relation to whether the requested award was reasonable. For the same reasons, plaintiff's motion to compel the defendants' attorneys' fees (Docket No. 1723) is moot.