**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TRUSTEES OF BOSTON UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>EVERLIGHT ELECTRONICS CO., LTD.<br>and EVERLIGHT AMERICAS, INC.,<br><br>Defendants. | Consolidated Civil Action No.<br>12-cv-11935-PBS |
| TRUSTEES OF BOSTON UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>EPISTAR CORPORATION,<br><br>Defendant. | Consolidated Civil Action No.<br>12-cv-11935-PBS |
| TRUSTEES OF BOSTON UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>LITE-ON INC., ET AL,<br><br>Defendants. | Consolidated Civil Action No.<br>12-cv-11935-PBS |

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285**

## TABLE OF CONTENTS

**Title**                                                                 **Page**

I.      INTRODUCTION                                                          1

II.     FACTUAL BACKGROUND                                                    2
        A.  PLAINTIFF'S EXPERT MAKES A CRITICAL ADMISSION ON LACK            3
            OF ENABLEMENT.
        B.  PLAINTIFF FILES A SPECIOUS MOTION TO STRIKE                      4
            UNDISCLOSED INVALIDITY DEFENSES.
        C.  PLAINTIFF URGES USING THE WRONG ENABLEMENT                       6
            STANDARD IN THE JURY INSTRUCTIONS.
        D.  PLAINTIFF RAISES LEGALLY AND FACTUALLY MERITLESS                 7
            ENABLEMENT ARGUMENTS AT TRIAL.
        E.  PLAINTIFF REHASHES THE SAME FLAWED ENABLEMENT                    9
            ARGUMENTS DURING POST TRIAL MOTIONS.
        F.  THE FEDERAL CIRCUIT EXPOSES THE WEAKNESS IN                      10
            PLAINTIFF'S ARGUMENTS FOR ENABLEMENT.
        G.  PLAINTIFF'S ADDITIONAL LITIGATION MISCONDUCT.                    11

III.    LEGAL STANDARD                                                       13

IV.     ARGUMENT                                                             14
        A.  PLAINTIFF'S OBJECTIVELY UNREASONABLE ARGUMENTS                   14
            AGAINST LACK OF ENABLEMENT MAKE THIS CASE
            EXCEPTIONAL.
        B.  PLAINTIFF'S LITIGATION MISCONDUCT FURTHER MAKES THIS            18
            CASE EXCEPTIONAL.

                                                                            20
V.      CONCLUSION

## **TABLE OF AUTHORITIES**

### **Cases**                                                                          **Page**

*AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234 (Fed. Cir. 2003)                      3

*Application of Glass*, 492 F.2d 1228 (C.C.P.A. 1974)                                    8

*Auto. Techs. Int'l, Inc. v. BMW of N. Am. Inc., et al.*, 501 F.3d 1274 (Fed. Cir. 2003)    3

*Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330 (Fed. Cir. 2013)                6

*CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333 (Fed. Cir. 2003)                     6

*Datatern, Inc. v. MicroStrategy Inc.*, Civil Action No. 11-11970-FDS, 2018 WL 2694458    15
(D. Mass. June 5, 2018)

*Dominant Semiconductors Sdn. Bhd. V. OSRAM GmbH,* 524 F.3d 1254 (Fed. Cir. 2008)       15

*Ex Parte Commons*, No. 95-4674, 1995 WL 1747750 (Bd. Pat. App. & Interf. Jan. 1,        6
2009)

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*, No. 2017-2266, 2018 WL       14
3993299 (Fed. Cir. Aug. 20, 2018)

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371 (Fed. Cir. 2007)                  3, 6, 7

*Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479 (Fed. Cir. 2016)          14

*Metcalfe v. Hampel,* 532 F.2d 1360 (C.C.P.A. 1976)                                     6

*Mobile Media Ideas LLC v. Apple Inc.*, 780 F.3d 1159 (Fed. Cir. 2015)                  17

*Nat'l Recovery Techs. Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190 (Fed. Cir.    6, 10
1999)

*Sitrick v. Dreamworks, LLC*, 516 F.3d 993 (Fed. Cir. 2008)                             3

*Streck, Inc. v. Research & Diagnostic Sys.*, 665 F.3d 1269 (Fed. Cir. 2012)            6

### **Rules**

*Model ABA Rule DR 7-105*                                                               12

Defendants[1] respectfully move for an award of attorneys' fees incurred after September 11, 2015 pursuant to 35 U.S.C. § 285 based on a finding that this case is exceptional.

## I.   **INTRODUCTION**

On July 25, 2018, the Federal Circuit threw out Plaintiff's case against Defendants. The Federal Circuit found that as a matter of law, Defendants had established by clear and convincing evidence that the asserted claim 19 of the '738 patent was invalid for lack of enablement. As will be made clear by the record set forth below, Plaintiff knew early on that claim 19 was invalid yet pursued this case anyway all the way through jury trial, post-trial motions and eventually appeal. Had Plaintiff done its due diligence on the validity of '738 patent, it could never have brought this case in good faith in the first place.

Plaintiff's lack of good faith, or at a minimum its recklessness, makes this case "exceptional" under Section 285 and entitles Defendants to recovery of ALL their attorneys' fees and costs incurred defending the underlying case. Nonetheless, Defendants are only seeking their attorneys' fees and costs from September 11, 2015 and forward because that is the day Plaintiff's invalidity expert, Edwin Piner Ph.D., admitted that it was "impossible" to "epitaxially grow a monocrystalline film on an amorphous structure." At that moment, Plaintiff no longer had any objectively reasonable basis to continue prosecuting the case as its own expert had admitted under oath that one of embodiments of claim 19 was **impossible** to enable. The Federal Circuit found, in its short unanimous opinion, it could "safely conclude that the specification does not enable what the experts agree is physically impossible." Opinion of USCA for Federal Circuit ("Op. (ECF No. 1841)").

In light of the Federal Circuit's complete reversal, Epistar as the prevailing party petitions this Court for attorneys' fees and costs for Plaintiff's objectively unreasonable prosecution of the underlying case. Epistar argued early on in the litigation that claim 19 of the '738 patent was

[1] "Defendants" are collectively Epistar Corporation, Everlight Electronics, Ltd., Everlight Americas, Inc., Lite-On, Inc., Lite-On Service USA, Inc., Lite-On Trading USA, Inc., and Lite-On Technology Corporation. Because Epistar bore the burden of payment for all Defendants' attorneys' fees (as the seller of the accused semiconductor devices it owed customers Lite-On and Everlight defense duties), all references hereafter are to Epistar as the aggrieved party.

1

invalid for lack of enablement because the claimed device – a semiconductor with a monocrystalline growth layer grown directly on an amorphous buffer layer—was not possible under the laws of physics. Unsurprisingly, the Federal Circuit invalidated claim 19 on precisely this basis.  On September 11, 2015, Dr. Piner admitted in his rebuttal expert report on invalidity that it was not physically possible to make a device consisting of a monocrystalline growth layer grown directly on an amorphous buffer layer using epitaxy. Once Dr. Piner admitted this embodiment was not possible to create —it became undisputed that a person of ordinary skill in the art could not, without undue experimentation, enable the full scope of the claimed invention using the teachings of the '738 patent.  Faced with this clear unimpeachable argument for non-enablement, Plaintiff should have dismissed its case, as proceeding further was no longer objectively reasonable. However, as set forth in detail below, rather than abandon its frivolous case, Plaintiff's counsel doubled-down on its efforts to overcome lack of enablement by advancing frivolous legal arguments regarding the law on enablement and baseless procedural moves to try and prevent Defendants from asserting lack of enablement as a defense.

These unreasonable legal positions, taken together with Plaintiff's lengthy record of litigation misconduct, make this an exceptional case under Section 285 entitling Epistar to an award of attorneys' fees.

## II.   FACTUAL BACKGROUND

On November 11, 2014, Epistar moved for Summary Judgment of Invalidity, raising the eventual winning invalidity argument that the '738 Patent lacked enablement of a claimed device with a monocrystalline growth layer grown directly on an amorphous buffer layer. (ECF  No. 878); *see also* Mem. & Order (ECF  No. 1252) at 8 ("Defendants assert that the '738 patent fails to teach how a person skilled in the art would grow a single-crystalline growth layer directly on top of an amorphous buffer layer."). Epistar asserted that Plaintiff's expert did not dispute that it was impossible to create such a device. *See* Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J. of Invalidity (ECF No. 1028) at 3. Citing to the Federal Circuit's precedent in the *AK*

*Steel, Sitrick, Auto. Techs.*, and *Liebel-Flarshiem* cases,[2] Epistar argued that failing to enable the full scope of the claimed devices invalidated the asserted claims. At the hearing on this motion the Court engaged Plaintiff on this point and Plaintiff argued its expert testified that creating such a device was possible. Mot. Hr'g (ECF No. 1072) at 72:21-73:3 (Court: "[S]o let me just ask, is there any person of ordinary skill in the art who says, other than the inventor –" Mr. Evans: "Yes." Court: "—that you can grow a monocrystalline layer on top of, on, directly or indirectly, on an amorphous layer?" Mr. Evans: "The answer is yes….") The Court denied summary judgment on this invalidity argument because it believed factual disputes remained. *Id*. at 10 ("Factual disputes remain regarding whether the full scope of the '738 patent is sufficiently enabled.") Specifically, the Court noted that Plaintiff responded to Defendants' "impossibility" argument with Dr. Piner's testimony that he had made such a device.[3] *Id*. at 11.

### A.   PLAINTIFF'S EXPERT MAKES A CRITICAL ADMISSION ON LACK OF ENABLEMENT.

In Plaintiff's September 11, 2015 Expert Report of Edwin Piner, Ph.D. on Validity of U.S. Patent No. 5,686,738, Dr. Piner admitted that it was "a basic law of physics that it is not possible to epitaxially grow a monocrystalline film on an amorphous structure." Declaration of Jeffrey T. Lindgren in Supp. Defs.' Mot. for Attorneys' Fees Pursuant to 35 U.S.C. § 285, Exhibit A at 22; Trial Tr., Day 4 (ECF  No. 1594) at 4-137:2-13. This admission removed the Court's basis for denying summary judgment on the dispute of fact and precluded Plaintiff from contesting that a person of skill in the art could, without undue experimentation, follow the teachings of the specification of the '738 Patent to make the claimed device with a monocrystalline growth layer grown directly on an amorphous buffer layer. Now that it could no

---

[2] *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234 (Fed. Cir. 2003); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993 (Fed. Cir. 2008); *Auto. Techs. Int'l, Inc. v. BMW of N. Am. Inc., et al.*, 501 F.3d 1274 (Fed. Cir. 2003); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371 (Fed. Cir. 2007).

[3] "Had" was a blatantly misleading argument by Plaintiff's counsel, since the Piner testimony to which he referred was based on a patent filed in 2004, thirteen years AFTER the relevant date for determining enablement, which did not indicate it was based on or followed the '738 patent's teachings. Decl. of Edwin L. Piner, Ph.D.  (ECF No. 945-2) ¶ 37.

longer argue that all versions of the claimed invention were enabled, Plaintiff embarked on a series of false legal and misleading factual arguments to obfuscate and counter Epistar's straightforward, and case dispositive, non-enablement defense. Each of Plaintiff's spurious arguments and actions prolonged the case unnecessarily.

**B.     PLAINTIFF FILES A SPECIOUS MOTION TO STRIKE UNDISCLOSED INVALIDITY DEFENSES.**

First, Plaintiff filed a motion to strike Epistar's defense that the '738 Patent did not enable the claimed device with a monocrystalline growth layer grown directly on an amorphous buffer layer. Plaintiff asserted two frivolous grounds: (1) the defense had not previously been raised in the litigation and (2) it required a construction of the term "growth layer" to be a "monocrystalline layer" that was neither correct nor requested earlier in the case. Pl.'s Br. in Supp. of Mot. to Strike Undisclosed Invalidity Defenses (ECF No. 1368) at 5-6, 8-9.

Plaintiff's first argument that this enablement theory was never previously raised was verifiably false. The record showed clearly that this theory was one of the express grounds for Epistar's invalidity summary judgment motion. Mem. & Order (ECF No. 1252) at 8 ("Defendants assert that the '738 patent fails to teach how a person skilled in the art would grow a single-crystalline growth layer directly on top of an amorphous buffer layer."). Plaintiff was well aware that its waiver assertion was false when made, since it had engaged the argument on the merits. Pl.'s Opp'n to Defs.' Mot. for Summ. J. of Invalidity (ECF No. 945) at 15-17 (arguing "[t]he '738 patent is not invalid for lack of enablement because both Dr. Piner and Dr. Fitzgerald testified that after reading the '738 patent's specification they could practice the claimed invention without undue experimentation."). This Court likewise responded to Plaintiff's argument raised in opposition to the motion for summary judgment and denied the motion based on a dispute of material fact. Mem. & Order (ECF No. 1252) at 10-11 (denying Defendant's argument "that it is 'impossible' to grow a single-crystalline growth layer directly on an amorphous buffer layer" based on a dispute of material fact.).

On its second argument, Plaintiff's claim that Epistar sought a new incorrect construction

for "growth layer" was one Plaintiff made during the summary judgment hearing. The Court

expressly rejected that claim"

> Mr. Evans: Well, I don't accept their premise that it has to be monocrystalline but here's what Dr. Piner said in his declaration, docket 945-
> The Court: What has to be monocrystalline?
> Mr. Evans: They're saying that growth layer has to be monocrystalline.
> The Court: Of course it does.
> Mr. Evans: But we didn't construe that claim. We have the, the first growth layer, that's not a term that's been construed in this case.
> The Court: Well, you know, you did this to me at the last hearing. You pop up these new arguments that I've never thought about before. But let me just say, right now, for purposes of everything you have given me, it's monocrystalline, all the infringement is monocrystalline, I'm thinking it's monocrystalline so, remember that little footnote, don't do this to me at the last minute.

Mot. Hr'g, (ECF No. 1072) at 72:3-9.

Moreover, Plaintiff's counsel repeatedly admitted that the growth layer was

"monocrystalline." Markman Hr'g Tr. (ECF No. 347) at 79:7-10 (Mr. Shore: "The purpose of

the invention is and has always been, the purpose of the creation of this buffer layer, this non-

single crystalline buffer layer, is to allow growing a monocrystalline gallium nitride growth

layer…"), 79:15-21 (Mr. Shore: "So I want to refer the court to Column 2 beginning at Line 48

of the Patent, and this sort of emphasizes this point: 'In another aspect of this invention, the

monocrystalline gallium nitride film is preferentially doped N or P-type.' Now, the only

monocrystalline gallium nitride film is the growth layer."), 86:15-18 (Mr. Shore: "So, again, the

whole purpose of this buffer layer is to enable the growth layer to grow on the substrate without

a lot of defects, you know, for it to be a monocrystalline or single crystalline growth layer.").

Plaintiff made the same admissions in its briefing. *See, e.g.*, Pl.'s Prelim. Claim Construction Br.

(ECF No. 212) at 14 ("So the term 'non-single crystalline' was used to differentiate the buffer

layer from the subsequently formed monocrystalline GaN growth layer."). This Court explained

that the growth layer was monocrystalline in its ruling. Mem. and Order Re: Construction of

Disputed Claim Terms (ECF No. 511) at 31 ("Both the buffer and growth layers are

distinguished based on chemical composition and/or crystal structure. The claims require that the

buffer layer is 'non-single crystalline.' Meanwhile, the specification – in fact, the title of the patent – makes clear that the growth layers are monocrystalline.")(internal citations omitted).

Plaintiff had no basis to claim that Epistar's definition of the term "growth layer" was wrong or required a new construction. The Court denied Plaintiff's motion on all grounds, finding "A review of the record bears out the defendants' position" Order (ECF No. 1482) at 3.

### C.    PLAINTIFF URGES USING THE WRONG ENABLEMENT STANDARD IN THE JURY INSTRUCTIONS.

After losing the motion to strike, Plaintiff next pursued a campaign to include the wrong enablement standard in the jury instructions. Through a series of bench briefs, Plaintiff desperately tried to convince the Court that the Federal Circuit's settled jurisprudence on full scope enablement did not require enabling all versions of the claimed invention. Each brief was plainly counter to this precedent. Pl.'s Bench Mem. Regarding Enablement Law (ECF No. 1525) at 3-4 (citing the *Cephalon* and *Streck* cases[4] to argue that enablement is satisfied if any mode of making or using the invention is enabled and claiming that the *AK Steel*, *Auto. Techs.,* and *Liebel-Flarsheim* cases were inapplicable); Pl.'s Suppl. Bench Br. on Enablement (ECF No. 1540) at 4 (citing *CFMT* case[5] to claim that defendant must prove every embodiment is not enabled is the correct enablement standard); Pl.'s Second Suppl. Bench Br. on Enablement (ECF No. 1549) at 1-4 (citing *Ex Parte Commons*, *Metcalf*, and *Cephalon* cases[6] to argue that patent is enabled if a specification teaches how to make one embodiment of a "disjunctive claim").

These arguments ignored all of the Federal Circuit's firmly established case precedents on enablement, cited repeatedly by Epistar to the Court, and were objectively unreasonable. Defs.' Bench Mem. Regarding Enablement Law (ECF No. 1524) at 2-8 (citing *AK Steel, Sitrick, Auto. Techs., Liebel-Flarsheim,* and *Nat'l Recovery* cases[7] as requiring enablement of full scope of the claimed invention); Defs.' Bench Br. Regarding Enablement Law (ECF No. 1551) at 3-5

---

[4] *Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330 (Fed. Cir. 2013); *Streck, Inc. v. Research & Diagnostic Sys.*, 665 F.3d 1269 (Fed. Cir. 2012).
[5] *CFMT, Inc. v. Yieldup Int'l Corp.*, 349 F.3d 1333 (Fed. Cir. 2003).
[6] *Ex Parte Commons*, No. 95-4674, 1995 WL 1747750 (Bd. Pat. App. & Interf. Jan. 1, 2009); *Metcalfe v. Hampel,* 532 F.2d 1360 (C.C.P.A. 1976).
[7] *Nat'l Recovery Techs. Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190 (Fed. Cir. 1999).

6

(citing *AK Steel, Sitrick, Auto. Techs.,* and *Liebel-Flarsheim* for same). As Plaintiff's counsel preposterously tried to argue: "Mr. Shore: What the Federal Circuit has said in every case since, multiple cases since, which we're happy to give you, is that full scope means full scope only of those embodiments described in the specification. That's what full scope means. It doesn't mean full scope of the claims. It means full scope of the embodiments as described in the specification."[8] Trial Tr., Day 4 (ECF No. 1594) at 4-281:12-18. This position was nonsense. Plaintiff also pushed this unsupported legal theory in its proffered enablement jury instruction— *requiring Epistar to prove that the specification failed to teach how to make every version of the claimed invention*. Pl.'s Proposed Suppl. Jury Instruction on Enablement (ECF No. 1550) at 3. This was contrary to the Federal Circuit's full scope enablement precedent cited by Epistar.

Plaintiff's repeated efforts to advance false statements on enablement law shows it knew the problem caused by its expert's dispositive admission. The proper course of action was to seek dismissal rather than litigate a meritless case by intentionally advancing the wrong law.

### D.   PLAINTIFF RAISES LEGALLY AND FACTUALLY MERITLESS ENABLEMENT ARGUMENTS AT TRIAL.

Having failed in its bad-faith procedural attacks to block Epistar's defense that the '738 Patent did not enable a claimed device with a monocrystalline growth layer grown directly on an amorphous buffer layer, Plaintiff threw a number of legally and factually unsupported arguments at the Court and the jury during trial. Not one of these arguments was objectively reasonable.

For example, Plaintiff repeatedly argued this enablement theory failed because asserted claim 19 was a device claim that did not require any particular process for purposes of enablement. *See, e.g.*, Trial Tr., Day 9 (ECF  No. 1599) at 9-182:25-183:23, 184:19-22 (Mr. Shore: "By the way, going back to the other point, this is a process disclosure, a process disclosure. Invalidity fails. They say it requires an epitaxial process. It's wrong. The Court's going to tell you that's wrong.") While this distinction (device vs. process claim) was relevant to

---

[8] Plaintiff told the Court that a device with a monocrystalline growth layer on an amorphous buffer layer would infringe, Trial Tr., Day 4 (ECF No. 1594) at 4-284:7-16, yet argued the patent did not need to enable that claimed device. This argument was objectively unreasonable.

infringement, it was nonsensical for the purposes of enablement—the patent is required to teach at least one method of making the different versions of the claimed devices to be enabled. Next, Plaintiff claimed that the '738 Patent's specification did not limit its teachings to epitaxy and that it enabled the accused devices through some other process. Trial Tr., Day 9 (ECF No. 1599) at 9-143:4-144:7 (Dr. Piner testimony that the patent does not teach "epitaxy"). Plaintiff never could articulate what other process was taught in the patent and failed to address the fact that the specification spoke only of making the claimed device using epitaxy. *Id*.

Plaintiff also claimed the patent was enabled because both its inventor and expert testified that they were able to create a monocrystalline growth layer directly on an amorphous buffer layer *years after* the effective filing date of the '738 Patent. Trial Tr., Day 2 (ECF No. 1592) at 2-118:18-119:4 (Dr. Moustakas claiming he did so in a published article in 1998); Trial Tr., Day 4 (ECF No. 1594) at 4-45:25-47:9 (Dr. Piner claiming he did so while working for Nitronix from 2000 to 2009). Of course, this testimony was legally irrelevant and thus could not demonstrate enablement even if believed. *See Application of Glass*, 492 F.2d 1228, 1232 (C.C.P.A. 1974)(enablement "sufficiency must be judged as of the filing date").

Plaintiff further relied on conclusory expert testimony to the effect that the patent was enabled. Trial Tr., Day 4 (ECF No. 1594) at 4-50:11-:16 (Dr. Piner testimony: "So if you were to follow those sorts of boundaries within the teachings of the '738 patent, you could realize with not much experimentation the type of structure that we're talking about here; namely, the amorphous buffer layer, or some sublayer of the amorphous buffer layer, and then a monocrystalline gallium nitride on top.") and at 4-51:24-52:4 (Dr. Piner testimony "Q: Now, based on these teachings, in your expert opinions would the '738 patent have permitted a person of ordinary skill in the field of the technology of the patent to make and use the full scope of the claimed invention at the time it was filed in March 1991? A: Yes, it would.") But mouthing the words the patent was enabled without any analysis is the type of conclusory testimony on which a jury cannot rely. Op. (ECF No. 1841) at 11.

Finally, in an ultimate showing of bad faith, Plaintiff argued to the jury that it need only enable *one version* of the claimed device because the patent claim said the growth layer could be grown directly "or" indirectly on the buffer layer. *See, e.g.*, Trial Tr., Day 9 (ECF  No. 1599) at 9-183:24-184:8 (Mr. Shore: "Reason Number 7. You get lost without a map. Fitzgerald violates the Court's claim construction. He says grown on is formed indirectly or directly above. That's what you're going to be instructed. He leaves out the 'or.' So he says, 'To enable the full scope of the claim, you only have to enable an amorphous layer with a single crystalline grown on, directly on or indirectly on.' It's disjunctive, it's not conjunctive, and he tries to tell you have to do both. Again, you can read, we all can read, this is the trick, this is the half-truth, this is the half claim.") This argument was contrary to the Court's jury instructions and the exact opposite of the Federal Circuit's full scope enablement precedent.

### E.     PLAINTIFF REHASHES THE SAME FLAWED ENABLEMENT ARGUMENTS DURING POST TRIAL MOTIONS.

In its JMOL, Epistar argued that the "evidence at trial demonstrated that the '738 patent's teachings did not enable a semiconductor device of asserted claim 19 with a monocrystalline GaN growth layer grown directly on an amorphous GaN buffer layer." *See* Defs.' Mem. in Supp. of Mot. for J. as a Matter of law, New Trial and/or Remittitur (ECF No. 1728-1) at 15. Epistar cited as evidence (1) both experts' agreement that it was impossible to grow a monocrystalline growth layer directly on an amorphous buffer layer using epitaxy, (2) the specification only taught how to make the device using epitaxy, (3) Plaintiff could not identify any part of the specification that taught how to make the device (with any process), and (4) that Plaintiff's inventor and expert testimony was not probative of enablement—it was insufficiently conclusory, related to activities occurring well after the effective filing date, or was not directed to using the teachings of the specification. *Id*. at 16-18.

Plaintiff attempted to argue the patent was enabled by rehashing its prior objectively unreasonable arguments—*i.e.*, the patent did not teach epitaxy, some other process in the specification taught how to do it, their inventor and expert testified they made a claimed device years after the effective date, and the claim language did not require any particular process to be

used to make the device. Pl.'s Resp. to Defs.' Omnibus Rule 50(B)/Rule 59 Motions (EFC No. 1739) at 13-15.  Plaintiff also raised a new argument against this enablement theory; that the Court had expressly barred Epistar from arguing that enablement required the '738 patent to teach how to grow "a monocrystalline growth layer both directly and indirectly on an amorphous buffer layer." *Id*. at 18. To make this argument, Plaintiff blatantly miscited the Court to suggest the Court barred Epistar from arguing this theory. Plaintiff identified a statement by the Court immediately prior to a lunch break during the sixth day of trial but purposely failed to cite to the Court's correction of that statement after the lunch break, on which basis Epistar's expert thereafter testified on this theory without objection from the Court or Plaintiff. Trial Tr., Day 6 (ECF No. 1594) at 6-170:11-171:15 and at 6-226:16-233:12 (Dr. Fitzgerald testifying to his opinion that patent did not enable a device with a monocrystalline growth layer grown directly on an amorphous buffer layer). Plaintiff's arguments did not withstand appellate review.

### F.   THE FEDERAL CIRCUIT EXPOSES THE WEAKNESS IN PLAINTIFF'S ARGUMENTS FOR ENABLEMENT.

The Federal Circuit determined that Claim 19 is invalid because as a matter of law the '738 patent does not enable a device with a monocrystalline growth layer grown directly on an amorphous buffer layer. The Federal Circuit's opinion was remarkably concise, and demonstrated the unreasonable nature of Plaintiff's arguments. The Federal Circuit made clear its precedents require a patent specification to enable the full scope of the claimed invention— citing the *AK Steel, Sitrick, Liebel-Flarshiem,* and *Nat'l Recovery* cases, among others. Op. (ECF No. 1841) at 13. This holding eviscerated Plaintiff's false claim that the purported "enablement of five out of the six referenced permutations" is sufficient to find enablement. *Id.* The Federal Circuit relied upon the same settled precedent Epistar repeatedly cited to this Court and that Plaintiff insisted was not the law. Indeed, the Federal Circuit did not even bother addressing the cases Plaintiff repeatedly argued should control the enablement inquiry in its bench briefings to this Court.

When the Federal Circuit addressed the merits of Epistar's defense, it effortlessly took down each of the arguments Plaintiff raised to refute lack of enablement. First, noting that both

Epistar's and Plaintiff's experts agreed it was impossible to "epitaxially grow a monocrystalline film on an amorphous structure," the Federal Circuit found it could "safely conclude that the specification does not enable what the experts agree is physically impossible." *Id.* at 9.  Second, the Federal Circuit refused any credit to Plaintiff's claim that the patent did not teach epitaxy, noting that the specification focused on epitaxy and was "saturated with the word and its variants." *Id.* Third, it found that Plaintiff never identified where the specification purportedly taught any process (epitaxy or otherwise) by which to make the claimed invention. Op. (ECF No. 1841) at 10. Fourth, the Federal Circuit found Plaintiff's reliance on Dr. Moustakas' and Dr. Piner's testimony that growing a monocrystalline layer directly on an amorphous buffer layer could be done irrelevant to the enablement inquiry—both witnesses testified to doing so years after March 18, 1991 (the '738 patent's effective filing), failed to suggest that the results were achieved following the specification's teachings, and otherwise provided no more than conclusory testimony that was insufficient to support a finding of enablement. *Id*. at 11-12. The Federal Circuit finished by noting that Plaintiff "created its own enablement problem" in prosecution and claims construction and that to hold up its end of the "patent bargain" it needed to teach the public how to make what it regarded as the full scope of its invention. *Id*. at 14.

### G.     PLAINTIFF'S ADDITIONAL LITIGATION MISCONDUCT.

In addition to employing its objectively unreasonable strategy to fight Epistar's enablement defense outlined above, Plaintiff engaged in serious litigation misconduct. Similar to Plaintiff's strategy of filing meritless motions to procedurally exclude Epistar's lack of enablement defense, Plaintiff repeatedly filed baseless sanctions motions. Plaintiff's frivolous filings drew the written admonishment from Magistrate Judge Boal, who made formal findings calling out BU"s misconduct. "BU's use of sanction motions has been expensive and wasteful." Report and Recommendation on Pl.'s Mot. for Bad Faith Sanctions and Renewed Mot. for 28 U.S.C. § 1927 Sanctions (ECF No. 796) at 11. "The instant motion alleges particularly serious charges: 'perpetrating multiple frauds upon this Court through the use of perjured testimony, false attorney arguments, and the intentional non-disclosure of material information.' Docket No.

523 at 1. Except for one instance where the Court imposed sanctions much less severe than those sought by BU, see Docket No. 634, the Court has largely denied BU's requests for sanctions. Counsel are reminded that they should be cautious about making such serious accusations against opposing parties and counsel." *Id.* at 10-11.

Plaintiff's lead counsel, Mr. Shore, then resorted to sending threatening emails to Epistar's counsel that violated the professional rules of conduct governing behavior in this Court, as well as appearing to be a violation of Model ABA Rule DR 7-105.[9] *See* ECF No. 1638-29 (the email Plaintiff's lead counsel sent to Defendant's counsel during trial threatening to reveal Defendants' purported "fraud" to the Court unless Defendants agreed to withdraw a request to offer certain evidence during trial). As a result, the Court barred Mr. Shore from sending any emails to Epistar's counsel. Trial Tr., Day 8 (ECF No. 1598) at 8-5:2-21.

More troubling, Plaintiff unjustly ran up the cost of litigation by pursuing baseless damages theories. Plaintiff tried to argue that Defendants' foreign sales of LEDs were subject to damages. This Court recognized the theory as unsupported. *See* ECF No. 1241 at 33 ("[Y]ou may have some novel theory that somehow a wire transfer in the United States of America is enough to be inside the United States. I'm not going to require extensive discovery, at least putting the burden on them for it, just on some theory that no court has ever adopted. So that's the proportionality requirement. It's just too much work. I'm not going to put it on them."). The Court ultimately severed Plaintiff's foreign sales damages case, and *sua sponte* set a *Daubert* hearing to scrutinize Plaintiff's dubious foreign sales theory. ECF No. 1476. Plaintiff never pursued its foreign sales theory after trial and the Court deemed it waived. ECF No. 1659 at 7-8 (the Court stating "I view the design-win issue as dead. Nothing is here in the status report. I view it as gone and waived. So I don't really even understand what you just said to me because of your prior pleading to me that you viewed it as part of the lump sum. And I didn't instruct on that. In fact, I fully anticipated a *Daubert* hearing and a second trial, and so as far as I'm concerned, you've waived the right to the *Daubert* by not pressing it.").

---

[9] DR 7-105 Threatening Criminal Prosecution. (A) -A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.

At trial, Plaintiff argued, without any supportable evidence, for lump sum damages of $30 million dollars. The jury awarded approximately $13 million, but even this amount was unsupported by the record and the Court was forced to issue a remitted damages award of $1 million lump-sum against Epistar and $1 million lump-sum against Everlight. ECF No. 1368. Plaintiff's spurious damages arguments were used with an ultimate improper motive of attempting to extort damages where in fact none were ever owed. Indeed, Plaintiff's lead counsel even attempted to raise the spectre that damages could be as high as $150 million, and demanded $31 million to settle the case. *See* ECF Nos. 1638-32 and 1638-33.

Plaintiff's conduct is textbook bad faith. Instead of dismissing the case, or seeking settlement amounts in line with the value of the case, Plaintiff continually drove up the cost of litigation by asserting frivolous damages positions in attempts to create false leverage.

## III.   <u>LEGAL STANDARD</u>

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case under Section 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (concerning both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757.

The determination of an entitlement to fees under Section 285 is neither precise nor formulaic. *Id*. "[F]rivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" are factors that support an exceptionality finding. *Id*. at 1756, n.6; see also *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 484–85 (Fed. Cir. 2016) (affirming award of reasonable attorneys fees and noting "deterrence may be a consideration when determining *whether* to award attorney fees."). The Supreme Court directs that "Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary

burden." *Octane Fitness,* 134 S.Ct. at 1758. A prevailing party must show by a preponderance of the evidence that it is entitled to an award of attorneys' fees. *Id.*

Octane Fitness requires that "the substantive strength of a party's litigating position" be exceptional, as "one that stands out from others." *Id.* at 1756. "A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from the mine-run of cases to warrant a fee award." *Id.* at 1757. The court may issue an order for full or partial attorneys' fees, depending on the facts. *See e.g., Large Audience Display Sys., LLC v. Tennman Prods., LLC*, No. 2017-2266, 2018 WL 3993299, at *3 (Fed. Cir. Aug. 20, 2018).

## IV.   ARGUMENT

Plaintiff should be assessed a substantial attorneys fee award under Section 285, because its opposition to the prevailing enablement defense after Dr. Piner's September 11, 2015 admission was exceptionally meritless. Plaintiff should further be assessed to pay Defendants' attorneys' fees under that section because of its subjective bad faith in pushing meritless sanctions and damages arguments while simultaneously attempting to extract concessions and money with improper threats in a case which should have been dismissed three years ago.

### A.   PLAINTIFF'S OBJECTIVELY UNREASONABLE ARGUMENTS AGAINST LACK OF ENABLEMENT MAKE THIS CASE EXCEPTIONAL.

Whatever reasonable basis Plaintiff may have had when it first brought this case against Epistar, it no longer had an objectively reasonable basis to maintain the case after Dr. Piner's September 11, 2015 admission that it was "a basic law of physics that it is not possible to epitaxially grow a monocrystalline film on an amorphous structure." Trial Tr., Day 4 (ECF No. 1594) at 4-137:2-13. "Patentees have an obligation to evaluate the strength of their case continually as the litigation goes on." *Datatern, Inc. v. MicroStrategy Inc.*, No. 11-11970-FDS, 2018 WL 2694458 at *9 (D. Mass. June 5, 2018) (citing *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013). A case may become unsupportable after an occurrence that clarifies the issues, such as discovery, a claim construction order, or, as in this case, an expert report. *Datatern,* 2018 WL 2694458 at *9. "[A] case can be found exceptional

when a party prolongs litigation in bad faith." *Taurus IP*, 726 F.3d at 1328. This is precisely what happened here.

A litigation position is objectively unreasonable if "no reasonable litigant could reasonably expect success on the merits." Id. at 1327 (citing *Dominant Semiconductors Sdn. Bhd. V. OSRAM GmbH,* 524 F.3d 1254, 1260 (Fed. Cir. 2008)). Once Dr. Piner admitted it was physically impossible to expitaxially grow a monocrystalline growth layer on an amorphous structure, Plaintiff had no reasonable basis to argue against Epistar's defense that the '738 patent's specification failed to enable the claimed invention with a monocrystalline growth layer grown directly on an amorphous buffer layer. Plaintiff, however, decided to soldier on.

The Federal Circuit's opinion on the non-enablement of asserted claim 19 methodically demonstrated how Plaintiff's arguments against Epistar's non-enablement defense were objectively baseless.

1. The Federal Circuit explained that its precedent requires that the full scope of the claimed invention must be enabled pursuant to cases such as *AK Steel, Sitrick, Liebel-Flarshiem,* and *Nat'l Recovery.* Op. (ECF No. 1841) at 13. These were the exact cases relied upon by Epistar that Plaintiff repeatedly claimed were not applicable to the enablement inquiry. By contrast, the cases Plaintiff kept pushing on the Court to use in the jury instructions—to require Epistar to prove that all of the different devices claimed by the patent were not enabled—did not even merit a footnote in the Federal Circuit's opinion. Plaintiff literally argued the law was opposite of the Federal Circuit's long established precedent regarding full scope enablement. Plaintiff's argument was not just wrong, it was baseless.

2. The Federal Circuit expressly held that a device with a monocrystalline growth layer grown directly on an amorphous buffer layer was among the different devices claimed by asserted claim 19. Op. (ECF No. 1841) at 6. This determination was premised on Plaintiff's concession that a monocrystalline growth layer was within the scope of the term "growth layer." *Id*. This finding contradicted Plaintiff's repeated claim that the Court's failure to construe "growth layer" precluded any finding that a monocrystalline growth layer was within the scope

of asserted claim 19. Yet Plaintiff had repeatedly asserted earlier in the case that a monocrystalline growth layer was covered by the patent and the Court had agreed. Plaintiff's claim that the growth layer was not monocrystalline was frivolous and advanced solely to avoid addressing the merits of the enablement inquiry.

3. Because both parties' experts agreed that "it is impossible to epitaxially grow a monocrystalline film directly on an amorphous structure," the Federal Circuit concluded "*that the specification does not enable what the experts agree is physically impossible.*" *Id*. at 9 (emphasis added). This is why Dr. Piner's admission in his September 11, 2015 expert report, which came out during cross examination at trial, was so damning. It dispelled any notion that the specification taught or that a skilled artisan could figure out without undue experimentation what was "physically impossible." Plaintiff desperately sought to avoid the consequences of this admission by raising a series of arguments (addressed below) devoid of factual or legal merit.

4. The Federal Circuit found Plaintiff's claim that the '738 patent does not teach epitaxy "difficult to credit," observing that the short specification "focuse[d] on epitaxy" and was "saturated with the word 'epitaxy' or variants thereof." *Id*. Thus the Federal Circuit discredited Dr. Piner's end-of-trial testimony that sought to undo his prior critical admission. Of course, this argument was not credible based on the teachings in the specification.

5. The Federal Circuit identified that Plaintiff failed to identify any part of the specification that taught "how to grow a monocrystalline layer directly on an amorphous layer," either through epitaxy or any other means. *Id*. at 10. Although Plaintiff relied on conclusory statements that the patent was enabled through some process other than epitaxy, it failed to identify any specific teachings that would achieve growing a monocrystalline growth layer directly on an amorphous buffer. Plaintiff knew no such teachings existed, which is why its expert testified that a skilled artisan needed to experiment to learn how to make this claimed device. Plaintiff's claim that some "other" process existed was simply a reflexive attempt by Plaintiff to say anything, even if without support in the specification, to avoid the crucial fact

admitted by Dr. Piner—that it was impossible to make this version of the claimed device using epitaxy.

6. The Federal Circuit held that Dr. Moustakas' and Dr. Piner's testimony relied upon by Plaintiff was not probative of enablement.  Op. (ECF No. 1841) at 11-12. Dr. Piner's "entirely conclusory" testimony that the patent was enabled or that a person of skill in the art following the teachings could make the claimed devices without undue experimentation could not overcome Epistar's evidence of non-enablement. *See, e.g.*, *Mobile Media Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015). Plaintiff relied on conclusory testimony because it knew the specification lacked any teachings to support enablement. Similarly, Plaintiff's reliance on Dr. Piner's and Dr. Moustakas' testimony that each had created a device with a monocrystalline layer on top of an amorphous layer illustrated its inability to marshal any evidence to support enablement. In both instances, Dr. Piner's and Dr. Moustakas' claim that each had created such a device (a) occurred long after the effective filing date of the patent, which made it irrelevant legally, and (b) was not tied to the teachings of the patent, which made it factually irrelevant. Plaintiff's failure to muster any relevant testimony to counter Epistar's non-enablement theory demonstrates it could not reasonably expect to succeed on the merits.

And lest Plaintiff argue that it "believed" its arguments were objectively reasonable, a review of its conduct in trying to defeat this enablement defense reveals that it fully understood the untenable nature of its legal and factual positions. Plaintiff's first action after Dr. Piner's critical admission was to file a factually frivolous motion to strike the defense on the ground it had not been previously raised in the litigation. That Epistar had raised it, Plaintiff had opposed it, and the Court had considered it during the motion for summary judgment hearing and in its ensuing order was without dispute. Plaintiff's decision to make such a demonstrably false factual argument shows it knew it could not succeed in opposing this defense on the merits. When this dubious procedural maneuver failed, Plaintiff pursued a campaign to push for a jury instruction that was literally the opposite of the Federal Circuit's longstanding enablement precedent, which Plaintiff argued essentially required *full scope nonenablement*.  ECF No. 1550 at 3. This was yet

another attempt to avoid arguing enablement on the merits. Once this campaign failed, Plaintiff proffered entirely conclusory expert testimony (e.g., the patent was enabled), legally irrelevant expert and inventor testimony (e.g., claimed device was made long after patent's effective filing date), factually irrelevant expert and inventor testimony (e.g., claimed device made in manner not tied to patent's teachings), and factually unsupported expert testimony (e.g., patent fails to teach epitaxy but teaches some other process). And when the testimony ended Plaintiff simply argued false facts and wrong law to the jury in closing (e.g., the patent isn't about epitaxy, apparatus claims do not require any particular process to make them, enabling full scope of the claimed invention not required). Finally, Plaintiff incorporated all of these baseless legal and factual arguments into its post-trial motion filings in an attempt to avoid the only conclusion the facts and the law allowed; claim 19 was invalid as a matter of law for lack of enablement.

Plaintiff had no reasonable basis to expect to succeed on the merits given the factual and legal infirmities of its arguments. Based solely on Plaintiff's objectively unreasonable opposition to Epistar's enablement defense, this is an exceptional case under Section 285. Consequently, Epistar is entitled to an award of attorneys' fees for the fees incurred after Dr. Piner's September 11, 2015 dispositive admission.

### B.   PLAINTIFF'S LITIGATION MISCONDUCT FURTHER MAKES THIS CASE EXCEPTIONAL.

Plaintiff engaged in litigation misconduct that further supports a finding that this case is "exceptional" under Section 285. For example, when faced with the winning argument of invalidity for lack of enablement, Plaintiff's initial reaction was to file two separate frivolous motions to exclude the invalidity defense, as well as a substantial portion of the non-infringement defense, on procedural grounds. Both motions were easily rejected by the Court.

In parallel, Plaintiff pursued a completely baseless "foreign sales" damages theory in an attempt to gin-up Defendants' theoretical "exposure." Defendants were successful in pursuading the Court to sever Plaintiff's "novel" theory and Plaintiff ultimately chose to abandon the theory only after Defendants had expended substantial resources in rebutting it. Plaintiff's recklessness

continued at trial where it advanced an unsupported damages theory that caused the Court to issue a remittitur and order a new trial.

Further in parallel, Plaintiff's counsel continually sent unprofessional, uncivil emails to Defendants' counsel to the point where the Court took the extraordinary step of barring counsel from e-mailing Defendants' counsel. Trial Tr., Day 8 (ECF No. 1598) at 8-5:2-5. The conduct of Plaintiff's counsel was reprehensible and violated the Massachusetts Rules of Professional Conduct applicable to the conduct before this Court.

For example, Plaintiff's counsel was repeatedly admonished by the Court during trial for sending unprofessional, uncivil emails to Epistar's counsel. "Mr. Shore, you are the author of the toxic email series, and we're supposed to have civility among attorneys, and you do not exemplify civility." *Id.*; see also Defs.' Second Mot. for Finding of Contempt by Pl.'s Lead Counsel and Supp. Mem. (ECF No. 1639) at 2-3. These emails violated the Massachusetts Rules of Professional Conduct applicable to the Court and conduct before it. *Id.* at 10-11. The Court sanctioned Plaintiff's lead counsel by barring him from sending any emails to Defendants' counsel. Trial Tr., Day 8 (ECF No. 1598) at 8-5:2-21. As soon as trial ended, Plaintiff's lead counsel abruptly began sending emails in violation of the Court's order. When the matter came before the court again, Plaintiff's counsel falsely argued to the court that its own order terminated after the verdict. The Court corrected counsel, and repeated its order than no emails were to be sent to opposing counsel for the duration of the case. But counsel continued to violate the Court's order, resulting in a Second Motion for Contempt, which the Court advised it would suspend ruling on until the conclusion of the case. Defendants urge the court to read the evidence in support of the motion, which is prima facie evidence of misconduct making this an exceptional case.

Even long before trial, the Court admonished Plaintiff for engaging in a pattern of repeatedly filing sanctions motions against Defendants and their counsel that made serious charges of misconduct that were not true. ECF No. 796 at 10-11. The Court found these motions to be wasteful. *Id.*

Plaintiff is entitled to vigorously pursue its claims, but not when they become objectively unreasonable to prosecute. That is what happened here. Morever, Plaintiff compounded the harm by pushing a groundless damages theories before the Court and the jury, all the while pursuing a toxic e-mail campaign to push Defendants to settle for tens of millions of dollars for alleged infringement of a patent the Federal Circuit easily found invalid. This additional misconduct further supports the Court finding this case exceptional under Section 285 and awarding attorneys' fees.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, defendant Epistart respectfully requests that the Court find this case "exceptional" and award Epistar its attorneys' fees and costs from September 11, 2015 through completion of post-trial proceedings.


Dated:  November 14, 2018

Respectfully submitted,

/s/  Susan G. L. Glovsky
Richard C. Vasquez (*pro hac vice*)
CA State Bar No. 127228
Jeffrey T. Lindgren (*pro hac vice*)
CA State Bar No. 176400)
Eric W. Benisek (*pro hac vice*)
CA State Bar No.
**VASQUEZ BENISEK & LINDGREN LLP**
3685 Mt. Diablo Boulevard, Suite 300
Lafayette, CA  94549
925-627-4250-Phone
925-403-0900-Fax
Email:  rvasquez@vbllaw.com,
jlindgren@vbllaw.com, ebenisek@vbllaw.com

Susan G. L. Glovsky (BBO No. 195880)
Hamilton Brook Smith Reynolds
155 Seaport Blvd.
Boston, MA 02210
Susan.Glovsky@hbsr.com
Tel: (617)-607-5995
Fax: (978) 341-0136
susan.glovsky@hbsr.com

*Counsel for Defendants Everlight Electronics Co., LTD., Everlight Americas, Inc., Epistar Corporation, Lite-On, Inc., Lite-On Service USA, Inc., Lite-On Trading USA Inc., Lite-On Technology Corporation*

## LOCAL RULE 7.1(a)(2) CERTIFICATE OF CONFERRAL

I, Susan G. L. Glovsky, counsel for Defendants, hereby certify that I spoke by telephone with Erik Belt, counsel for Trustees of Boston University on November 13, 2018 in a good faith effort to resolve or narrow the issues addressed herein and in the call and thereafter have been unable to reach agreement on the issues presented in this motion.

/s/  Susan G. L. Glovsky
Susan G. L. Glovsky

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2018, the foregoing **DEFENDANTS' MOTION FOR ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285** was electronically filed using the Court's CM/ECF system, which will automatically send email notification of such filing to all attorneys of record, and that papers will be sent to those indicated as non-registered participants.

/s/  Susan G. L. Glovsky
Susan G. L. Glovsky

2889821.v1

21