**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____

TRUSTEES OF BOSTON UNIVERSITY,  )
            Plaintiff,          )
                                )  Consolidated Civil Action
        v.                      )  No. 12-11935-PBS
                                )
EVERLIGHT ELECTRONICS CO., LTD.,)
et al.,                         )
            Defendants.         )
_____ )
                                )
TRUSTEES OF BOSTON UNIVERSITY,  )
            Plaintiff,          )
                                )  Civil Action
        v.                      )  No. 12-12326-PBS
                                )
EPISTAR CORPORATION,            )
            Defendant.          )
_____ )
                                )
TRUSTEES OF BOSTON UNIVERSITY,  )
            Plaintiff,          )
                                )  Civil Action
        v.                      )  No. 12-12330-PBS
                                )
LITE-ON INC., et al.,           )
            Defendants.         )
_____ )
```

**MEMORANDUM AND ORDER**

July 18, 2019

Saris, C.J.

**INTRODUCTION**

This is a long-running, acrimonious patent infringement

case which is now back before the Court for final disposition

following an appeal to the Federal Circuit.[1] Plaintiff, the Trustees of Boston University, is the owner of U.S. Patent No. 5,686,738 (the "'738 patent"). The '738 patent relates to the preparation of monocrystalline gallium nitride films via molecular beam epitaxy, which, in short, is a process used in creating semiconductors for LED lights. Defendants are Everlight Electronics Co., Ltd. and Everlight Americas, Inc. (together, "Everlight"); Epistar Corp. ("Epistar"); Lite-On Inc., LiteOn Service USA, Inc., Lite-On Technology Corp., and LiteOn Trading USA, Inc. (together, "Lite-On" and, collectively with Epistar and Everlight, "Defendants"). Defendants are manufacturers of LED devices that Plaintiff alleges infringe the technology covered by the '738 patent. There are currently four interrelated motions before the Court: (1) Plaintiff's motion to affirm the jury verdict or, in the alternative, to modify the claim construction order or amend its complaint, (2) Defendants' motion to rescind the Court's award to Plaintiff of partial attorney's fees and costs, (3) Defendants' motion for attorney's fees, and (4) Plaintiff's motion for disallowance of costs.

---

[1] The Court assumes familiarity with the Federal Circuit's opinion as well as the Court's prior opinions in this case. See, e.g., Trs. of Bos. Univ. v. Everlight Elecs. Co., 896 F.3d 1357 (Fed. Cir. 2018) (appeal); Trs. of Bos. Univ. v. Everlight Elecs. Co., No. CV 12-11935-PBS, 2016 WL 3962826 (D. Mass. July 22, 2016) (judgment as a matter of law); Trs. of Bos. Univ. v. Everlight Elecs. Co., 109 F. Supp. 3d 344 (D. Mass. 2015) (summary judgment on invalidity); Trs. of Bos. Univ. v. Everlight Elecs. Co., 23 F. Supp. 3d 50 (D. Mass. 2014) (claim construction).

After hearing, the Court **DENIES** Plaintiff's motion to affirm the jury verdict or, in the alternative, to modify the claim construction order or amend its complaint (Dkt. No. 1872), **ALLOWS IN PART** and **DENIES IN PART** Defendants' motion to rescind the Court's award of attorney fees (Dkt. No. 1859), **ALLOWS IN PART** and **DENIES IN PART** Defendants' motion for attorney's fees (Dkt. No. 1860), and **ALLOWS IN PART** and **DENIES IN PART** Plaintiff's motion for disallowance of costs (Dkt. No. 1850).

**BACKGROUND**

## I.   Pre-Appeal Procedural History

Plaintiff originally filed a series of cases against Defendants in 2012. In May 2013, the Court ordered that the cases be consolidated. A jury trial was held between November 2, 2015 and November 19, 2015. The jury found the '738 patent to be valid and that Epistar and Everlight willfully infringed it. Following trial, Defendants renewed their motion for judgment as a matter of law and moved for a new trial or remittitur. On July 22, 2016, the Court denied Defendants' motion as to liability but granted Defendants Epistar and Everlight a new trial as to damages or remittitur. Plaintiff then moved for reconsideration of the Court's decision as to damages, which the Court also denied.

## II. **Appeal**

In August 2016, the parties cross-appealed various rulings made by the Court, including the ruling on Defendants' motion for judgment as a matter of law. On July 25, 2018, the Court of Appeals for the Federal Circuit reversed the Court's decision on Defendants' motion for judgment as a matter of law and dismissed all other pending appeals as moot. On October 12, 2018, the Federal Circuit denied Plaintiff's requests for re-hearing. The Federal Circuit then issued a formal mandate.

The Federal Circuit reversed the Court's denial of judgment as a matter of law for Defendants on the basis that the '738 patent is invalid for lack of enablement. The Federal Circuit described the dispositive issue as follows:

> The district court construed two terms relevant here. First, it construed "grown on" to mean "formed indirectly or directly above." Under this construction, claim 19's growth layer and buffer layer do not have to be in direct contact; there can be intervening layers between them. Second, the district court construed "a non-single crystalline buffer layer" to mean "a layer of material that is not monocrystalline, namely, [1] polycrystalline, [2  amorphous or [3] a mixture of polycrystalline and amorphous, located between the first substrate and the first growth layer." And, while the district court did not specifically construe "growth layer," BU does not dispute that "growth layer" includes within its scope a monocrystalline growth layer.
>
> Assuming a monocrystalline growth layer, together these constructions raise six permutations for the relationship between claim 19's growth layer and buffer layer: (1) monocrystalline growth layer formed indirectly on a polycrystalline buffer layer;

(2) monocrystalline growth layer formed _indirectly_ on
a buffer layer that is a mixture of polycrystalline
and amorphous; (3) monocrystalline growth layer formed
_indirectly_ on an amorphous buffer layer; (4)
monocrystalline growth layer formed _directly_ on a
polycrystalline buffer layer; (5) monocrystalline
growth layer formed _directly_ on a buffer layer that is
a mixture of polycrystalline and amorphous; and
(6) monocrystalline growth layer formed _directly_ on an
amorphous buffer layer. The enablement issue in this
case concerns this sixth permutation—a monocrystalline
growth layer formed directly on an amorphous buffer
layer.

Trs. of Bos. Univ. v. Everlight Elecs. Co., 896 F.3d 1357,
1360 (Fed. Cir. 2018).

Defendants' non-enablement defense had two components: a legal

component and a factual component. The legal component turned on

what it meant for the "full scope" of the patent to be enabled.

Defendants argued that in order to be enabled the patent had to

teach a person of ordinary skill in the art ("POSITA") how to

make all six permutations describe above. The factual component

turned on whether or not the patent did in fact teach a POSITA

how to make a monocrystalline growth layer _directly on_ an

amorphous buffer layer. Defendants argued that the evidence at

trial established that it was impossible to make a

monocrystalline growth layer _directly on_ an amorphous buffer

layer.

    In denying judgment as a matter of law for Defendants, the

Court rejected both components of Defendants' non-enablement

defense. In turn, the Federal Circuit reversed the Court on both

points. On the law, the Federal Circuit held that "[its] precedents make clear that the specification must enable the full scope of the claimed invention," which meant that the '738 patent had to teach all six permutations. Id. at 1364. On the facts, the Federal Circuit held that "Defendants showed that epitaxially growing a monocrystalline layer directly on an amorphous layer would have required undue experimentation— indeed, that it is impossible." Id. Accordingly, the Federal Circuit reversed the Court and ordered judgment for Defendants.

### III. Post-Appeal Motions

Following their success on appeal, Defendants filed a bill of costs with the Court. On September 4, 2018, Plaintiff filed a motion to disallow Defendants' costs, which Defendants subsequently opposed. On November 14, 2018, Defendants filed a motion to rescind the Court's award of attorney's fees and costs and a motion for attorney's fees. Plaintiff opposed both motions. Finally, on December 17, 2018, Plaintiff filed a motion to affirm the jury verdict or, in the alternative, to modify the claim construction order or amend its complaint, which Defendants subsequently opposed. All four motions are currently pending.

**DISCUSSION**

I.  **Motion to Affirm Jury Verdict or, in the Alternative, to Amend the Complaint**[2]

    A.  **Legal Standards**

Under Federal Rule of Civil Procedure 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." The purpose of Rule 60(a) is to provide a mechanism for correcting clerical or other similar mistakes as a result of which the judgment does not reflect the intentions of the Court. "The relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties . . . or is instead a clerical, or a copying or computational mistake, which is correctable under the Rule." Bowen Inv., Inc. v. Carneiro Donuts, Inc., 490 F.3d 27, 29 (1st Cir. 2007) (alteration in original) (quoting In re W. Tex. Mktg. Corp., 12 F.3d 497, 504 (5th Cir. 1994)). "If . . . cerebration or research into the law or planetary excursions into the facts is required, Rule 60(a) will not be available." Id. (quoting In re W. Tex. Mktg. Corp., 12 F.3d at 505). "Matters cognizable under Rule 60(a) are,

---

[2] Plaintiff's original motion also requested alternative relief in the form of a modification of the Court's claim construction order. In its reply brief, however, Plaintiff concedes that this form of relief is foreclosed by the mandate rule.

generally, mechanical in nature." <u>Toscano v. Chandris, S.A.</u>, 934
F.2d 383, 386 (1st Cir. 1991).

**B.   Analysis**

   *a.   Exclusion*

Plaintiff contends that the Court excluded at trial the
non-enablement invalidity defense upon which Defendants
ultimately prevailed on appeal. In its view, the Court excluded
the defense as a sanction pursuant to Federal Rules of Civil
Procedure 16(f) and 37(b) because Defendants failed to timely
disclose it. The operative pretrial scheduling order required
Defendants to file their preliminary invalidity and non-
infringement disclosures by October 23, 2013 and their
amended / supplemental disclosures by December 16, 2013.
According to Plaintiff, neither Defendants' preliminary nor
amended invalidity contentions disclosed the winning non-
enablement defense. And Defendants failure to timely disclose
the defense led the Court to exclude it at trial. Because the
defense was excluded as a sanction, it was improper for either
the Court or the Federal Circuit to consider it on the merits.
Thus, Plaintiff urges the Court to affirm the jury verdict in
its favor pursuant to Rule 60(a) notwithstanding the Federal
Circuit's decision granting Defendants judgment as a matter of
law.

There are several factual problems with Plaintiff's position. First, Defendants raised the defense in their summary judgment motion on invalidity, and the Court addressed it on the merits. Second, Plaintiff asked the Court to exclude the defense prior to trial due to its late disclosure, but the Court expressly refused to do so. Third, Defendants raised the defense again in their post-trial motion for judgment as a matter of law. In opposing that motion, Plaintiff did not argue the defense had been excluded at trial, and the Court again addressed the defense on the merits. Fourth, Plaintiff did not argue on appeal the defense had been excluded at trial. This case history is difficult to square with Plaintiff's contention that the defense was excluded by the Court.

Nonetheless, Plaintiff parses the trial record for proof that the Court excluded the defense. Plaintiff focuses on the testimony of Defendants' expert witness Dr. Fitzgerald, where the parties repeatedly clashed over the proper scope of his testimony regarding Defendants' invalidity defense of non-enablement. The Court concedes that the record is ambiguous on this particular point. The dispute originated in part around a slide demonstrating all the permutations of the Court's claim construction, which had never been disclosed before. Both Plaintiff and Defendants point to portions of the record they believe vindicate their respective positions. Compare Dkt. No.

1596 at 170-71 (Court acknowledged that invalidity defense had
been raised previously and allowed Defendants to explore it with
Dr. Fitzgerald), with Dkt. No. 1597 at 36-39 (Court barred
Plaintiff from asking Dr. Fitzgerald about "all permutations" of
the '738 patent because Defendants did not raise the issue on
direct examination and the issue was "dead"). The bottom line,
however, is that it is not enough for Plaintiff identify
ambiguity in the trial record because there is nothing in the
record to suggest the Court struck the enablement defense. Prior
to trial, the Court explicitly refused to strike the defense
because it determined the defense had been adequately disclosed.
If the Court in fact reversed that decision during trial, then
there would be a clearer statement in the record to that effect.
Following trial, the Court denied Defendants judgment as a
matter of law as to enablement on the merits. If the Court in
fact excluded Defendants' non-enablement defense at trial, then
there would have been no reason to do so. Accordingly, the Court
confirms that it did not exclude Defendants' non-enablement
defense at trial, and the Federal Circuit properly relied on the
defense in granting Defendants judgment as a matter of law.

      *b.    Rule 60(a)*

Even if Plaintiff understood that the Court excluded
Defendants' non-enablement defense at trial, Rule 60(a) does not
supply a procedural mechanism for instating that ruling at this

stage of proceedings. Rule 60(a) allows the Court to correct "a clerical mistake" or other "mistake arising from oversight or omission." But this is not a simple clerical mistake in the judgment. Plaintiff is asking the Court to re-interpret the trial record in a way that would have significant ramifications for the substantive rights of the parties. See Bowen, 490 F.3d at 29. If the Court granted Plaintiff's request, it would be altering the basis for its decision on Defendants' post-trial motion for judgment as a matter of law. Instead of addressing Defendants' invalidity defense on the merits, the Court would be dismissing it on procedural grounds. This in turn would nullify the subsequent reversal of the Court's decision by the Federal Circuit. And Plaintiff would prevail on its claims, notwithstanding the fact that Federal Circuit issued a mandate in favor of Defendants. This stretches Rule 60(a) too far.

Indeed, Plaintiff cites no authority for the proposition that Rule 60(a) -- or, for that matter, any other federal rule or judicial doctrine -- can be used to modify a judgment in the present circumstances. The cases Plaintiff does cite bear little similarity to the facts of this case. See Sartin v. McNair Law Firm PA, 756 F.3d 259, 266 (4th Cir. 2014) (affirming order clarifying that sanctions order applied to plaintiffs' attorney rather than plaintiffs themselves); Garamendi v. Henin, 683 F.3d 1069, 1081 (9th Cir. 2012) (affirming order altering terms of

judgment to allow for enforcement in France); Rivera v. PNS
Stores, Inc., 647 F.3d 188, 200 (5th Cir. 2011) (affirming order
clarifying that summary judgment decision was "with prejudice");
Trans Nat'l Commc'ns, Inc. v. Overlooked Ops., Inc., 229 F.3d
1133 (1st Cir. 2000) (per curiam) (unpublished table decision)
(affirming denial of Rule 60(a) motion to modify agreed-upon
judgment to include pre-judgment interest). These cases all
involved minor, clerical-type modifications to the judgment,
none of which fundamentally changed the outcome of the
litigation. Here, Plaintiff's request that the Court affirm the
jury verdict in its favor despite Defendant's successful appeal
exceeds the scope of relief ordinarily permitted by Rule 60(a).

    c.   *Mandate Rule*

    Not only is there no procedural avenue for granting relief
from the Federal Circuit's judgment, but such relief is
foreclosed by the "mandate rule" which governs the Court's
authority to take further actions following an appellate
disposition. See Exxon Chem. Patents, Inc. v. Lubrizol Corp.,
137 F.3d 1475, 1483-84 (Fed. Cir. 1998). "Unless remanded by
[the appellate court], all issues within the scope of the
appealed judgment are deemed incorporated within the mandate and
thus are precluded from further adjudication." Engel Indus.,
Inc. v. Lockformer Co., 166 F.3d 1379, 1383 (Fed. Cir. 1999).
The parties spar over the exact contours of this rule, but these

disagreements are not dispositive in this case. At minimum, the parties agree that the mandate rule prevents the Court from taking actions that are inconsistent with the judgment and written opinion of the Federal Circuit. See Retractable Techs., Inc. v. Becton Dickinson & Co., 757 F.3d 1366, 1371 (Fed. Cir. 2014); Exxon Chem. Patents, 137 F.3d at 1484.

The Federal Circuit did not remand the case for further proceedings but simply granted Defendants judgment as a matter of law. On its face, then, Plaintiff's request that the Court affirm the jury verdict is inconsistent with the judgment of the Federal Circuit. Plaintiff argues that this is not the case because the Federal Circuit opinion did not directly address the Court's supposed exclusion of the non-enablement defense. This is unpersuasive for two reasons. First, the Federal Circuit reversed the Court on the merits of Defendants' non-enablement defense. Embedded in the Court's decision on the merits was the conclusion that the defense had not been excluded at trial. Second, in order to reverse the Court on the merits, the Federal Circuit reviewed the trial record and found that it contained evidence sufficient to grant judgment in favor of Defendants. That means that the Federal Circuit looked at the same record Plaintiff now contends contains proof that the Court excluded Defendants' non-enablement defense. Yet the Federal Circuit did not reach the conclusion urged by Plaintiff. Rather, based on

the same record, the Federal Circuit granted judgment for Defendants. For both these reasons, the Plaintiff's request for relief falls within the scope of the Federal Circuit's mandate. The Court lacks the authority to affirm the jury verdict and, therefore, must deny Plaintiff's motion.

> d. *Amendment*

In the alternative, Plaintiff requests that it be allowed to amend its complaint to allege infringement of two additional claims -- claims 11 and 12 -- of the '738 patent. Both claims specify that the buffer layer be "recrystallized, partially amorphous," which excludes permutations of the patent that have a purely amorphous buffer layer. In other words, Plaintiff proposes to add claims not susceptible to Defendant's argument that it was impossible to grow a monocrystalline growth layer directly on an amorphous buffer layer. And, likewise, the Federal Circuit's judgment would not invalidate them.

Federal Rule of Civil Procedure 15(a) instructs that the Court should give leave to amend freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). But "when a litigant seeks leave to amend after the expiration of a deadline set in a scheduling order, Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard." United States ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 192 (1st Cir. 2015). Defendants do not consent to an amendment, and

14

the deadline for amendment set by the Court was in February 2014, so Plaintiff is left to argue that that "good cause" exists for an amendment. The First Circuit has "noted that Rule 16's 'good cause' standard 'focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent.'" Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013) (quoting Flores-Silva v. McClintock-Hernández, 710 F.3d 1, 3 (1st Cir. 2013)). "Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Steir v. Girl Scouts of USA, 383 F.3d 7, 12 (1st Cir. 2004).

Here, Plaintiff has delayed far too long in seeking leave to amend. The only basis for "good cause" put forth by Plaintiff is the same argument that Defendants belatedly disclosed their non-enablement defense. But Plaintiff was aware of this defense at least as early as November 2014 when Defendants moved for summary judgment on invalidity. Indeed, on November 14, 2014, Plaintiff moved to strike Defendants' motion because it contained defenses that had not been timely disclosed. Further, Plaintiff moved to strike Defendants' non-enablement defenses again in September 2015. At no point after November 2014 (until

the present motion) did Plaintiff seek leave to amend. This
delay defeats any showing of good cause. In that time, the Court
held two trials, and the parties pursued cross-appeals to the
Federal Circuit and back. The burden on the Court and Defendants
of granting Plaintiff leave to amend at this stage is simply too
great. Thus, the Court denies Plaintiff's request for leave to
amend its complaint.

> *e. Sanctions*

As a parting shot in their opposition, Defendants ask the
Court to award fees and costs incurred in opposing Plaintiff's
motion to affirm the jury verdict pursuant to 28 U.S.C. § 1927.
"Under section 1927, an attorney's conduct must multiply the
proceedings and be 'unreasonable and vexatious' to warrant the
imposition of sanctions." Cruz v. Savage, 896 F.2d 626, 631 (1st
Cir. 1990). While Plaintiff's motion is unsuccessful, that does
not mean that it is frivolous or meritless, or that it was filed
solely to harass Defendants. The Court agrees that the trial
record on the exclusion issue was not crystal clear and was
amorphous. Indeed, some of the ambiguity arose from a chart
presented for the first time at trial by Defendants. As both
parties have done at virtually every stage of this litigation,
Plaintiff has taken an aggressive position to try to win on its
claims. The Court finds that Plaintiff's counsel's conduct has
not crossed the line that separates zealous advocacy from

unlawyerly conduct, see id. at 634, and, accordingly, an award
of sanctions is not appropriate.

## II.  **Attorney's Fees Motions**

### A.  **Legal Standards**

Under 35 U.S.C. § 285, the Court "in exceptional cases may
award reasonable attorney fees to the prevailing party." An
exceptional case is "simply one that stands out from others with
respect to the substantive strength of a party's litigating
position (considering both the governing law and the facts of
the case) or the unreasonable manner in which the case was
litigated." Octane Fitness LLC v. ICON Health & Fitness, Inc.,
572 U.S. 545, 554 (2014). "Section 285 demands a simple
discretionary inquiry; it imposes no specific evidentiary
burden, much less a high one." Id. at 557; see also Highmark
Inc. v. Allcare Health Mgmt. Sys., Inc., 572 U.S. 559, 563
(2014) ("[T]he determination whether a case is 'exceptional'
under § 285 is a matter of discretion."). "[T]here is no precise
rule or formula for making these determinations . . . ." Octane
Fitness, 572 U.S. at 554 (quoting Fogerty v. Fantasy, Inc., 510
U.S. 517, 534 (1994)). Factors supporting a finding of
exceptionality include "frivolousness, motivation, objective
unreasonableness (both in the factual and legal components of
the case) and the need in particular circumstances to advance
considerations of compensation and deterrence." Id. at 554 n.6

(quoting Fogerty, 510 U.S. at 534 n.19). "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." Id. at 555.

"Litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." Rambus Inc. v. Infineon Techs. AG, 318 F.3d 1081, 1106 (Fed. Cir. 2003). "In cases deemed exceptional only on the basis of litigation misconduct, however, the amount of the award must bear some relation to the extent of the misconduct." Id. An award of "attorney fees under section 285 should be tailored by a court to the situation before it." Power Mosfet Techs., LLC v. Siemens AG, 378 F.3d 1396, 1415 (Fed. Cir. 2004). "[T]he award of the total amount of a fee request is unusual." Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc., 549 F.3d 1381, 1390 (Fed. Cir. 2008).

### B. Analysis

For the reasons discussed above, the Court denies Plaintiff's motion to affirm the jury verdict and will enter judgment for Defendants consistent with the Federal Circuit's mandate. This means Defendants are the prevailing parties under § 285.

*a.   Defendants' Motion to Rescind*

Defendants first seek to rescind the Court's original attorney's fee award in favor of Plaintiff. The Court allows Defendants' motion to the extent it was based on § 285 because Plaintiff is no longer the prevailing party. Yet this does not fully resolve the matter because the prior fee award was not based exclusively on § 285. "[A] district court may invoke its inherent power to impose sanctions . . . in excess of what is provided for by statute." Id. at 1391. Courts make fee awards based on their "inherent power" in cases where there is "a finding of fraud or abuse of the judicial process." Id. (quoting Amsted Indus. Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 378 (Fed. Cir. 1994)). A finding of fraud, however, is not always necessary because "courts may use sanctions in cases involving bad faith that cannot be otherwise reached by rules or statutes." Id.; see also iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1380 (Fed. Cir. 2011) (stating that "a court can invoke its inherent power to award such fees in exceptional cases based upon a finding of bad faith").

The Court previously awarded Plaintiff expert fees totaling $47,720.73 based on these "inherent powers." In making this award, the Court concluded that Everlight's attempts to blame Plaintiff for its own misrepresentations regarding its sales data constituted bad faith. The Federal Circuit's decision in no

way disturbs this conclusion. Accordingly, the Court does not
rescind its prior expert fee award, nor does it rescind its
award of "attorneys' fees directly attributable to the
misrepresentation surrounding the sales data that Everlight
originally described as including only GaN products." Dkt. No.
1770 at 10; see also Dkt. No. 1829 at 4-5 (awarding attorney's
fees totaling $49,755.00 related to sales data
misrepresentation). Although the Court originally made the
attorney's fee award pursuant to § 285, it equally could have
made the award pursuant to its inherent powers based on its
finding of bad faith. Therefore, pursuant to its inherent
powers, the Court awards Plaintiff its attorney fees resulting
from Everlight's misrepresentations concerning sales data. In
all other respects, the Court allows Defendants' motion to
rescind.

> ### b.   Defendants' Motion for Fees

As the prevailing party, Defendants further contend that
they are entitled to attorney's fees because this is an
exceptional case. They argue that the case is exceptional for
two reasons.

First, Defendants claim that the case is exceptional due to
the meritless nature of Plaintiff's claims. For a case to be
"exceptional" under § 285, the losing party's litigating
position must be "so merit-less as to 'stand out' from the

norm." <u>SFA Sys., LLC v. Newegg Inc.</u>, 793 F.3d 1344, 1348 (Fed. Cir. 2015). It is not enough that its legal and factual arguments ultimately turned out to be incorrect or unsuccessful. <u>See</u> <u>id.</u> at 1349. Defendants contend that once Plaintiff's expert Dr. Piner conceded that it is "a basic law of physics that it is not possible to epitaxially grow a monocrystalline film on an amorphous structure," Plaintiff's claims ceased to have any merit.[3] In Defendants' view, this was the critical admission because the Federal Circuit ultimately found that the '738 patent was not enabled since it was impossible to grow a monocrystalline growth layer directly on an amorphous buffer layer. Defendants characterize Plaintiff's various arguments and procedural maneuvers from that point forward as "specious," "desperate," "meritless," and "frivolous." No matter the gloss Defendants' try to give the record, however, they cannot escape the fact that the Court ruled against their non-enablement defense when they raised it on summary judgment, and then ruled against it again on the motion for judgment as a matter of law. Further, the jury returned a verdict for Plaintiff finding infringement of the '738 patent. These facts belie the argument that Plaintiff's position was entirely without merit. Thus, the Federal Circuit's reversal of the Court's enablement decision

---

[3] Accordingly, Defendants are not seeking their attorney's fees for the entire case but only those incurred from September 2015 when Dr. Piner made this admission.

does not change the Court's conclusion that Plaintiff took a reasonable, albeit unsuccessful, position on enablement.

Second, Defendants contend that Plaintiff engaged in a pattern of litigation misconduct which makes this case exceptional. Defendants complain of two sets of inappropriate conduct: (1) Plaintiff pursued a frivolous "design-win" theory of damages based on Defendants' foreign sales of infringing products; and (2) Plaintiff engaged in abusive and uncivil conduct throughout the litigation, first by filing a series of unmeritorious sanctions motions against Defendants, and then by sending threatening emails to Defendants' counsel during and after trial.

The first set of conduct is insufficient to make this case exceptional. Plaintiff disputes Defendant's claim that the "design-win" theory was unmeritorious, pointing to two subsequent decisions finding that foreign sales of infringing products were actionable under U.S. patent law. See WesternGeco LLC v. ION Geophysical Corp., 138 S. Ct. 2129, 2139 (2018); Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., No. CV 04-1371-LPS, 2018 WL 4804685, at *1 (D. Del. Oct. 4, 2018), cross appeals filed, Nos. 19-102, 19-103 (Fed. Cir. Oct. 23, 2018). The Court will not punish Plaintiff for pursuing a novel legal theory, especially one that has since been partly vindicated by the Supreme Court. Moreover, the Court does not

accept Defendants' assertion that the "design-win" theory was
frivolous because Plaintiff ultimately dropped it at trial.
Given that the Court expressed uncertainty about the theory
throughout the case and then severed it from the main trial,
Plaintiff's decision not to pursue the theory seems like a
reasonable decision as a matter of litigation strategy, not a
concession that the theory was without merit.

The second set of activity presents a closer question. As
Defendants point out, Magistrate Judge Boal observed that
Plaintiff's use of sanction motions was "expensive and
wasteful." Dkt. No. 796 at 11. On the other hand, some of those
motions were successful. Defendants were sanctioned for denying
Plaintiff reasonable access to sales data, which resulted in a
wasted trip by counsel to Taiwan. Defendants were also ordered
to pay costs related to their over-designation of documents as
"attorneys eyes only" in violation of the case's protective
order. And Magistrate Judge Boal did not restrict her criticisms
to Plaintiff, observing that in the course of discovery Epistar
"inappropriately attempted to shift to [Plaintiff] its
obligations," Dkt. No. 832 at 4 n.3, and "disregarded its
obligations," Dkt. No. 911 at 5. While Plaintiff's tactic of
weaponizing sanctions motions was unfortunate, it is precisely
the conduct to which the Court was referring when it previously
described how "both sides tangoed." Dkt. No. 1770 at 7.

Therefore, the Court will not base an award of attorney's fees on Plaintiff's use (or misuse) of sanction motions.

The conduct of Plaintiff's counsel in sending threatening emails to Defendants' counsel during and after trial, however, does support a partial award of attorney's fees. During trial, the Court reprimanded Plaintiff's counsel, Michael Shore, for authoring a "toxic email series" and ordered that he stop sending emails to Defendants' counsel. Dkt. No. 1598 at 4:24-5:21. Once the trial ended, Mr. Shore resumed sending emails to Defendants' counsel, prompting Defendants to file a motion for contempt against him. The Court then ordered Mr. Shore to stop sending emails to Defendants' counsel "until proceedings before this Court have ended."[4] Dkt. No. 1650 at 4. At least one of the emails sent by Mr. Shore, which claimed "I usually just execute lawyers who try to perpetrate a fraud upon my clients and the Court," Dkt. No. 1663-1 at 2, clearly crossed the line of civility. Defendants have brought two contempt motions against Plaintiff's counsel in connection with these emails, and they are permitted to recover their attorney's fees for briefing and arguing those motions. In all other respects, Defendants' motion for attorney's fees under § 285 is denied.

---

[4] The Court did not originally rule on the contempt motion. While that motion technically is still pending, the Court now denies it as moot.

**IV. <u>Motion for Disallowance of Costs</u>**

    **A. Legal Standard**

Under Rule 54, the prevailing party in a civil action generally is entitled to recover costs -- excluding attorney's fees -- from the opposing party. Fed. R. Civ. P. 54(d)(1). "Congress has enumerated the type of expenses that a federal court 'may tax as costs.' Rule 54(d) works in tandem with the statute." <u>In re Two Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.</u>, 994 F.2d 956, 962 (1st Cir. 1993) (citation omitted) (quoting 28 U.S.C. § 1920). Taxable costs include: fees of the clerk and marshal; fees for printed or electronically recorded transcripts necessarily obtained for use in the case; fees and disbursements for printing and witnesses; fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; docket fees; and compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services. 28 U.S.C. § 1920. The party seeking costs must file a bill of costs, and, upon allowance by either the judge or clerk, the award of costs will be included in the final judgment or decree. <u>Id.</u> The procedure for opposing an award of costs is to file a motion for disallowance of costs. In deciding whether to award costs to a prevailing party, the district court has broad discretion. <u>See</u>

Martinez v. Cui, No. CIV. A. 06-40029-FDS, 2009 WL 3298080, at
*1 (D. Mass. Apr. 13, 2009) (citing Ross v. Saint Augustine's
Coll., 103 F.3d 338, 344 (4th Cir. 1996)).

**B.  Analysis**

At the hearing on April 1, 2019, the Court requested the
parties reach an agreement regarding an award of costs. The
parties failed to do so. Thus, the Court considers the merits of
Plaintiff's motion for disallowance of costs.

*a.  Availability of Costs*

Plaintiff contends that Defendants are not entitled to
costs because they engaged in misconduct throughout the
litigation. The local rules on taxation of costs state that
"[c]osts may also be denied where the prevailing party has
engaged in misconduct during the litigation process." Mass.
District Rules re Taxation of Costs, at 3. The local rules cite
two Third Circuit decisions which stand for the general
proposition that the Court may deny a party costs because it has
unclean hands. See In re Paoli R.R. Yard PCB Litig., 221 F.3d
449, 463 n.4 (3d Cir. 2000); Smith v. Se. Pa. Transp. Auth., 47
F.3d 97, 99 (3d Cir. 1995). In the First Circuit the decision to
award costs is left to the discretion of the district court,
except that discretion "operates in the long shadow of a
background presumption favoring cost recovery for prevailing
parties." San Juan Dupont Plaza Hotel Fire, 994 F.2d at 963.

Plaintiff reminds the Court of two instances of Defendants'
litigation misconduct that it believes should bar them from
receiving costs. Both instances are detailed in the Court's July
2016 opinion on Plaintiff's motion for fees and costs and formed
the basis for the Court's partial award of attorney's fees for
Plaintiff pursuant to 35 U.S.C. § 285. Aside from these two
instances, however, the Court observed that Defendants'
litigation conduct "was not unreasonable. While counsel on both
sides were aggressive and at times uncivil, that is
unfortunately true in many patent cases. Here, both sides
tangoed. Considering the totality of the circumstances, the
Court cannot assign blame for this contentiousness to one side."
Dkt. No. 1770 at 6. After all, as discussed above, the Court had
to bar Plaintiff's lead counsel from sending emails to
Defendants' counsel due to the threatening nature of his prior
emails. Notwithstanding this misconduct, the Court still awarded
Plaintiff nearly $70,000 in costs. The Court previously
concluded that Plaintiff's misconduct was not serious enough to
overcome the presumption in favor of awarding costs. For similar
reasons, the Court finds that Defendants are entitled to recover
their costs now that they are the prevailing parties.

        b.    *Taxable Costs*

Deposition Transcripts: Defendants originally sought
$74,234.94 in total costs for deposition transcripts. They

subsequently revised their request down to $52,744.33 after Plaintiff pointed out that they were double counting for video and transcripts of certain depositions.[5] In total, the revised request covers 48 depositions of 40 different witnesses, that were "either (a) noticed by the Plaintiff; (b) obtained for use because Plaintiff listed them on their witness list, (c) designated by Plaintiff as a trial witness, or (d) their testimony was in part admitted to the court (either in trial or in a pre-trial proceeding)." Dkt. No. 1853 ¶ 5.

Plaintiff argues that Defendants can only recover transcription costs for depositions that Defendants used at trial. Four of the depositions on Defendants' list fall into this category, with a total transcription cost of $3,370.85.[6] Under 28 U.S.C. § 1920(2), the prevailing party can recover costs related to "recorded transcripts necessarily obtained for use in the case." The language of the statute does not limit taxable costs to transcripts used at trial. And the First Circuit has held that courts have the discretion to award "deposition costs if special circumstances warrant it, even

---

[5] In their revised request, Defendants double-count the deposition of Zita Lee on April 29, 2014 and omit the deposition of Ting Lei on April 7, 2014. Compare Dkt. No. 1849 at 3, with Dkt. No. 1853-1 at 2-3. The total transcript costs above accounts for these mistakes.

[6] Plaintiff concedes that the transcripts from the depositions of Paul Reidy and Vinit Nijhawan, the latter held on September 11, 2014, are taxable. The two other transcripts are from the depositions of Mr. Nijhawan held on March 16, 2015 and July 10, 2015. Videos of these two depositions were also played at trial. See Dkt. No. 1853-1 at 3.

though the depositions were not put in evidence or used at the trial." Templeman v. Chris Craft Corp., 770 F.2d 245, 249 (1st Cir. 1985). Therefore, the Court will not limit Defendants to recovering just the costs for deposition transcripts used at trial. Rather, the Court will take a case-by-case approach to determining whether "special circumstances" exist to award transcript costs.

First, Plaintiff claims that Defendants cannot recover the costs of 15 transcripts from the depositions of manufacturer representatives because Defendants previously took the position (in opposing Plaintiff's motion for fees and costs) that the witnesses' testimony was "completely immaterial to the case." Dkt. No. 1813 at 12. But Plaintiff fails to acknowledge the reason that the manufacturer representatives' testimony was "completely immaterial"; their testimony was relevant only to Plaintiff's "design-win" theory of liability, which Plaintiff ultimately did not pursue at trial. While Plaintiff is correct that the transcripts were not necessary for trial, Defendants are correct that the transcripts were necessary at the time they were obtained because Plaintiff intended to use them at trial. See WBIP, LLC v. Kohler Co., No. CIV.A. 11-10374-NMG, 2014 WL 4471412, at *3 (D. Mass. Sept. 8, 2014) (awarding costs because it "appropriate for [the prevailing party] to obtain the transcripts as part of its preparation for trial"). Accordingly,

the Court allows Defendants to recover the costs of the 15 manufacturer representative transcripts or videos totaling $8,670.81.

Second, Plaintiff claims that Defendants cannot recover the cost of 19 transcripts from the depositions of Defendants' employees or expert witnesses. On this score, Plaintiff has a stronger argument. Courts in this district generally have held that parties cannot recover the costs of their own deposition transcripts. See, e.g., Hillman v. Berkshire Med. Ctr., Inc., 876 F. Supp. 2d 122, 127 (D. Mass. 2012); Legrice v. Harrington, No. CIV.A. 09-10132-RBC, 2010 WL 2991670, at *1 (D. Mass. July 26, 2010); Neles-Jamesbury, Inc. v. Fisher Controls Int'l, Inc., 140 F. Supp. 2d 104, 106 (D. Mass. 2001). Indeed, Defendants made precisely the same argument to the Court in opposing Plaintiff's motion for fees and costs. The Court denies Defendants costs for the 19 transcripts from the depositions of their own employees and expert witnesses.

Once these specific objections are resolved, there are still ten transcripts for which Plaintiff generally objects to the award of costs. Seven of the ten transcripts are for witnesses that Plaintiff listed in their pretrial disclosures as "expects to call" witnesses. Defendants can recover costs for these transcripts because it was reasonable to obtain them in anticipation of cross-examination at trial. See WBIP, 2014 WL

4471412, at *3. Two transcripts were cited in Defendants' motion for summary judgment on invalidity. The costs for these transcripts are also recoverable. See Keurig, Inc. v. JBR, Inc., No. CIV. 11-11941-FDS, 2014 WL 2155083, at *3 (D. Mass. May 21, 2014) (collecting cases allowing costs for transcripts cited in summary judgment papers); see also Gochis v. Allstate Ins. Co., 162 F.R.D. 248, 252 (D. Mass. 1995) (allowing costs for depositions cited in successful dispositive motions). The one remaining transcript is for the deposition of Ting Lei on April 7, 2014. Defendants included the transcript in their initial bill of costs but did not supply additional information in opposing Plaintiff's motion to disallow costs. Without more, the Court cannot determine whether it is appropriate to award costs for the Lei transcript. Therefore, the Court denies costs for that one transcript.

In total, the Court allows Defendants costs for 28 deposition transcripts for a total of $25,990.41.

Demonstratives: Defendants seek $50,527.51 for "[f]ees and disbursements for printing." Of this amount, Plaintiff objects to $44,257.00 in costs related to the preparation and presentation of demonstratives, including various graphics, charts, and other visual aids that were used at trial. The disputed amount relates solely to services provided by Defendants' trial consultant, Zang Media Consulting.

31

Under 28 U.S.C. § 1920(4), the prevailing party can recover costs related to "exemplification." The First Circuit has not directly addressed whether trial demonstratives count as "exemplification" under 28 U.S.C. § 1920(4). However, in Summit Technology, Inc. v. Nidek Co. the Federal Circuit considered the question of whether trial consultant fees for assistance in preparing "trial exhibits, including computer animations, videos, Powerpoint presentations, and graphic illustrations" were recoverable under First Circuit law. 435 F.3d 1371, 1374-78 (Fed. Cir. 2006). After reviewing the limited caselaw, the Federal Circuit concluded that most likely "the First Circuit would adopt the narrow, legal definition of the term 'exemplification' endorsed by the Fifth Circuit, the Eleventh Circuit, and [the Federal Circuit] applying Sixth Circuit law" and, accordingly, denied the prevailing party costs related to its trial consultant. Id. at 1377-78.

Defendants argue that the demonstratives created by their trial consultant were "useful" and "helpful" to the Court in the course of the trial. See 28 U.S.C. § 1920(4) (stating that "exemplification" costs are taxable if "necessarily obtained for use in the case" (emphasis added)). The types of costs that Defendants seek to recover go well beyond the examples of "necessary" costs identified in the Local Rules. See Local Rules re Taxation, at 4 ("Exemplification is the making of an official

and certified copy of a document or transcript that is used as evidence. Examples of items that may be exemplified include docket sheets, complaints, medical reports, police reports, weather reports, land records, and criminal records."). Defendants argue that retaining a trial consultant is customary practice in patent litigation. That may be the case, but that does not provide a basis for deeming the costs taxable. See Summit Tech., 435 F.3d at 1373, 1377-78 (disallowing trial consultant costs in a patent case). And, although Defendants cite to favorable decisions in other circuits, they do nothing to contest the fact that Summit Technology governs this dispute. Accordingly, Defendants cannot recover the costs of their trial consultant, and their total recoverable costs for copies and exemplification is limited to $6,252.51.

Interpreters: Defendants seek $17,819.62 in total costs for interpreters. This amount includes all costs incurred in connection with interpreters used at (1) trial and (2) depositions noticed by Plaintiff. Plaintiff argues that Defendants are only entitled to costs incurred at trial, which it contends are just $2,000 for a single day of trial translation.

Under 28 U.S.C. § 1920(6), the prevailing party can recover costs related to the "compensation of interpreters." The Local Rules explain that this includes "[f]ees, expenses and costs of

interpreters . . . if their services <u>or the product of their</u>
<u>services (i.e., translated depositions)</u> are used at trial."
Local Rules re Taxation, at 5 (emphasis added). Likewise, courts
in this district generally have taken a broad view of the types
of interpretation costs that are taxable under 28 U.S.C. § 1920.
<u>See, e.g.</u>, <u>Osorio v. One World Techs., Inc.</u>, 834 F. Supp. 2d 20,
23 (D. Mass. 2011) (rejecting argument that interpretation costs
had no connection to trial); <u>Neles-Jamesbury</u>, 140 F. Supp. 2d at
106 (holding translator costs were taxable despite (1) being
incurred "long ago during discovery" and relating to "marginally
relevant" documents, and (2) translated documents were not
ultimately used at trial); <u>E. Bos. Ecumenical Cmty. Council,</u>
<u>Inc. v. Mastrorillo</u>, 124 F.R.D. 14, 15 (D. Mass. 1989) (holding
that costs incurred for interpreters in connection with
depositions were taxable under 28 U.S.C. § 1920(6)). Plaintiff
points to no contrary authority. Therefore, Defendants can
recover the full amount they seek for interpretation costs.

    <u>Uncontested Costs:</u> Defendants' bill of costs seeks an
additional $28,776.83 in costs for (1) trial transcripts,
(2) printing fees and disbursements, and (3) witness fees.
Plaintiff does not contest these costs, and all three categories
of costs are taxable under § 1920. <u>See</u> 28 U.S.C. §§ 1920(2)-(3).
Therefore, Defendants are allowed these costs.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to affirm the jury verdict or, in the alternative, to modify the claim construction order or amend its complaint (Dkt. No. 1872), **ALLOWS IN PART** and **DENIES IN PART** Defendants' motion to rescind the Court's award of attorney fees (Dkt. No. 1859), **ALLOWS IN PART** and **DENIES IN PART** Defendants' motion for attorney's fees (Dkt. No. 1860), and **ALLOWS IN PART** and **DENIES IN PART** Plaintiff's motion for disallowance of costs (Dkt. No. 1850)

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge